The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEUNGJAE SEONG, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

UNLOCK PARTNERSHIP SOLUTIONS INC., a Delaware corporation,

Defendant.

No. 2:26-cv-01023-JLR

DEFENDANT UNLOCK PARTNERSHIP SOLUTIONS INC.'S MOTION TO COMPEL ARBITRATION

NOTE ON MOTION CALENDAR UNDER LCR 7(d)(4) & DKT. 7: June 8, 2026

DEFENDANT UNLOCK PARTNERSHIP SOLUTIONS INC.'S
MOTION TO COMPEL ARBITRATION
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   STATEMENT OF FACTS .......................................................................................2

    A.    An Overview of the FSEA. ...........................................................................2

    B.    Plaintiff Obtains an Investment Payment from Unlock. .....................................3

    C.    Plaintiff Agreed to Arbitrate This Dispute. ...........................................................4

    D.    Procedural History ........................................................................................5

III.  ARGUMENT..........................................................................................................5

    A.    The Court Should Enforce the Arbitration Agreement According to Its Terms. ........................................................................................................5

        1.    A Valid Arbitration Agreement Exists Between Plaintiff and Unlock.................................................................................................7

        2.    The Parties Delegated Any Arbitrability Issues to the Arbitrator.............8

            a.    The Parties Incorporated the JAMS Rules Thereby Delegating Arbitrability Issues, Such as Enforceability of the Arbitration Agreement, to the Arbitrator. .............................8

            b.    Plaintiff's TILA and Unconscionability Arguments Must Be Decided By the Arbitrator In the First Instance. .....................9

            c.    TILA Does Not Bar Arbitration Here. ........................................10

                (1)    The FSEA is not a "residential mortgage loan" or an "extension of credit" because the FSEA does not provide "credit."..........................................................10

                (2)    TILA Section 1639c(e)(3) does not apply because Plaintiff has not asserted a federal claim. ......................10

        3.    Plaintiff's Unconscionability Argument Does Not Bar Arbitration. ......15

    B.    The Court Should Stay This Action Pending Arbitration..................................17

IV.   CONCLUSION.....................................................................................................17

DEFENDANT'S MOTION TO COMPEL ARBITRATION - i
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson Bros. Ford v. Valencia*,
452 U.S. 205 (1981)...................................................................................................13

*Attix v. Carrington Mortg. Servs, LLC*,
35 F.4th 1284 (11th Cir. 2022) ...............................................................................10

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ...................................................................................6

*Birchfield v. Rushmore Loan Mgmt. Servs., LLC*,
2019 WL 9832188 (N.D. W. Va. 2019) ..................................................................12

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ..............................................................................8, 10

*Briggs v. Serv. Corp Int'l*,
2023 WL 2075958 (W.D. Wash. 2023)..................................................................9, 15

*Buckman v. Am. Bankers Ins. Co. of Fla.*,
115 F.3d 892 (11th Cir. 1997) ................................................................................13

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) ............................................................................6, 8, 9

*Chlarson v. EK Real Estate Servs. of NY, LLC*,
2022 WL 2392648 (W.D. Tex. 2022)......................................................................10

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003).....................................................................................................5

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018).....................................................................................................6

*Feeman v. Bridge It, Inc.*,
--- F. Supp. 3d ---, 2026 WL 880508 (S.D.N.Y. 2026) ..........................................12

*Ford Motor Credit Co. v. Milhollin*,
444 U.S. 555 (1980).................................................................................................13

*Foster v. Equitykey Real Estate Inv. L.P.*,
2017 WL 1862527 (N.D. Cal. 2017) .................................................................13, 14

DEFENDANT'S MOTION TO COMPEL ARBITRATION - i
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Goldwater Bank, N.A. v. Elizarov*,
    2022 WL 18231680 (C.D. Cal. 2022), *rev'd on other grounds sub nom.*
    *Goldwater Bank, N.A. v. Bank of the West*, 2025 WL 841846 (9th Cir. 2025) ......................14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019)...............................................................................................................6, 8

*Hofer v. Emley*,
    2019 WL 4575389 (N.D. Cal. 2019) ......................................................................................6

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003) ................................................................................................7

*Lim v. TForce Logistics, LLC*,
    8 F.4th 992 (9th Cir. 2021) .....................................................................................................6

*Lyons v. PNC Bank, N.A.*,
    26 F.4th 180 (4th Cir. 2022) .................................................................................................15

*Marino v. Aven Fin., Inc.*,
    2025 WL 2988369 (S.D. Cal. 2025), *appeal docketed*, No. 25-7291 (9th Cir. 2025).............11

*Moreno v. T-Mobile USA, Inc.*,
    2023 WL 401913 (W.D. Wash. 2023).....................................................................................9

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ................................................................................................7

*Okelo v. Antioch Univ.*,
    601 F. Supp. 3d 894 (W.D. Wash. 2022)................................................................................7

*Olsen v. Unison Agreement Corp.*,
    2023 WL 4492346 (W.D. Wash. 2023)..................................................................................10

*Patrick v. Running Warehouse, LLC*,
    93 F.4th 468 (9th Cir. 2024) ...............................................................................................6, 8

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010)...................................................................................................................8

*Reynolds v. Safeway, Inc.*,
    2023 WL 2560853 (W.D. Wash. 2023)...................................................................................9

*Ronderos v. USF Reddaway, Inc.*,
    114 F.4th 1080 (9th Cir. 2024) .............................................................................................15

*Sandler v. Modernizing Med., Inc.*,
    170 F.4th 1209 (9th Cir. 2026) .........................................................................................9, 10

DEFENDANT'S MOTION TO COMPEL ARBITRATION - ii
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Sitzman v. EK Real Estate Servs. of NY LLC*,
  2022 WL 17853214 (N.D. Tex. 2022)................................................................10

*Smith v. Spizzirri*,
  601 U.S. 472 (2024)............................................................................................17

*Sparrow v. EK Real Estate Servs., NY, LLC*,
  2023 WL 3035359 (E.D. Tex. 2023) ..................................................................10

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
  566 U.S. 560 (2012)............................................................................................12

*Teuscher v. CCB-NWB, LLC*,
  437 F. Supp. 3d 849 (E.D. Wash. 2020) .............................................................16

*United States v. Sutcliffe*,
  505 F.3d 944 (9th Cir. 2007) ...............................................................................5

*Westcott v. Wells Fargo Bank, N.A.*,
  862 F. Supp. 2d 1111 (W.D. Wash. 2012)..........................................................16

*In re Yang*,
  2023 WL 7104764 (Bankr. S.D. Ind. 2023) .......................................................14

**State Cases**

*Burnett v. Pagliacci Pizza, Inc.*,
  196 Wn.2d 38 (2020)............................................................................................7

*City of Seattle v. Long*,
  198 Wn.2d 136 (2021) ........................................................................................12

*Keystone Land & Dev. Co. v. Xerox Corp.*,
  152 Wn.2d 171 (2004) ..........................................................................................7

*Noble v. Wolford*,
  29 Wn. App. 2d 1049, 2024 WL 685788 (2024) ................................................17

*Wash. Fed. Sav. & Loan Ass'n v. Alsager*,
  165 Wn. App. 10 (2011) .......................................................................................7

*Weiss v. Lonnquist*,
  153 Wn. App. 502 (2009) .....................................................................................7

*Zuver v. Airtouch Commc'ns, Inc.*,
  153 Wn.2d 293 (2004) ............................................................................15, 16, 17

DEFENDANT'S MOTION TO COMPEL ARBITRATION - iii
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**Federal Statutes**

9 U.S.C. § 1, *et seq.*...............................................................................................................5, 6, 8

9 U.S.C. § 2 ...................................................................................................................................5, 6

9 U.S.C. § 3 ....................................................................................................................................17

15 U.S.C. § 1601, *et seq.*................................................................................................. *passim*

15 U.S.C. § 1602(f) .......................................................................................................................11

15 U.S.C. § 1602(dd)(5) ................................................................................................................11

15 U.S.C. § 1639c(e)..........................................................................................................10, 11, 15

15 U.S.C. § 1639c(e)(1)..............................................................................................................10, 11

15 U.S.C. § 1639c(e)(3) .........................................................................................................2, 10, 11, 15

**Rules**

JAMS Comprehensive Arb. Rules & Procs. R. 11(b) (2021), *available at*
https://www.jamsadr.com/rules-comprehensive-arbitration .......................................................9

**Regulations**

12 C.F.R. pt. 1026, Supp. I, cmt. 2(a)(14)(1)(viii)........................................................................14

12 C.F.R. § 226.2(a)(14) ................................................................................................................13

**Other Authorities**

*Debt*, Black's Law Dictionary (12th ed. 2024)..............................................................................12

Laurie Goodman & Katie Visalli, *How Shared Equity Products Work*, *Who Is Using Them*, *and Regulatory Recommendations*, Urban Inst. (Mar. 2026), *available at Available at*
https://www.urban.org/sites/default/files/2026-02/Final_How_Shared_Equity_Products_Work.pdf ............................................................12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

Plaintiff Seungjae Seong asked Defendant Unlock Partnership Solutions Inc. to provide him funds as a shared investment in his house.  Dkt 1-1 ("Compl.") ¶¶ 4.27, 4.53, 4.55.  Unlock initially offered a $100,000 investment, but Plaintiff asked Unlock for more money upfront in exchange for a larger investment share.  Unlock eventually agreed to provide $190,500, secured by a lien on the house (valued at $1.15 million).  *Id.* ¶¶ 4.32, 4.34, 4.56-4.58.  The parties agreed for Unlock to provide this investment through a "Forward Sale and Exchange Agreement" ("FSEA"), which was negotiated over seven weeks and closed on August 30, 2022.  *Id.* ¶ 4.63.

Under the FSEA, Plaintiff received a payment representing Unlock's ***investment*** in the potential future equity of Plaintiff's property ("Investment Payment").  In exchange, Plaintiff granted Unlock a contractual right to realize its investment upon an enumerated triggering event, such as a property sale.  Because the FSEA reflects an ***investment***, Unlock shares in the ending value of the property at the time of the triggering event.  Unlock invests in the property with hope that it appreciates, but it is not guaranteed a gain (let alone full return) on its Investment Payment.  Plaintiff also has no absolute obligation to pay back the Investment Payment.

When Plaintiff later sold his home in 2025 (for ***under*** the appraised value), *id.* ¶ 4.72—and after he spent the $190,500 investment over three years—he balked at upholding his part of the bargain, tried to re-characterize the FSEA as both a loan (despite agreeing it was not) and a reverse mortgage loan, and now brings a putative class action against Unlock for holding him to his contract.  He is wrong, and Unlock will show that, but his claims do not belong in court.

Under the FSEA's mandatory arbitration provision and class-action waiver, Plaintiff agreed to individually arbitrate this dispute.  He does not dispute that he received and voluntarily signed the FSEA.  Instead, he suggests that, notwithstanding his agreement to arbitrate, the agreement is unenforceable under the Truth in Lending Act ("TILA") because he seeks to recharacterize the FSEA as a residential mortgage loan, *id.* ¶ 4.77, and because the FSEA is unconscionable, *id.* ¶¶ 10.1–10.4.  Plaintiff is wrong on both accounts.  The Court should compel arbitration, and stay these proceedings, for three reasons:

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 1
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*First*, Plaintiff assented to the FSEA, including its arbitration agreement, and he agreed the arbitrator would decide threshold issues of arbitrability, including the enforceability and validity of the arbitration agreement. Under Supreme Court and Ninth Circuit precedent, his TILA and unconscionability arguments are issues reserved for the arbitrator.

*Second*, even if the Court were to reach Plaintiff's TILA arguments, TILA's "arbitration" provisions for "residential mortgage loans" and "extensions of credit" do not apply because the FSEA is not a form of "credit." TILA states that "credit" requires the deferral of a "payment of debt," and debt is an obligation to pay or repay a sum certain. But there was nothing certain about any return on the investment Unlock might receive under the FSEA. In fact, the FSEA did not require Plaintiff to pay *anything* over the life of the contract; Unlock would receive money only if certain contingent events occurred. Indeed, the TILA Staff Commentary confirms that arrangements like the FSEA are not extensions of credit because they are either "option contracts" or "investment plans." Moreover, TILA Section 1639c(e)(3), which operates to protect jurisdiction in "an appropriate court of the United States, or any other court of competent jurisdiction," requires that an action be brought "in connection with [an] alleged violation … of Federal law." 15 U.S.C. § 1639c(e)(3). No such action has been brought here, so Section 1639c(e)(3) does not apply.

*Third*, there is nothing unconscionable about the FSEA. Plaintiff had a meaningful choice when choosing to enter into the FSEA, and there is nothing shocking to the conscience about a property owner negotiating to receive a significant amount of money and in exchange agreeing to let the investor share in the future value of the property.

## II.    STATEMENT OF FACTS

### A.    An Overview of the FSEA.

Unlock invests in real estate with the hope that the property value will increase. The FSEA is an agreement by which a property owner receives an investment payment in exchange for granting Unlock a right to a fractional interest in the future value of the property. *See* Compl. Ex. A ("FSEA") at pgs. 1–2. But because Unlock is making an equity payment, and not a loan,

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 2
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

whether it makes or loses money turns on market developments and factors outside its control, such as the timing of the settlement.  Indeed, title to the property is not conveyed and Unlock does not exercise control over the properties it invests in—that power remains with the owners. *Id.* ¶ 11.2; Decl. of James Riccitelli ("Unlock Decl.") ¶ 5.

The FSEA also does not have any repayment schedule.  Instead, after Unlock makes the investment payment, it obtains the right to convert its investment in the property into an agreed to possessory interest in the property's ending value upon certain triggering events—sale of the property, buyout of the FSEA/Unlock's interest in the property by the property owner, the death of the property owner, expiration of the FSEA's ten-year term, or specified significant events of default.  *See* FSEA ¶ 1.8.2.

Notably, the FSEA does ***not*** require the property owner to repay any certain sum of money as no promissory note is executed in favor of Unlock.  The property owner has no obligation, ongoing or otherwise, to pay principal or interest as the transaction memorialized by the FSEA has neither an amortizing unpaid principal balance nor is interest accrued or charged to the property owner at any point.  *See id.* ¶ 1.4; Unlock Decl. ¶ 6.  And unlike a loan or other forms of credit, Unlock is not guaranteed repayment of a certain amount or recoupment of its Investment Payment.  Unlock Decl. ¶ 4.

**B.      Plaintiff Obtains an Investment Payment from Unlock.**

In mid-2022, Plaintiff "learned about Unlock through an online advertisement" and contacted Unlock to inquire about possible funding.  Compl. ¶¶ 4.54–4.55.  He spoke with an Unlock representative who sent him an application.  *Id.* ¶ 4.55.  Plaintiff then completed the application and returned it to Unlock, along with the necessary supporting documentation.  *Id.*

After reviewing Plaintiff's application, Unlock sent him an initial "Investment Estimate" of $100,000.  *Id.* ¶ 4.56.  The Investment Estimate encouraged Plaintiff to review the potential transaction "with [his] family and professional advisors, including tax, legal, financial and estate."  Unlock Decl. Ex. A ("Investment Estimate") at 4.  Unsatisfied, Plaintiff "asked for the maximum amount for which he would be eligible."  Compl. ¶ 4.57.  Unlock reevaluated and sent

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 3
(No. 2:26-cv-01023-JLR)

him a revised Investment Estimate. *Id.* ¶¶ 4.58–4.59. Under this revised estimate, Unlock would make an investment payment to Plaintiff of $190,509. *Id.* In return, Unlock would receive a percentage of the property's future value upon the occurrence of any of the specified "Settlement Events" ("Settlement Payment"). *Id.* ¶¶ 4.27, 4.59; FSEA ¶ 1.3.3.

Unlock sent Plaintiff closing materials for the Investment Payment, including an "[Investment] closing statement," Compl. ¶ 4.61, on August 16, 2022, which he signed the following day, August 17, 2022, *see* Unlock Decl. Ex. B ("ICS") at 5. Among these closing materials were "sample contract documents," Compl. ¶ 4.61, including a sample FSEA, *see* Unlock Decl. Ex. C ("Sample FSEA"), and Plaintiff affirmatively represented that he read and understood those documents, *see* ICS at 5. Plaintiff admits signing the FSEA on August 30, 2022, before a notary. Compl. ¶ 4.63 & Ex. A. He also acknowledges that, in doing so, he "entered into an [FSEA] with Unlock." Compl. ¶ 3.1; *see also id.* ¶ 4.68 ("After entering into the [FSEA] and receiving the funds, Mr. Seong used the money to cover his family's expenses ….").

After he signed the FSEA, Unlock provided Plaintiff the full amount of the Investment Payment to be used in the Plaintiff's sole discretion. *Id.* ¶ 4.68. Several years later, in May 2025, Plaintiff sold his property (for less than its appraised value). *Id.* ¶¶ 4.72, 4.34. The sale triggered Unlock's rights under the FSEA, and Plaintiff paid Unlock the agreed-upon sum under the FSEA. *See id.* ¶ 4.73; *see also* Unlock Decl. Ex. D ("Payoff Request Statement").

## C.    Plaintiff Agreed to Arbitrate This Dispute.

The FSEA contains an arbitration agreement that appears under the bolded and underlined heading titled "**Arbitration**." FSEA ¶¶ 20.1–20.7; *see also* Sample FSEA ¶¶ 20.1–20.7 (the identical arbitration provision). Unlike preceding sections, the arbitration agreement laid out in this section is in all capitalized font prominently calling out its significance. For example, the arbitration agreement states:

> OWNER AGREES THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH BENEFICIARY… ARISING OUT OF, RELATING TO, OR RESULTING FROM THE UNLOCK AGREEMENT OR THE PROPERTY SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES OF JAMS ….

FSEA ¶ 20.2.

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 4
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

The agreement further confirms that:

> BECAUSE THIS AGREEMENT SUBSTANTIALLY AFFECTS INTERSTATE COMMERCE THE PARTIES AGREE THIS AGREEMENT, INCLUDING ITS ENFORCEMENT IS TO BE GOVERNED BY THE FEDERAL ARBITRATION ACT. 9 U.S.C. § 1 ET SEQ.

*Id.*

The arbitration agreement goes on to reinforce the mandatory nature of arbitration, stating that:

> EXCEPT AS PROVIDED BY THE RULES AND THE UNLOCK AGREEMENT, ***ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN THE OWNER AND [UNLOCK].*** REMEDIES THAT WOULD OTHERWISE BE AVAILABLE TO OWNER UNDER APPLICABLE FEDERAL, STATE OR LOCAL LAWS SHALL REMAIN AVAILABLE. THE ARBITRATOR WILL HAVE NO AUTHORITY TO AWARD PUNITIVE DAMAGES OR CONSEQUENTIAL DAMAGES. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THE UNLOCK AGREEMENT, ***NEITHER THE OWNER NOR [UNLOCK] WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION.***

*Id.* ¶ 20.4 (emphasis added).

## D.   Procedural History

Notwithstanding the arbitration agreement and its attendant class action waiver, Plaintiff filed a putative class action Complaint in King County Superior Court on February 5, 2026. *See* Dkt. 1-1. Plaintiff served Unlock on February 24, 2026, and Unlock timely removed the case to this Court on March 25, 2026. *See* Dkt. 1.

## III.   ARGUMENT

### A.   The Court Should Enforce the Arbitration Agreement According to Its Terms.

Because the arbitration agreement expressly invokes the FAA,[1] and Plaintiff's dispute arises from interstate commerce,[2] the FAA applies. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52,

---

[1] FSEA ¶ 20.2 (arbitration agreement and "its enforcement is to be governed by the Federal Arbitration Act").

[2] *Compare* Compl. ¶¶ 1.3 (allegations of nationwide conduct), 5.2 (same), 7.5 ("Unlock's marketing and sale of its Exchange Agreements occurred in trade or commerce …."), and 8.4 (same), *with* 9 U.S.C. § 2 (FAA applies where there is a "written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction"). Moreover, because the transaction at issue required use of the internet, it affected interstate commerce. *See United States v. Sutcliffe*, 505 F.3d 944,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

56 (2003).  Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. The FAA reflects federal policy recognizing that "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019).  Congress enacted the FAA to overcome judicial hostility to arbitration because "in Congress's judgment arbitration ha[s] more to offer than courts recognize[]—not least the promise of quicker, more informal, and often cheaper resolutions for everyone involved."  *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018) (FAA "requires courts 'rigorously' to 'enforce arbitration agreements'") (citation omitted).

Under the traditional analysis, "[t]he FAA limits federal court review of arbitration agreements to two gateway arbitrability issues: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'"  *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023).  Arbitration agreements can, however, contain language evidencing the parties' intent to delegate gateway issues, such as "the ***enforceability***, ***revocability, scope, or validity*** of the [a]rbitration [a]greement or any portion of the [a]rbitration [a]greement," to the arbitrator.  *Id.* at 1008 (emphasis added).  Under such circumstances, the arbitrator decides gateway issues of arbitrability, not the court.  *Id.* at 1009 ("Delegation provisions further limit federal court review by assigning these gateway questions to an arbitrator.") (citing *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999–1000 (9th Cir. 2021).  When an arbitration agreement delegates gateway questions to the arbitrator, a court "has 'no power to decide the arbitrability issue.'" *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480 (9th Cir. 2024) (quoting *Henry Schein*, 586 U.S. at 68)).  And when the parties delegate those issues to the arbitrator, the Court's only task is to determine if a valid agreement was formed.  *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022); *Henry Schein*, 586 U.S. at 69.

953 (9th Cir. 2007); *Hofer v. Emley*, 2019 WL 4575389, *12 (N.D. Cal. 2019).

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 6
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Here, the Court should compel individual arbitration and stay the case because Plaintiff knowingly and voluntarily signed and agreed to the arbitration agreement contained in the FSEA, and the arbitration agreement delegated all threshold issues to the arbitrator.

### 1.    A Valid Arbitration Agreement Exists Between Plaintiff and Unlock.

To assess an agreement's validity, courts apply ordinary state-law contract principles. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  In Washington, "[t]he validity of an arbitration agreement depends on mutual assent to essential terms."  *See Okelo v. Antioch Univ.*, 601 F. Supp. 3d 894, 897 (W.D. Wash. 2022) (citing *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 48, (2020)).[3]  Assent to an agreement is determined based on the party's objective actions.  *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177 (2004).

Plaintiff assented to the arbitration agreement.  Unlock disclosed the arbitration agreement to Plaintiff multiple times in multiple documents, and he affirmed his understanding of those documents when he signed the Investment Closing Statement.  Sample FSEA ¶¶ 20.1–20.7; ICS at 5.  Plaintiff admits voluntarily signing the FSEA and "enter[ing] into" the Unlock agreement.  Compl. ¶ 4.63; *see also id.* ¶¶ 3.1, 4.68.  That admission is sufficient, as the touchstone of the Court's inquiry is "objective manifestation" of assent.  *Keystone Land*, 152 Wn.2d at 177.  For this reason, Plaintiff's claim that he did not understand the FSEA's terms, *see* Compl. ¶¶ 10.2.c–10.2.g, is "irrelevant."  *Weiss v. Lonnquist*, 153 Wn. App. 502, 511 (2009).  "A fundamental principle of Washington contract law is that a party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or was ignorant of its contents."  *Wash. Fed. Sav. & Loan Ass'n v. Alsager*, 165 Wn. App. 10, 14 (2011) (citation & internal quotation marks omitted).  Indeed, at the time he signed the Investment Closing

---

[3] The parties are in apparent agreement that Washington law governs this dispute.  *See* Compl. ¶¶ 1.6 ("Mr. Seong brings this lawsuit … to vindicate his rights under Washington law."), 6.1–9.3 (claims brought under the Washington Consumer Loan Act and Washington Consumer Protection Act); FSEA ¶ 21.15 ("The [FSEA] will be governed by the law of the state in which the Property is located.").

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 7
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Statement, Plaintiff affirmatively represented that he read and understood the "sample contract documents" he received containing the arbitration agreement itself, as well as Unlock's Product Guide, which disclosed that any disputes relating to the FSEA were subject to arbitration. *See* ICS at 5; *see also* Compl. ¶ 4.61; Unlock Decl. Ex. C (Sample FSEA) ¶¶ 20.1–20.7, Ex. E ("Product Guide") at 26.

Plaintiff had both notice of the arbitration agreement's existence and objectively manifested assent to be bound by it by signing the FSEA. A valid arbitration agreement thus exists between Plaintiff and Unlock.

### 2. The Parties Delegated Any Arbitrability Issues to the Arbitrator.

"[F]ederal law governs the arbitrability question" of arbitration agreements expressly invoking the FAA, as here. *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). Under the FAA, courts must interpret arbitration agreements as written and give effect to language evidencing the parties' intent to delegate issues to the arbitrator. *Henry Schein*, 586 U.S. at 68. Thus, "gateway issues can be expressly delegated to the arbitrator where the parties ***clearly and unmistakably*** provide" as such. *Brennan*, 796 F.3d at 1130 (citation & internal quotation marks omitted). When the parties make such a delegation, "'a court may not override the contract' and has 'no power to decide the arbitrability issue.'" *Patrick*, 93 F.4th at 480 (quoting *Henry Schein*, 586 U.S. at 68). Contract formation ends the Court's inquiry because the arbitration agreement delegates arbitrability to the arbitrator. *Henry Schein*, 586 U.S. at 69.[4]

### a. The Parties Incorporated the JAMS Rules Thereby Delegating Arbitrability Issues, Such as Enforceability of the Arbitration Agreement, to the Arbitrator.

In the Ninth Circuit, "[i]ncorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability." *Patrick*, 93 F.4th at 481.

---

[4] Once an agreement to arbitrate is found, the Court may resolve only arguments "specifically" challenging a delegation clause itself—as opposed to challenges that apply to a contract or arbitration agreement "as a whole." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–72 (2010) (citation & internal quotation marks omitted); *see also Caremark*, 43 F.4th at 1029.

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 8
(No. 2:26-cv-01023-JLR)

Here, the arbitration agreement incorporates the JAMS rules, explicitly stating that arbitration shall proceed in accordance with the JAMS Comprehensive Arbitration Rules and Procedures, and that those Rules shall control over any other procedural rules that might conflict with them. FSEA ¶ 20.3. And, in turn, JAMS Rule 11(b) states that:

> Jurisdictional and arbitrability disputes, including ***disputes over the formation, existence, validity, interpretation or scope*** of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, ***shall be submitted to and ruled on by the Arbitrator***. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Comprehensive Arb. Rules & Procs. R. 11(b) (2021) (emphasis added).[5]

By incorporating JAMS's arbitration rules, the parties agreed that any challenge to arbitrability is referred to the arbitrator. *See Sandler v. Modernizing Med., Inc.*, 170 F.4th 1209, 1212 (9th Cir. 2026) (arbitration agreement incorporating JAMS rules means the parties agreed to delegate the question of the agreement's validity to the arbitrator); *see also Briggs v. Serv. Corp Int'l*, 2023 WL 2075958, *7 (W.D. Wash. 2023) (same) (Robart, J.); *Reynolds v. Safeway, Inc.*, 2023 WL 2560853, *4 (W.D. Wash. 2023) (same; collecting cases); *Moreno v. T-Mobile USA, Inc.*, 2023 WL 401913, *5 (W.D. Wash. 2023) (same).

### b.    Plaintiff's TILA and Unconscionability Arguments Must Be Decided By the Arbitrator In the First Instance.

Challenges to arbitrability encompass arguments challenging enforceability of the arbitration agreement. *Caremark*, 43 F.4th at 1030. Plaintiff's arguments that the FSEA is unenforceable because of TILA or doctrines of unconscionability, Compl. ¶¶ 4.77, 10.1–10.4, are thus issues the arbitrator must decide in the first instance.

Plaintiff's TILA argument "is a challenge to the enforceability of the arbitration provisions as a whole[,]" and thus a gateway question that the arbitrator must decide. *See Caremark*, 43 F.4th at 1033–34 (whether Indian Health Care Improvement Act's statutory bar to arbitration applied to claims "raise[d] exactly the type of threshold arbitrability issue that the parties have delegated to the arbitrator") (citations omitted). For this reason, courts refuse to reach the very issue Plaintiff raises, recognizing that whether TILA applies to bar arbitration is

---

[5] Available at https://www.jamsadr.com/rules-comprehensive-arbitration.

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 9
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

an issue of arbitrability the parties agreed to delegate to the arbitrator. *See Attix v. Carrington Mortg. Servs, LLC*, 35 F.4th 1284, 1308 (11th Cir. 2022) ("Whether [TILA, as amended by the Dodd-Frank Act] even applies to the parties' contract at all is a quintessential arbitrability question."); *Olsen v. Unison Agreement Corp.*, 2023 WL 4492346, *2 (W.D. Wash. 2023) ("whether the parties' dispute falls within the scope of [TILA's (as amended by the Dodd-Frank Act)] protections against arbitration" is a question of arbitrability delegated to the arbitrator); *Sitzman v. EK Real Estate Servs. of NY LLC*, 2022 WL 17853214, *8 (N.D. Tex. 2022) ("[W]hether … TILA prohibits arbitration of this dispute is a gateway question of arbitrability that the parties have agreed to delegate to the arbitrator.").  Because TILA does not bar delegation of arbitrability to the arbitrator, the Court should not reach the merits of Plaintiff's invocation of TILA's Section 1639c(e).  *Chlarson v. EK Real Estate Servs. of NY, LLC*, 2022 WL 2392648, *7 (W.D. Tex. 2022) ("[N]othing in the TILA provisions invoked here—either § 1639c(e)(1) or (e)(3)—bars the delegation of questions of arbitrability."); *Sparrow v. EK Real Estate Servs., NY, LLC*, 2023 WL 3035359, *13 (E.D. Tex. 2023) (same).

And so too must the arbitrator resolve Plaintiff's general unconscionability challenge. *See Brennan*, 796 F.3d at 1133 (unconscionability challenge was a question for the arbitrator in light of delegation provision); *Sandler*, 170 F.4th at 1214 (vacating order holding arbitration unconscionable because "the district court should not have addressed this issue in the first place, but instead should have enforced the delegation clause requiring an arbitrator's resolution"); *Sitzman*, 2022 WL 17853214, *8 ("Plaintiffs' unconscionability arguments are similarly delegated to the arbitrator under the agreement's delegation clause.").

### c.    TILA Does Not Bar Arbitration Here.

The Complaint admits that the FSEA Plaintiff signed "includes a mandatory arbitration clause," but cites TILA in asserting that "federal law prohibits arbitration clauses in residential mortgage loans." Compl. ¶ 4.77 (citing 15 U.S.C. § 1639c(e)).  Under TILA, "[n]o residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration … as the method

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 10
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

for resolving any controversy or settling any claims arising out of the transaction." 15 U.S.C. § 1639c(e)(1). TILA also states that no "provision" for such a loan or extension of credit, or any "other agreement between the consumer and the creditor relating to the residential mortgage loan or extension of credit," "shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States, or any other court of competent jurisdiction … for … any alleged violation of [TILA] … or any other Federal law." *Id.* § 1639c(e)(3),

The Court need not and should not reach Plaintiff's TILA arguments for the reasons explained above, but even if that were not the case, the arguments are without merit. TILA's bar on arbitration provisions for residential mortgage loans or extensions of credit does not apply for multiple reasons: (1) the FSEA is neither a "residential mortgage loan" nor an "extension of credit," as confirmed by the Staff Commentary on TILA; and (2) Section 1639c(e)(3) applies only where there is a federal cause of action—and no such cause of action has been alleged here.

### (1) The FSEA is not a "residential mortgage loan" or an "extension of credit" because the FSEA does not provide "credit."

Even if this Court were to consider whether Section 1639c(e) applies, the answer is "no." Section 1639c(e)(1) works in tandem with Section 1639c(e)(3) to "exclude[] claims … from being subject to forced arbitration." *Marino v. Aven Fin., Inc.*, 2025 WL 2988369, *5 (S.D. Cal. 2025), *appeal docketed*, No. 25-7291 (9th Cir. 2025). Both subsections require a predicate "residential mortgage loan" or an "extension of credit under an open end consumer credit plan." And both predicates require a common denominator missing here: credit.[6]

TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). The statute does not define "debt," but the word has a plain and ordinary meaning: "[l]iability on a claim; a specific sum of

---

[6] A "residential mortgage loan" is "any consumer *credit* transaction that is secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling or on residential real property that includes a dwelling, other than a consumer credit transaction under an open end credit plan." 15 U.S.C. § 1602(dd)(5) (emphasis added).

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 11
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

money due by agreement or otherwise." *Debt*, Black's Law Dictionary (12th ed. 2024); *see also Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012) ("When a term goes undefined in a statute, we give the term its ordinary meaning."); *City of Seattle v. Long*, 198 Wn.2d 136, 155 (2021) (relying on the Black's Law Dictionary definition of "debt" in interpreting a state statute); *Feeman v. Bridge It, Inc.*, --- F. Supp. 3d ---, 2026 WL 880508, *7 (S.D.N.Y. 2026) (adopting the Black's Law Dictionary definition in interpreting what constitutes a "debt" under TILA).

The FSEA does not provide any form of "credit," as it does not leave property owners like Plaintiff in a "state of being under obligation to pay or repay someone or something in return for something received." *See id.* (citation & internal quotation marks omitted). Plaintiff had no "obligation to pay or repay" under the FSEA: the FSEA expressly states that "[t]he Investment Payment is not a loan to [Plaintiff] or indebtedness to Unlock, nor is it a principal amount which Unlock is entitled to recover at any time." FSEA ¶ 1.4. Plaintiff did not owe "a specific sum of money" to Unlock through the FSEA, nor did he have any obligation to repay the Investment Payment. These features are common with shared equity agreements like the FSEA: they have "no underlying unpaid principal balance subject to periodic interest payments that amortize," and they come with no "obligation to advance principal and interest payments to an investor." Laurie Goodman & Katie Visalli, *How Shared Equity Products Work, Who is Using Them, and Regulatory Recommendations*, Urban Institute, 28–29 (Mar. 2026).[7] Likewise, the FSEA does not provide Unlock with a right to demand any kind of payment for the Investment Payment—the absence of the "legal right to collect" demonstrates the FSEA did not impose any kind of "debt." *Birchfield v. Rushmore Loan Mgmt. Servs., LLC*, 2019 WL 9832188, *9 (N.D. W. Va. 2019) ("In the context of debt, specifically, included in all of the definitions above is 'the right to demand payment.'").

To be sure, Unlock receives a to-be-determined Settlement Payment when one of several Settlement Events occurs: the sale of the property, the buyout of the FSEA/Unlock's interest in

---

[7] Available at https://www.urban.org/sites/default/files/2026-02/Final_How_Shared_Equity_Products_Work.pdf.

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 12
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the property by the property owner, the death of the property owner, the expiration of the FSEA's ten-year term (and Unlock's exercise of discretion), or specified significant events of default.  FSEA ¶ 1.8.2.  But the fact that Unlock receives an (uncertain) payment upon the occurrence of certain contingent events does not transform the FSEA into a "residential mortgage loan" or an "extension of credit."  Not every "promise to pay upon the occurrence of a particular contingency" reflects a debt, despite Plaintiff's assertion to the contrary.  *E.g.*, *Buckman v. Am. Bankers Ins. Co. of Fla.*, 115 F.3d 892, 894 (11th Cir. 1997) (contingent note and mortgage for bail bond indemnity agreement is not an "extension of credit").

This is why several courts evaluating a shared-equity contract similar to the FSEA have recognized that TILA did not apply because there is no "credit" involved.  Consider *Foster v. Equitykey Real Estate Inv. L.P.*, 2017 WL 1862527 (N.D. Cal. 2017), a case that involved a contract where a company paid a $196,000 "option payment" in exchange for having "the right to participate in 100% of the appreciation of [an individual homeowner's property]."  *Id.* at *1.  The contract allowed the company to exercise its option:  (1) if the property was sold, transferred, or otherwise changed ownership; (2) there was a breach of the option agreement; or (3) the agreement expired.  *Id.* at *2.  If the agreement expired, the company had the discretion to "call or exercise its option within 90 days of the end of term."  *Id.*

The *Foster* court held that the arrangement was an "option contract" not subject to TILA.  *Id.* at *5.  In so doing, the court cited the Staff Commentary on TILA,[8] which specifically "excludes" option contracts from the definition of "credit" in Regulation Z, TILA's implementing regulation.  *Id.*  As the *Foster* court found, Regulation Z defined "credit" as "the right to defer payment of debt or to incur debt and defer its payment."  *Id.* (quoting 12 C.F.R. § 226.2(a)(14)).  The court then held that the agreement bore the hallmarks of an option contract: the company paid the homeowner "valuable consideration … to secure an option to participate in

---

[8] The Commentary has long been treated as "dispositive," *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980), and generally "accepted by the courts," *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219 (1981).

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 13
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the appreciation of [the homeowner's] property." *Id.* The company was "not obliged to exercise its option," and it could "ultimately lose money on the deal." *Id.* The court found the agreement also bore "many features of an 'investment plan,'" which likewise does not involve extending "credit." *Id.* The company "risked the loss of the capital it advanced," and there was a possibility that the company "would lose money on the deal." *Id.*; *see also Goldwater Bank, N.A. v. Elizarov*, 2022 WL 18231680, *1 (C.D. Cal. 2022) (shared equity option agreement "more closely resembles an investment than a loan"), *rev'd on other grounds sub nom. Goldwater Bank, N.A. v. Bank of the West*, 2025 WL 841846 (9th Cir. 2025).

Taken together, the Staff Commentary and cases like *Foster* demonstrate that the FSEA is not "credit" and therefore falls outside of TILA's scope. The FSEA gives Unlock "the right to participate" in the future value of Plaintiff's property. *See* 2017 WL 1862527, *1. At the end of its term, the FSEA gives Unlock the discretion to convert its investment into an ownership or to do nothing—it is a voluntary election. *See id.* at *2; *see also* FSEA ¶ 5.5; *In re Yang*, 2023 WL 7104764, *2 (Bankr. S.D. Ind. 2023) (similar agreement did not impose a "remaining obligation to elect on the option"). Much like the agreement in *Foster*, that prescription of discretion means that the FSEA does not impose a debt. Even if it is *likely* that Unlock will exercise that discretion, that does not make the accompanying obligation "certain" enough to turn the Settlement Payment into an imposition of debt. *Foster*, 2017 WL 1862527, *4 n.2 ("It appears *likely* that housing values in fifty years will be greater than they were in 2010, and that EquityKey will call the option. But this is not certain."). And like the agreement in *Foster*, the FSEA bears the hallmarks of an "investment plan." The Investment Payment represents the capital that Unlock invested in the future value of Plaintiff's home. Through the FSEA, Unlock "share[d] in any gain or loss property value," 12 C.F.R. pt. 1026, supp. I, pt. 1, cmt. 2(a)(14)(1)(viii), and, as the FSEA itself recognized, Unlock "risked the loss of the capital it advanced," *Foster*, 2017 WL 1862527, *1; FSEA ¶ 21.5 ("Unlock may lose all or a portion of the Investment Payment.").

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 14
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

All told, Section 1639c(e) does not apply because the FSEA does not confer "credit" for a host of distinct but related reasons:  (i) the FSEA does not create a "debt," (ii) the FSEA is an option agreement, and (iii) the FSEA is an investment plan.  If the FSEA does not provide "credit," then the underlying transaction cannot be either a "residential mortgage loan" or an "extension of credit," as required by Section 1639c(e).

**(2)    TILA Section 1639c(e)(3) does not apply because Plaintiff has not asserted a federal claim.**

Section 1639c(e)(3) applies only where a consumer "bring[s] an action … for damages or other relief in connection with any alleged violation of [TILA], … or any other Federal law."  The language is "clear and unambiguous:  a consumer cannot be prevented from ***bringing a TILA action in a federal district court*** by a provision in an agreement 'relate[d]' to a residential mortgage loan—like a HELOC."  *Lyons v. PNC Bank, N.A.*, 26 F.4th 180, 186 (4th Cir. 2022) (emphasis added) (quoting 15 USC § 1639c(e)(3)).  But Plaintiff does not allege "a TILA action," or a violation of "any other Federal law."  He alleges violations of the Consumer Loan Act and the CPA.  Compl. ¶¶ 6.20, 7.2, 8.2, 9.2.  The crux of his theory of liability is that Unlock allegedly "does not follow" Washington state laws.  Compl. ¶ 4.25.  The Complaint includes only fleeting references to federal law:  that Unlock has allegedly "been aware … its products will be considered loans under federal and state laws," and that Unlock's agreement requires a disclaimer of the application of "any federal, state and/or local law concerning consumer credit."  Compl. ¶¶ 4.74–4.75.  Because there is no "alleged violation of … Federal law" found in the Complaint, Plaintiff cannot invoke Section 1639c(e)(3) to bar arbitration here.

**3.    Plaintiff's Unconscionability Argument Does Not Bar Arbitration.**

Even if the Court were to reach Plaintiff's unconscionability challenge, on which he bears the burden,[9] his arguments, Compl. ¶ 10.2—fail on the merits.

*First*, "procedural unconscionability is the lack of meaningful choice, considering all the circumstances surrounding the transaction."  *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293,

---

[9] Plaintiff bears the burden of showing the agreement is unenforceable.  *Briggs*, 2023 WL 2075958, *3; *see also Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024).

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 15
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

303 (2004) (citation modified.  The existence of an adhesion contract or unequal bargaining power does not inherently render an agreement procedurally unconscionable.  *Id.* at 304–05.  "Rather, the key inquiry for finding procedural unconscionability is whether [Plaintiff] lacked meaningful choice."  *Id.* at 305–06.

Here, Plaintiff had a meaningful choice when deciding to sign the FSEA.  He was the party who initiated contact with Unlock, *see* Compl. ¶ 4.55, and when he was unsatisfied with Unlock's initial investment estimate, he asked for an increased payment estimate, *see id.* ¶¶ 4.56–4.57.  Before signing the FSEA he was presented with the Investment Estimate, Product Guide, a Sample FSEA, and the ICS, all of which provided him with the key terms of the FSEA.  *See* Compl. ¶¶ 4.56, 4.61; *see generally* Investment Estimate; Product Guide; Sample FSEA; ICS.  And Unlock did not hide that this was a significant financial transaction—it recommended that Plaintiff seek advice of financial and legal advisors, and Unlock was even willing to speak with those advisors directly if they had questions.  *See* FSEA ¶ 11.8 (stating, in bolded font, that Unlock "**urged [Plaintiff] to discuss the [FSEA] with family members, heirs, and with independent tax, legal and financial advisors to ensure an understanding of the risks and benefits of the [FSEA]**"); Investment Estimate at 4; ICS at 5.  Plaintiff was repeatedly provided with the terms of the agreement and had a meaningful choice to *not* transact with Unlock and obtain funding elsewhere.  *See Teuscher v. CCB-NWB, LLC*, 437 F. Supp. 3d 849, 857 (E.D. Wash. 2020) (rejecting procedural unconscionability argument where plaintiff "did not have to engage in the services, and could have sought the services elsewhere"); *Westcott v. Wells Fargo Bank, N.A.*, 862 F. Supp. 2d 1111, 1120 (W.D. Wash. 2012) (existence of competitive marketplace where consumers may choose from various providers weighed against unconscionability).  There is no procedural unconscionability on these facts.

*Second*, "[s]ubstantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh.  'Shocking to the conscience', 'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 16
(No. 2:26-cv-01023-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

unconscionability." *Zuver*, 153 Wn.2d at 303 (citations omitted). Plaintiff cannot meet his burden on substantive unconscionability either.

Here, Plaintiff benefited by receiving an Investment Payment of $190,509 from Unlock, without any obligation to repay that amount, and while retaining full ownership and control over his property (and the Investment Payment). In exchange, Unlock received the right to a specified percentage interest in the future value of the property. There is nothing "shocking to the conscience," "monstrously harsh," or "exceedingly calloused" about a property owner paying out an equity investor's previously agreed to share upon the occurrence of contractually agreed to events. *Cf. Noble v. Wolford*, 29 Wn. App. 2d 1049, 2024 WL 685788, *4–5 (2024) (unpublished) (no substantive or procedural unconscionability present in transaction, which was found not to be a mortgage, where defendant-employer paid off tax debt of plaintiff-employee's personal property in exchange for quitclaim deeds to property and agreement for future repayment). There is nothing substantively unconscionable about the FSEA.

**B.      The Court Should Stay This Action Pending Arbitration.**

Once the Court is satisfied a suit should be moved to arbitration, it "shall … stay the trial of the action." 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). The Court should stay Plaintiff's claims pending the outcome of his individual arbitration.

### IV.      CONCLUSION

For the foregoing reasons, the Court should compel Plaintiff to arbitrate his claims on an individual basis and stay this case pending the resolution of that arbitration.

*I certify that this memorandum contains 6,219 words, in compliance with the Local Civil Rules.*

Davis Wright Tremaine LLP
Attorneys for Unlock Partnership Solutions Inc.

By */s/ Fred Burnside*
Fred B. Burnside, WSBA #32491
Xiang Li, WSBA #52306
Alec Zatirka, WSBA #63873
Email: fredburnside@dwt.com
           xiangli@dwt.com
           aleczatirka@dwt.com

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 17
(No. 2:26-cv-01023-JLR)

Goodwin Proctor LLP
Attorneys for Unlock Partnership Solutions, Inc.

*/s/ Matthew S. Sheldon* (*pro hac vice* pending)
Matthew S. Sheldon, DC Bar No. 998754
1900 N Street, NW
Washington, DC 20036
Tel: (202) 346-4027
Email: MSheldon@goodwinlaw.com

DEFENDANT'S MOTION TO COMPEL ARBITRATION - 18
(No. 2:26-cv-01023-JLR)