The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATLE

SEUNGJAE SEONG, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

UNLOCK PARTNERSHIP SOLUTIONS INC.,

Defendant.

No. 2:26-cv-01023-JLR

DECLARATION OF JAMES RICCITELLI IN SUPPORT OF DEFENDANT UNLOCK PARTNERSHIP SOLUTIONS INC.'S MOTION TO COMPEL ARBITRATION

NOTE ON MOTION CALENDAR UNDER LCR 7(d)(4) & DKT. 7:
June 8, 2026

I, James Riccitelli, under 28 U.S.C. § 1746, declare that the following is true and correct based on my personal knowledge and review of company records kept in the ordinary course of business.

1. I am the Chief Executive Officer of Defendant Unlock Partnership Solutions Inc. ("Unlock"). Through that role, I am familiar with Unlock's business operations and practices. In preparing this declaration, I have reviewed Unlock's available business records concerning the facts set forth herein. The records I have reviewed were created, kept, and maintained as part of Unlock's regularly conducted activities in the normal course of business.

2. As its primary business, Unlock offers an arrangement known as a Forward Sale and Exchange Agreement ("FSEA").



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

3. The FSEA is an agreement by which an owner of property is paid a certain amount in exchange for a right to receive a specified percentage interest in the value of the property.

4. Unlock considers each FSEA to be an investment in that property. Any return on its investment depends on the property's future value, the time at which the owner chooses to exit the investment, up to a maximum of ten years, and the amount of debt that may be superior to Unlock's lien. If the property's value depreciates, stays the same, or appreciates at a slower rate than forecasted, Unlock realizes far less return on its investment—and in some circumstances, Unlock can sustain a significant loss, up to the full amount of the original investment.

5. At the time the FSEA is signed, Unlock receives no conveyance or title for its interest in the property. As Unlock is not able to exercise any control over the property, it must trust that the owner will protect their joint investment.

6. In connection with the FSEA, the owner is not obligated to pay back the Investment Payment or to make any periodic payments of principal or interest.

7. Attached as **Exhibit A** is a true and correct copy of the "Investment Estimate," and its attendant DocuSign Summary, that Unlock sent to Plaintiff Seungjae Seong via DocuSign on July 14, 2022, and which was signed by Mr. Seong that same day.

8. Attached as **Exhibit B** is a true and correct copy of the "Investment Closing Statement," and its attendant DocuSign Summary, that Unlock sent to Mr. Seong via DocuSign on August 16, 2022, and which was signed by Mr. Seong on August 17, 2022.

9. Attached as **Exhibit C** is a true and correct copy of the sample FSEA that Unlock sent to Mr. Seong via DocuSign on August 16, 2022.

10. Attached as **Exhibit D** is a true and correct copy of the "Payoff Request Statement" dated April 21, 2025, provided by Unlock to Mr. Seong.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

11. In connection with each FSEA, Unlock sends a Product Guide outlining the details of its financial product. Attached as **Exhibit E** is a true and correct copy of the "Unlock Product Guide" that Unlock sent to Mr. Seong via DocuSign on July 14, 2022.

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on April 15, 2026.

DocuSigned by:
James Riccitelli
C8AC84B55721412...

James Riccitelli



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# EXHIBIT A

Unlock Partnership Solutions Inc.

270 Madison Avenue, Suite 702, New York, NY 10016

*Save a copy of this estimate for your records. Before closing, terms from this estimate may change.*

# Investment Estimate and Summary of Key Terms

| | | | |
|---|---|---|---|
| **DATE ISSUED** | 07/14/2022 | **MAX TERM** | 10 year(s) |
| **APPLICANTS** | Seungjae Seong & Do Youn Kim | **PURPOSE** | Unlock Equity |
| **PROPERTY** | [redacted] | **PRODUCT** | Home Equity Agreement (HEA) |
| | | **OCCUPANCY** | Principal residence |
| | | **HEA #** | [redacted] |

| Investment Terms | | Explanation |
|---|---|---|
| **Starting Home Value** | $1,067,841 | Estimated and subject to appraisal; may affect the Investment Percentage and Unlock Percentage if it changes. |
| **Investment Payment** | $100,000 | The gross amount of money you receive from Unlock's investment in your home. This is not a loan. No interest is charged on the Investment Payment and there are no monthly payments due. |
| **Investment Percentage** | 9.36% | Investment Payment as a % of Starting Home Value. |
| **Exchange Rate** | 1.70x | The price of your HEA; subject to underwriting. |
| **Unlock Percentage** | 15.92% | In exchange for an up front cash payment of 9.36% of your home's value, Unlock will receive 15.92% of your home's value when your HEA ends. (9.36% X Exchange Rate of 1.70x = 15.92%) |
| **Annualized Cost Limit** | 21.00% | Maximum cost of your HEA per year from start to end, expressed as a percentage rate of investment return; subject to underwriting. |
| **Home Finance Limit** | 80.00% | Maximum amount of debt and equity financing secured by your home, expressed as a percentage of home value. |

*See page 3 of this document for additional information on investment terms*

## Annualized Cost

*The cost of your HEA depends on Ending Home Value. To make it easier to compare to a loan it may be helpful to consider Annualized Cost under various scenarios and compare with an interest rate or APR.*

| Ending Year | Year 1 | Year 10 |
|---|---|---|
| Ending Home Value | $1,094,537 | $1,334,802 |
| Unlock Percentage | Unlock Share is capped by the 21.00% Annualized Cost Limit | X 15.92% |
| Unlock Share | $121,000 | = $212,500 |
| Annualized Cost | 21.00% | 7.83% |

*These two examples assume your Unlock HEA ends after exactly 1 year and 10 years, with increases in home value of 2.5% and 25%, respectively. See Page 3 for additional information and examples.*

## Net Closing Proceeds

| Net Closing Proceeds | | |
|---|---|---|
| **Fees, Expenses And Credits** | $4,636 | $3,000 in Origination Charges + $1,465 in Third Party Transaction Expenses + $171 in Other Expenses - $0 in Credits. |
| **Estimated Net Closing Proceeds to Homeowner** | $95,364 | Investment Payment of $100,000 - $0 in Payoffs to Third Parties - $4,636 in Fees and Expenses. See Net Closing Proceeds Calculation on Page 2. |

# Estimated Closing Statement

*These costs are estimated. A final statement with actual costs will be provided in advance of closing.*

## Investment Costs

| | |
|---|---|
| **A. Origination Charges** | **$3,000** |
| Unlock Origination Fee (3.0%) | $3,000 |
| **B. Third-Party Transaction Expenses** | **$1,465** |
| Appraisal Cost | $500 |
| Settlement Cost | $895 |
| Deed Preparation | $70 |
| **C. TOTAL INVESTMENT COSTS (A + B)** | **$4,465** |

## Other Expenses

| | |
|---|---|
| **D. Taxes and Other Government Fees** | **$171** |
| Recording Fees - Mortgage | $171 |
| **E. Other** | **$0** |
| **F. TOTAL OTHER EXPENSES (D + E)** | **$171** |
| **G. CREDITS** | **$0** |
| **H. FEES, EXPENSES AND CREDITS (C + F + G)** | **$4,636** |

## Payoffs

| | |
|---|---|
| Estimated Payoffs | $0 |

## Net Closing Proceeds

| | |
|---|---|
| Investment Payment | $100,000 |
| Fees, Expenses And Credits (H) | - $4,636 |
| Estimated Payoffs (I) | - $0 |
| Estimated Net Closing Proceeds | $95,364 |

## Additional Information About This Investment

**Important Provisions**

**Annualized Cost**

Annualized Cost is the cost of the Unlock HEA per year from start to end. It equals the rate of investment return that grows the Investment Payment to the Unlock Share over the exact term (years, months and days) and it is calculcated exclusive of the Origination Fee and all transaction expenses. The table below displays Annualized Cost for various combinations of ending year and annual home price appreciation. Let's say your home appreciates by an average of 2% annually and you end your Unlock HEA after 10 years. You will pay Unlock $212,500 and your Annualized Cost will be 7.83%. Note how the 21.00% Annualized Cost Limit applies in earlier years.

| Annual Home Price Appreciation | Ending term: 1 | 2 | 3 | 5 | 10 |
|---|---|---|---|---|---|
| -2% | 21.0% | 21.0% | 17.0% | 9.0% | 3.3% |
| 0% | 21.0% | 21.0% | 19.4% | 11.2% | 5.4% |
| 2% | 21.0% | 21.0% | 21.0% | 13.4% | 7.6% |
| 4% | 21.0% | 21.0% | 21.0% | 15.6% | 9.7% |
| 6% | 21.0% | 21.0% | 21.0% | 17.9% | 11.8% |

Annualized Cost Limit

**Improvement Adjustment**

If you make significant home improvements, you can request an Improvement Adjustment to the Ending Home Value when your HEA ends so that Unlock does not share in value added to the home by your improvements. The adjustment amount is determined by an independent appraisal. Certain conditions apply and there is a $10,000 materiality minimum.

**Maintenance Adjustment**

You must maintain your home in good condition, subject to normal wear-and-tear. If you don't, Unlock can make a Maintenance Adjustment to the Ending Home Value so that we do not share in any lost value. The amount is based on third- party appraisals, inspections and repair estimates and there is a $10,000 materiality minimum.

**Staying Current On Housing Expenses**

This investment requires homeowner's insurance on the property, which you may obtain from a company of your choice that we find acceptable. You must also remain current on your mortgage, property taxes, HOA dues and any other housing expenses. Note that we may need your help in adding Unlock as a mortgagee and/or additional interest on your home insurance policy.

**Home Finance Limit**

Total Home Finance is limited to 80.00% of the home value. The limit applies only to financing secured by your home. You can borrow against your home during the term of your HEA as long as you don't exceed the Home Finance Limit.

Outstanding Balances of Mortgage Debt
+ Secured Credit Lines Undrawn Balances
+ Unlock Share w/o Annualized Cost Limit
= Total Home Finance

**Refinance Impact**

A mortgage lender may not agree to lend on a property with an Unlock HEA to the same extent or on the same terms as they would for a property without an Unlock HEA. It is possible that you will need to terminate your HEA in order to complete a future home loan.

**Occupancy**

If your home is a principal residence or second home, you may rent a portion of it as long you occupy the property. If occupancy is declared as principal residence and you convert to a second home or rental property, Unlock may lower the Home Finance Limit. When your HEA ends, if there is an existing rental agreement or tenant that is negatively impacting the Unlock Share, you will be responsible to remove the tenant or compensate Unlock for any loss.

**Impact on Heirs**

The Unlock HEA typically ends when you decide to sell your home or buy us out. However, in an unfortunate circumstance where the last signatory to the HEA passes, your estate will need to settle with Unlock via property sale or buyout.

**Other Important Provisions**

You can buy out your Unlock HEA based on an appraised value at any time, fully or partially, without any penalty. Partial buyouts are subject to certain restrictions. Unlock will place a lien on the property to protect its investment. An uncured default could result in a loss of the property via foreclosure or conversion. If you are legally married but your spouse does not co-own your home, your spouse will be required to sign a spousal consent form at the closing.

**Referral Fee**

Unlock may have received certain information about you from one of its unaffiliated partners. Unlock may pay compensation to that partner if you choose to enter into an HEA. Please be advised that any compensation will not impact the pricing, fees, or terms of your HEA.

## Intent to proceed

**Confirm Intent to Proceed**

By signing, you are confirming that you have received this form and that you intend to proceed with this transaction. We may order either or both an appraisal and home inspection to determine the property's value and condition and charge you for these reports. We will promptly give you a copy of any property reports, even if your investment does not close. You can pay for additional inspections or appraisals for your own use at your own cost.

Your Unlock Investment Payment is conditioned on receipt of an independent third party valuation of your home and the Investment Payment amount and other key terms presented in this estimate are subject to change based on that valuation.

This document does not provide a complete education for the Unlock HEA. It is not a substitute for reviewing the legal documents, including the Exchange Agreement and Security Instrument, or the Unlock Product Guide. Unlock suggests that you review the Unlock HEA with your family and professional advisors, including tax, legal, financial and estate.

**This is non-binding. You do not have to accept this investment because you have received or signed this form.**

DocuSigned by: Seungjae Seong 39B7BEF0B03945E... 7/14/2022
Applicant Signature Date

DocuSigned by: Do Youn Kim 5C2F52C9D16F4BE... 7/14/2022
Co-Applicant Signature Date

DocuSign

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: EE0B4C2B0E7D4C4F932AD3B7B36C23FE | | Status: Completed |
| Subject: Please DocuSign: Your Investment Estimate | | |
| Source Envelope: | | |
| Document Pages: 48 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | [redacted] |
| AutoNav: Enabled | | 1 ROCKEFELLER PLZ |
| EnvelopeId Stamping: Enabled | | Suite 1280 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | NEW YORK, NY 10020 |
| | | [redacted] |
| | | IP Address: 68.48.74.129 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>7/14/2022 10:52:39 AM | Holder: [redacted]<br>[redacted] | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Do Youn Kim<br>[redacted]<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Do Youn Kim<br>5C2F52C9D16F4BE...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 172.58.45.94<br>Signed using mobile | Sent: 7/14/2022 10:58:23 AM<br>Viewed: 7/14/2022 11:43:19 AM<br>Signed: 7/14/2022 11:43:40 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 7/14/2022 11:43:19 AM<br>ID: b2687ec0-db9e-4ae6-a7ec-04ad27c4709e | | |
| Seungjae Seong<br>[redacted]<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Seungjae Seong<br>39B7BEF0B03945E...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 172.58.45.94<br>Signed using mobile | Sent: 7/14/2022 10:58:23 AM<br>Viewed: 7/14/2022 11:40:39 AM<br>Signed: 7/14/2022 11:43:03 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 7/12/2022 2:33:52 PM<br>ID: 9a07002c-4d74-4ef2-a61e-15d59bfebce9 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 7/14/2022 10:58:23 AM |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Certified Delivered | Security Checked | 7/14/2022 11:40:39 AM |
| Signing Complete | Security Checked | 7/14/2022 11:43:03 AM |
| Completed | Security Checked | 7/14/2022 11:43:40 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Unlock Technologies (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Unlock Technologies:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: paul@unlock.co

**To advise Unlock Technologies of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at paul@unlock.co and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Unlock Technologies**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to paul@unlock.co and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Unlock Technologies**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to paul@unlock.co and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to ‘I agree to use electronic records and signatures’ before clicking ‘CONTINUE’ within the DocuSign system.

By selecting the check-box next to ‘I agree to use electronic records and signatures’, you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Unlock Technologies as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Unlock Technologies during the course of your relationship with Unlock Technologies.

# EXHIBIT B

# Investment Closing Statement

*This form is a final statement of investment terms and closing costs. Compare this document to your Investment Estimate.*

## Closing Information

**DATE ISSUED** 08/15/2022
**EFFECTIVE DATE** 08/22/2022
**DISBURSEMENT DATE** 08/23/2022
**SETTLEMENT AGENT** ClearEdge Title
**FILE #** [redacted]
**PROPERTY** [redacted]

## Transaction Parties

**APPLICANTS** Seung J. Seong & Do Youn Kim
[redacted]

**ORIGINATOR** Unlock Partnership Solutions Inc.
270 Madison Ave, Suite 702
New York, NY 10016

## Investment Information

**MAX TERM** 10 year(s)
**PURPOSE** Unlock Equity
**PRODUCT** Home Eqty Agrmt
**OCCUPANCY** Principal residence
**HEA #** [redacted]

| Investment Terms | | Explanation |
|---|---|---|
| **Starting Home Value** | $1,150,000 | The mutually agreed upon value of the Property as of the Effective Date. |
| **Investment Payment** | $190,509 | The gross amount of money you receive from Unlock's investment in your home. This is not a loan. No interest is charged on the Investment Payment and there are no monthly payments due. |
| **Investment Percentage** | 16.57% | Investment Payment as a % of Starting Home Value. |
| **Exchange Rate** | 1.70x | The price of your Agreement. |
| **Unlock Percentage** | 28.16% | In exchange for an up front cash payment of 16.57% of your home's value, Unlock will receive 28.16% of your home's value when the Unlock Agreement ends. (16.57% X Exchange Rate of 1.70x = 28.16%) |
| **Annualized Cost Limit** | 21.00% | Maximum annualized cost of your Agreement per year from start to end, inclusive of the Origination Fee, expressed as a percentage rate. |
| **Home Finance Limit** | 80.00% | Maximum amount of debt and equity financing secured by your home, expressed as a percentage of home value. |

*See page 4 of this document for additional information on investment terms*

## Annualized Cost

*The cost of your Unlock Agreement depends on Ending Home Value. To make it easier to compare to a loan it may be helpful to consider Annualized Cost under various scenarios and compare with an interest rate or APR.*

| Ending Year | Year 1 | Year 10 |
|---|---|---|
| Ending Home Value | $1,178,750 | $1,437,500 |
| Unlock Percentage | Unlock Share is capped by the 21.00% Annualized Cost Limit | X 28.16% |
| Unlock Share | $230,516 | = $404,832 |
| Annualized Cost | 21.00% | 7.83% |

*These two examples assume your Unlock Agreement ends after exactly 1 year and 10 years, with increases in home value of 2.5% and 25%, respectively.* *See Page 4 for additional information and examples.*

## Net Closing Proceeds

| Net Closing Proceeds | | |
|---|---|---|
| **Fees, Expenses And Credits** | $7,179 | $5,715 in Origination Charges + $1,235 in Third Party Transaction Expenses + $229 in Other Expenses - $0 in Credits. |
| **Estimated Net Closing Proceeds to Homeowner** | $183,330 | Investment Payment of $190,509 - $0 in Payoffs to Third Parties - $7,179 in Fees and Expenses. See Net Closing Proceeds Calculation on Page 2. |

**Closing Statement Details**

| | | Homeowner Paid At Closing | Homeowner Paid Before Closing | Paid by others |
|---|---|---|---|---|
| **Investment costs** | | | | |
| **A. Origination Charges** | | **$5,715.27** | | |
| 01 Unlock Origination Fee (3.0%) | | $5,715.27 | | - |
| 02 | | | | - |
| 03 | | | | - |
| 04 | | | | - |
| 05 | | | | - |
| 06 | | | | - |
| 07 | | | | - |
| 08 | | | | - |
| **B. Third-Party Transaction Expenses** | | **$1,235.00** | | |
| 01 Appraisal Cost | to Accurate Group | $340.00 | | - |
| 02 Settlement Cost | to ClearEdge Title | $895.00 | | - |
| 03 | | | | - |
| 04 | | | | - |
| 05 | | | | - |
| 06 | | | | - |
| 07 | | | | - |
| 08 | | | | - |
| **C. TOTAL INVESTMENT COST (Homeowner Paid)** | | **$6,950.27** | | |
| Investment Costs Subtotals (A + B) | | $6,950.27 | $0.00 | - |
| **Other Expenses** | | | | |
| **D. Taxes and Other Government Fees** | | **$228.50** | | |
| 01 Recording Fees - Mortgage | to ClearEdge Title | $228.50 | | - |
| 02 | | | | - |
| 03 | | | | - |
| 04 | | | | - |
| **E. Other** | | **$0.00** | | - |
| 01 | | | | - |
| 02 | | | | - |
| 03 | | | | - |
| 04 | | | | - |
| **F. TOTAL OTHER EXPENSES (Homeowner Paid)** | | **$228.50** | | |
| Other Expenses Subtotals (D + E) | | $228.50 | $0.00 | - |
| **G. CREDITS** | | **$0.00** | | - |
| **H. FEES, EXPENSES AND CREDITS (C + F + G)** | | **$7,178.77** | | - |

**Payoffs**

| TO | AMOUNT |
|---|---|
| 01 | |
| 02 | |
| 03 | |
| 04 | |
| 05 | |
| 06 | |
| 07 | |
| 08 | |
| 09 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| **TOTAL PAYOFFS (I)** | **$0.00** |

**Net Closing Proceeds** *Use this table to see what has changed from your Investment Estimate.*

| | Investment Estimate | Final | Did this change? |
|---|---|---|---|
| **Investment Payment** | **$100,000** | **$190,509** | **Yes - See Investment Terms on Page 1** |
| **Fees, Expenses and Credits (H)** | **- $4,636** | **- $7,179** | **Yes - See Total Investment Costs (C) and Total Other Expenses (F)** |
| **Closing Costs Paid Before Closing** | **$0.00** | **$0.00** | **No** |
| **Total Payoffs (I)** | **-** | **- $0** | **Yes - See Total Payoffs (I)** |
| **Net Closing Proceeds** | **$95,364** | **$183,330** | |

Additional Information About This Investment

## Important Provisions

**Annualized Cost**

Annualized Cost is the cost of the Unlock HEA per year from start to end. It equals the rate of investment return that grows the Investment Payment to the Unlock Share over the exact term (years, months and days) and it is calculated exclusive of the Origination Fee and all transaction expenses. The table below displays Annualized Cost for various combinations of ending year and annual home price appreciation. Let's say your home appreciates by an average of 2% annually and you end your Unlock HEA after 10 years. You will pay Unlock $404,832 and your Annualized Cost will be 7.6%. Note how the 21.00% Annualized Cost Limit applies in earlier years.

| Annual Home Price Appreciation | Ending term 1 | 2 | 3 | 5 | 10 |
|---|---|---|---|---|---|
| -2% | 21.0% | 21.0% | 17.0% | 9.0% | 3.3% |
| 0% | 21.0% | 21.0% | 19.4% | 11.2% | 5.4% |
| 2% | 21.0% | 21.0% | 21.0% | 13.4% | 7.6% |
| 4% | 21.0% | 21.0% | 21.0% | 15.6% | 9.7% |
| 6% | 21.0% | 21.0% | 21.0% | 17.9% | 11.8% |

Annualized Cost Limit

**Improvement Adjustment**

If you make significant home improvements, you can request an Improvement Adjustment to the Ending Home Value when your HEA ends so that Unlock does not share in value added to the home by your improvements. The adjustment amount is determined by an independent appraisal. Certain conditions apply and there is a $10,000 materiality minimum.

**Maintenance Adjustment**

You must maintain your home in good condition, subject to normal wear-and-tear. If you don't, Unlock can make a Maintenance Adjustment to the Ending Home Value so that we do not share in any lost value. The amount is based on third- party appraisals, inspections and repair estimates and there is a $10,000 materiality minimum.

**Staying Current On Housing Expenses**

This investment requires homeowner's insurance on the property, which you may obtain from a company of your choice that we find acceptable. You must also remain current on your mortgage, property taxes, HOA dues and any other housing expenses. Note that we may need your help in adding Unlock as a mortgage and/or additional interest on your home insurance policy.

**Home Finance Limit**

Total Home Finance is limited to 80.00% of the home value. The limit applies only to financing secured by your home. You can borrow against your home during the term of your HEA as long as you don't exceed the Home Finance Limit.

Outstanding Balances of Mortgage Debt
+ Secured Credit Lines Undrawn Balances
+ Unlock Share w/o Annualized Cost Limit
= Total Home Finance

**Refinance Impact**

A mortgage lender may not agree to lend on a property with an Unlock HEA to the same extent or on the same terms as they would for a property without an Unlock HEA. It is possible that you will need to terminate your Unlock HEA in order to complete a future home loan.

**Occupancy**

If your home is a principal residence or second home, you may rent a portion (but not all) of it as long you occupy the property. If occupancy is declared as principal residence and you convert to a second home or rental property, Unlock may lower the Home Finance Limit. When your HEA ends, if there is an existing rental agreement or tenant that is negatively impacting the Unlock Share, you will be responsible to remove the tenant or compensate Unlock for any loss.

**Impact on Heirs**

The Unlock HEA typically ends when you decide to sell your home or buy us out. However, in an unfortunate circumstance where the last signatory to the Unlock the HEA passes, your estate will need to settle with Unlock via property sale or buyout.

**Other Important Provisions**

You can buy out your Unlock HEA based on an appraised value at any time, fully or partially, without any penalty. Partial buyouts are subject to certain restrictions. Unlock will place a lien on the property to protect its investment. An uncured default could result in a loss of the property via foreclosure or conversion. If you are legally married but your spouse does not co-own your home, your spouse will be required to sign a spousal consent form at the closing.

**Referral Fee**

Unlock may have received certain information about you from one of its unaffiliated partners. Unlock may pay compensation to that partner if you choose to enter into an HEA. Please be advised that any compensation will not impact the pricing, fees, or terms of your HEA.

## Contact Information

| | Originator | Referring Partner | Settlement Agent |
|---|---|---|---|
| **Name** | Unlock Partnership Solutions Inc. | | ClearEdge Title |
| **Address** | 201 Madison Avenue<br>STE 702<br>New York, NY 10016 | | 2605 Enterprise Rd E Suite 270<br>Clearwater, FL 33759 |
| **Contact** | [redacted] | | Susan Hanley |
| **Email** | [redacted] | | closingteam@cetitle.com |
| **Phone** | [redacted] | | 727-288-2065 |

## Accept Terms

By signing, you are:

1. Confirming that you have received this form and agree to the terms presented herein for an Unlock Agreement

2. Confirming that you have read the Product Guide and legal documents.

3. You understand the operation, benefits and risks of the Unlock HEA, including the calculations, costs, tax impact, recorded lien, various ways the Agreement can end, adjustments to Ending Home Value, Annualized Cost and Annualized Cost Limit, occupancy requirements, potential impact on future borrowing, potential impact on your heirs, default provisions and all other requirements and obligations.

4. You have had all questions answered to your satisfaction.

5. You acknowledge that Unlock suggested that you review the Unlock HEA with your family and professional advisors, including your tax, legal and financial advisor and estate planner, and that Unlock was available to speak with any of them and did so upon your request.

**This Investment Closing Statement is non-binding; however, Unlock will draw final HEA contract documents for your review and signature three business days after the receipt of a signed ICS. If you sign this ICS today, your closing will occur on 08/22/2022. The HEA is effective on the day of your closing when you sign the HEA contract documents. You may cancel any time before Unlock's settlement agent disburses funds. Unlock will instruct the settlement agent to release funds as soon as Unlock has received the signed contract documents and reviewed them for validity. Once you have received funds you may no longer cancel your agreement.**

| | | | |
|---|---|---|---|
| DocuSigned by:<br>Seungjae Seong<br>39B7BEF0B03945E... | 8/17/2022 | DocuSigned by:<br>Do Youn Kim<br>5C2F52C9D16F4BE... | 8/17/2022 |
| Applicant Signature | Date | Co-Applicant Signature | Date |

DocuSign

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 84AACD14F3814CFD91313803E617BE53 | | Status: Completed |
| Subject: Your Investment Closing Statement | | |
| Source Envelope: | | |
| Document Pages: 96 | Signatures: 10 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | [redacted] |
| AutoNav: Enabled | | 1 ROCKEFELLER PLZ |
| EnvelopeId Stamping: Enabled | | Suite 1280 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | NEW YORK, NY 10020 |
| | | [redacted] |
| | | IP Address: 68.48.74.129 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>8/16/2022 10:31:24 AM | Holder: [redacted] | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Seungjae Seong<br>[redacted]<br>Security Level: Email, Account Authentication (None) | <br>Signature Adoption: Pre-selected Style<br>Using IP Address: 162.231.69.211 | Sent: 8/16/2022 10:33:58 AM<br>Viewed: 8/16/2022 12:11:25 PM<br>Signed: 8/17/2022 1:03:21 PM |



**Electronic Record and Signature Disclosure:**
Accepted: 7/12/2022 2:33:52 PM
ID: 9a07002c-4d74-4ef2-a61e-15d59bfebce9

| | | |
|---|---|---|
| Do Youn Kim<br>[redacted]<br>Security Level: Email, Account Authentication (None) | <br>Signature Adoption: Pre-selected Style<br>Using IP Address: 162.231.69.211<br>Signed using mobile | Sent: 8/17/2022 1:03:24 PM<br>Viewed: 8/17/2022 6:11:45 PM<br>Signed: 8/17/2022 6:12:15 PM |



**Electronic Record and Signature Disclosure:**
Accepted: 8/17/2022 6:11:45 PM
ID: 0d8ce298-4187-4c50-ac83-b3aba6b09d4c

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 8/16/2022 10:33:58 AM |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Certified Delivered | Security Checked | 8/17/2022 6:11:45 PM |
| Signing Complete | Security Checked | 8/17/2022 6:12:15 PM |
| Completed | Security Checked | 8/17/2022 6:12:15 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Unlock Technologies (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Unlock Technologies:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: paul@unlock.co

**To advise Unlock Technologies of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at paul@unlock.co and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Unlock Technologies**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to paul@unlock.co and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Unlock Technologies**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to paul@unlock.co and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to ‘I agree to use electronic records and signatures’ before clicking ‘CONTINUE’ within the DocuSign system.

By selecting the check-box next to ‘I agree to use electronic records and signatures’, you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Unlock Technologies as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Unlock Technologies during the course of your relationship with Unlock Technologies.

# EXHIBIT C

**THIS EXCHANGE AGREEMENT IS NOT A LOAN**

**THIS IS AN AGREEMENT PURSUANT TO WHICH UNLOCK PROVIDED OWNER A PAYMENT IN EXCHANGE FOR A RIGHT TO RECEIVE A SPECIFIED PERCENTAGE INTEREST IN THE VALUE OF THE OWNER'S HOME UPON THE OCCURRENCE OF CERTAIN EVENTS SET FORTH IN THIS EXCHANGE AGREEMENT**

# FORWARD SALE AND EXCHANGE AGREEMENT

This Unlock Forward Sale and Exchange Agreement ("Exchange Agreement") is made between the homeowner(s) set forth on the signature page attached hereto under the heading of "Owner" ("Owner" or "You" or "Your") and Unlock Partnership Solutions Inc., a Delaware corporation, with its principal offices at 270 Madison Ave, Suite 702, New York, NY 10016, and its successors and assigns ("Unlock").

This Exchange Agreement is made together with and incorporates the Unlock Performance Deed of Trust or Performance Mortgage, as applicable ("Security Instrument"). Together these documents are collectively referred to herein as the "Unlock Agreement."

WHEREAS, as of the Effective Date, You and Unlock each desire to enter into the Unlock Agreement and You have reviewed and agreed to: (i) the terms of the Unlock Agreement, including without limitation all of the related numerical amounts of the Starting Home Value, Investment Payment, Investment Percentage, Exchange Rate, Unlock Percentage, Origination Fee, Annualized Cost Limit, Total Home Finance Limit and Expiration Date; and (ii) pay all Appraisal Expenses, Inspection Expenses, Closing Costs and any other costs incurred in connection with the Unlock Agreement;

WHEREAS, the Unlock Agreement sets forth the representations, warranties, duties and covenants of You during the Term and in reliance upon the terms and conditions set forth in the Unlock Agreement, Unlock wishes to tender the Investment Payment and purchase the Unlock Percentage, and You wish to accept the Investment Payment and sell, grant, transfer and otherwise convey the Unlock Percentage to Unlock, as described herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, You and Unlock agree as follows:

## 1. Unlock Agreement Terms.

1.1 Recitals. The recitals set forth above are acknowledged by the parties to be true and correct and are incorporated herein by reference.

1.2 Defined Terms. Defined terms are capitalized throughout the Unlock Agreement. The values of certain terms appear in the following Table of Key Terms. Other terms are defined as they are used throughout the Unlock Agreement or in the Glossary attached as Exhibit F.

| TABLE OF KEY TERMS | | |
|---|---|---|
| Defined Term | Value | Notes |
| Effective Date | {{effective_date}} | |
| Expiration Date | {{expiration_date}} | The maximum term is {{term}} years. |
| Property | {{property_address}}, {{city}}, {{state}} {{zip}} | As further defined in the attached Exhibit A. |
| Occupancy | {{occupancy}} | You have declared this as Your Occupancy intention as of the Effective Date. |
| Starting Home Value | {{home_value}} | The mutually agreed upon value of the Property as of the Effective Date. |
| Investment Payment | $100,000.00 | The gross amount of money you received from Unlock on the Effective Date. |
| Investment Percentage | {{investment_percentage}}% | The Investment Payment expressed as a percentage of Starting Home Value.<br>**Investment Payment / Starting Home Value = Investment Percentage**<br>**$100,000.00 / {{home_value}} = {{investment_percentage}}%** |
| Exchange Rate | {{exchange_rate}} | The price of your Unlock Agreement. |
| Unlock Percentage | {{unlock_percentage}}% | The percentage of your Property's future value that Unlock will receive when the Unlock Agreement ends upon a Settlement Event. Calculated as:<br>**Investment Percentage x Exchange Rate = Unlock Percentage**<br>**{{investment_percentage}}% x {{exchange_rate}} = {{unlock_percentage}}%** |
| Origination Fee | {{origination_fee}} | A fee payable to Unlock at Closing that offsets some of the costs Unlock incurs to process and administer Your transaction. |
| Annualized Cost Limit | {{annualized_cost_limit}}% | The Annualized Cost of Your Unlock Agreement will never exceed this limit. |
| Total Home Finance Limit | {{total_home_finance_limit}}% | Limits the amount of financing, such as mortgage loans and the Unlock Share, that can be secured by Your Property to a specific percentage of the Appraised Value as described in Section 12, and subject to adjustment as provided in Section 14.8. |
| Maintenance Addendum | None | |

1.3 Forward Sale and Exchange.

1.3.1 On the Effective Date, Unlock agrees to pay You the Investment Payment.

1.3.2 In exchange for the Investment Payment, You hereby agree to sell, transfer and otherwise convey to Unlock on the Effective Date the right to receive the Unlock Percentage.

1.3.3 Unlock has a right to elect to convert its Unlock Percentage to an undivided fee simple ownership percentage in the Property ("Conversion") equal to the Unlock Percentage. Unlock can exercise its right to a Conversion only upon the occurrence of a Settlement Event. In the event Unlock exercises its right to a Conversion, such Conversion will be documented in a separate written agreement between You and Unlock, the form of which is set forth in Exhibit B hereto. You agree to cooperate and promptly execute all documentation necessary to complete the Conversion in the applicable form attached to the Unlock Agreement and/or the form provided by Unlock.

1.3.4 You are selling the Unlock Percentage to Unlock in consideration of (1) the Investment Payment; (2) Unlock's express waiver of its Conversion right and its right to receive the Unlock Share until the occurrence of a Settlement Event; (3) other Unlock obligations under the Unlock Agreement; and (4) Your other rights and benefits under the Unlock Agreement.

1.4 The Investment Payment is not a loan to You or indebtedness to Unlock, nor is it a principal amount which Unlock is entitled to recover at any time. You will not make any monthly interest or any other periodic payments to Unlock based upon the amount of the Investment Payment.

1.5 Closing.

1.5.1 In connection with the execution and delivery of this Unlock Agreement ("Closing"), Unlock has: (i) wired the Investment Payment to an escrow account maintained by the Escrow Agent; (ii) provided a closing statement to You and the Escrow Agent that sets forth the dollar amounts involved in the Closing and (iii) provided all required documents and closing instructions.

The Escrow Agent has conducted the Closing, at which You have:

(a) Executed and delivered to the Escrow Agent originals of the Unlock Agreement documents and any addenda or ancillary documents provided by Unlock.

(b) Provided any other documents and information reasonably requested or otherwise necessary to complete the Closing, and secure and perfect the Unlock Agreement and Unlock's lien on the Property.

(c) Provided satisfactory written evidence that Unlock has been added as a loss payee (or as Unlock otherwise directs) on all Owner insurance policies.

1.5.2 The Escrow Agent has disbursed monies from the related escrow account where the Investment Payment is being held as follows:

(a) To the appropriate third parties, all third-party expenses associated with the Closing of the Unlock Agreement, unless paid by Unlock, including Appraisal Expenses, Inspection Expenses, Closing Costs and any other costs incurred in connection with the Unlock Agreement. In any situation where Unlock had already paid an expense on Your behalf during the processing of Your application, Escrow Agent instead disbursed such amount to Unlock.

(b) To Unlock, the Origination Fee.

(c) To You, the remaining balance of the Investment Payment following the payments described above ("Net Closing Proceeds").

1.6 Term of Agreement.

1.6.1 The Term of the Unlock Agreement begins on the Effective Date and will end on the earliest to occur of: (i) the day that a Settlement Event is completed (the "Settlement Date"); and (ii) the Expiration Date, subject to extension under limited circumstances as provided herein and subject to the limited survival provisions of Section 21.27.

1.7 Property Value.

1.7.1 You and Unlock agree that the Property's value as of the Effective Date is the Starting Home Value.

1.7.2 The Property's future value, when calculated at any time during the Term, is called the "Ending Home Value". The Ending Home Value will be determined as follows:

(a) If the Property is being sold, Ending Home Value will typically equal the Gross Sale Price, subject to adjustment as set forth in Section 2.

(b) If the Property is not being sold, the Ending Home Value will be determined by obtaining a Property Appraisal in accordance with Section 8.

(c) In an Event Of Default, including a foreclosure sale, Unlock may elect to determine Ending Home Value in accordance with Section 8.4(c).

1.8 Settlement.

1.8.1 The following calculations apply when the Unlock Agreement ends upon the occurrence of a Settlement Event:

(a) The Ending Home Value will be determined depending on the applicable Settlement Event.

(b) The Ending Home Value may be subject to an Improvement Adjustment and/or a Maintenance Adjustment when calculating the Unlock Share, as set forth in Section 7. The Improvement Adjustment enables You to keep any value You have added to the Property as a result of material home improvements that were made during the Term. The Maintenance

Adjustment holds You responsible for any loss in Property value caused by Your failure to properly maintain the Property. The adjusted Ending Home Value is called Sharable Value and is calculated as follows:

***Sharable Value =***

***Ending Home Value - Improvement Adjustment + Maintenance Adjustment***

(c) The "Unlock Share" is the dollar amount that Unlock will receive for its percentage of the Property's Sharable Value, calculated as:

***Unlock Share = Sharable Value X Unlock Percentage***

The Unlock Share will be subject to the Annualized Cost Limit set forth in the Table of Key Terms, in accordance with Section 10. The Annualized Cost Limit is a cap on the amount Unlock will receive upon a Settlement Event.

(d) During the Term You may require administrative assistance from Unlock for which Unlock may charge Administration Fees, as set forth in Section 15, and Unlock may make payments or incur expenses on Your behalf to protect the value of the Property, including in connection with an Event Of Default as defined in Section 16 ("Protective Advances'). You are responsible for payment or reimbursement of any Administration Fees and Protective Advances, and any that remain outstanding at any time are called Unpaid Owner Obligations, as set forth in Section 21.4.

(e) On the Settlement Date, Unlock will receive the "Settlement Payment," calculated as:

***Settlement Payment = Unlock Share + Unpaid Owner Obligations***

1.8.2 Subject to Section 21.27, the Unlock Agreement will end and Unlock will receive the Settlement Payment on the Settlement Date upon the occurrence of one of the following "Settlement Events":

(a) Intended Settlement Events:

(i) You decide to sell the Property (see Section 2)

(ii) You decide to buy Unlock out (see Section 3)

(iii) Upon Your death, or the later of Your death or Your spouse's or domestic partner's death, if such individual has been added as a signatory to the Unlock Agreement during the Term (see Section 4)

(iv) Upon reaching the Expiration Date (see Section 5)

(b) Unintended or unusual Settlement Events:

(i) An uncured Event Of Default (see Section 16 and Section 17)

(ii) Destruction of the Property where it is not rebuilt (see Section 18)

(iii) Full condemnation of the Property (see Section 19)

(iv) Voluntary Release by Unlock (see Section 21.7)

1.8.3 You will pay all third-party transaction expenses associated with any Settlement Event, unless paid by Unlock or a buyer of the Property, including, as applicable, Property Appraisal, Property Inspection and Closing Costs.

1.8.4 In any sale of the Property, sale proceeds will be distributed in the following order of priority:

(a) First, all third-party transaction expenses are paid;

(b) Second, all liens senior to Unlock, if any, are paid in full;

(c) Third, Unlock receives the Settlement Payment, if any;

(d) Fourth, all lienholders junior to Unlock, if any, are paid in full; and

(e) Fifth, You receive the remaining balance, if any.

1.8.5 Notwithstanding anything to the contrary in the Unlock Agreement, Unlock shall have no obligation to release its lien on the Property to the extent there are insufficient amounts in escrow to pay transaction expenses and Administration Fees, release all liens senior to Unlock and pay any other expenses required in order to deliver clear title to the Property, and pay Unlock the Settlement Payment.

1.8.6 You can also request one or more partial buyouts of Your Unlock Agreement during the Term, in accordance with Section 6.

1.9 <u>Your Obligations During the Term.</u>

1.9.1 The Exchange Agreement contains various provisions that apply during the Term which are designed to protect the value of the Property and Your and Unlock's respective interests in it. Accordingly, You agree to all covenants provided under the Unlock Agreement, including, but not limited to, the following:

(a) Staying current on Your housing obligations, such as Your mortgage and property taxes, in accordance with Section 11.3.

(b) Maintaining appropriate insurance on the Property, in accordance with Section 18.

(c) Maintaining the Property in good condition, subject to normal wear and tear, in accordance with Section 13.

(d) Making sure that Your use and occupancy of the Property are fully compliant with all state, federal and local laws and abiding by the occupancy requirements of the Unlock Agreement, in accordance with Section 14.

(e) Abiding by the Total Home Finance Limit with respect to obtaining new or refinanced debt secured by the Property, in accordance with Section 12.

(f) Notifying Unlock when a non-signatory to Your Unlock Agreement becomes an owner or a principal resident of the Property or Your marriage or domestic partner status changes.

**2. <u>Settlement Event: Permitted Sale.</u>**

2.1 You may sell the Property to a buyer at any time during the Term, as long as Your sale complies with the requirements of this Section 2.1, or as otherwise agreed to in writing prior to such sale by Unlock (a "Permitted Sale").

(a) You must notify Unlock in writing of Your decision to market, sell or transfer the Property, at least 45 days prior to the proposed closing of the sale or transfer.

(b) You must timely provide Unlock with copies of all documents relating to the proposed sale or transfer of the Property, including listing agreements, offers to purchase, appraisals, inspection reports, pest reports, preliminary title reports, escrow instructions, staging agreements and any other relevant documents.

(c) If the Property is untidy or in disrepair such that its marketability is materially impaired, Unlock may offer to make one or more Protective Advances to pay for repairs, cosmetic improvements and/or staging, in support of achieving the best possible sale price. If Unlock makes cosmetic improvements and/or provides staging and You damage or destroy any such cosmetic improvements and/or staging materials, You will be responsible for the damage, and any unpaid amount will become part of Unpaid Owner Obligations.

(d) The sale must be consummated through an appropriate real property escrow account using the services of an Escrow Agent, and the sale must comply with applicable law, including that all necessary disclosures in connection with a sale of real property are made.

(e) The sale must be at arm's length, made on commercially reasonable terms and entered into in good faith, meaning without fraud or deceit carried out by unrelated or unaffiliated parties, as by a willing buyer and a willing seller, each acting in his or her own self-interest, in which the sale price represents fair market value of the Property.

(f) If the buyer obtains a standard contractor's inspection report and a standard pest report

in connection with their purchase, or if You obtained any such reports to support the marketing of the Property, Unlock may, in its discretion accept these in lieu of obtaining a Property Inspection, or Unlock may elect to obtain a Property Inspection in accordance with Section 8.

(g) Ending Home Value will be equal to the "Gross Sale Price" (subject to adjustment in accordance with Section 2.1(i)), which is the sale price to a bona fide, arms-length, third-party buyer, including the fair market value of any non-cash consideration (such as a seller concession), and not including deductions for Closing Costs, taxes, documentary fees, mortgage loans, other liens or secured loans, sales commissions, or appraisal expenses. The amount of any Improvement Adjustment and/or Maintenance Adjustment will be determined in accordance with Section 7, and Sharable Value and the Unlock Share will be calculated in accordance with Section 1.8.1.

(h) The sale should be conducted in accordance with customary local process, using a licensed listing agent or attorney and, except as described in Section 2.1(i)(i) or Section 2.1(i)(ii), by placing the Property on the open market through the Multiple Listing Service (MLS). However, You are not required to use a real estate professional to assist with Your sale.

(i) Unlock may obtain a Property Appraisal before the closing. In any sale or transfer by You where Unlock determines, in good faith, that the proposed Gross Sale Price differs materially from the market value of the Property, or from an Appraised Value, including in any:

(i) "Sale-By-Owner Transaction," which means a sale of the Property conducted either without a public listing of it on the MLS, or where the terms and conditions of the sale have been principally negotiated by You without agency representation, or

(ii) "Intrafamily Transaction," which means a purchase, sale or transfer of the Property proposed between You and any of Your family members by blood or marital relation, or

(iii) Transaction where the buyer is a business entity rather than an individual person,

Unlock will have the right, in its sole discretion, to take the following actions: (a) make an offer in writing to purchase the Property from You on the same terms and conditions as the proposed offer from the third-party buyer and, if such offer is rejected by You, to obtain a written affidavit under oath from You stating the reasons for the rejection; (b) require You and the third-party buyer to execute an affidavit under oath attesting that the relationship between You and the buyer is at arm's length and that the proposed transaction is at a fair market price; and/or (c) use an Appraised Value to determine Ending Home Value in accordance with Section 8 and calculate the Unlock Share.

(j) The closing date of a Permitted Sale must be scheduled so as to allow Unlock sufficient time to obtain and review any required appraisals and inspection reports and determine the amount of any Improvement Adjustment or Maintenance Adjustment.

(k) The sale or transfer cannot convey title "subject to" the lien created by the Unlock

Agreement. You must convey title free and clear of any liens and satisfy any loans and other obligations secured by liens on the Property.

(l) You will pay all costs in connection with the Permitted Sale, including Closing Costs, any unpaid Appraisal Expenses and Inspection Expenses and any other expenses, unless paid by Unlock, and not any expenses to be paid by the third-party buyer.

(m) If the closing date scheduled for a Permitted Sale falls after the Expiration Date, the Term and the Expiration Date will, in Unlock's discretion, automatically extend for such reasonable period needed to accommodate the closing.

(n) Unlock will not be liable to You for any loss relating to any delay or postponement of the closing of a sale resulting from Unlock's reasonable inquiries and actions.

2.2 In advance of a Permitted Sale, Unlock may elect to exercise its right to a Conversion of the Unlock Percentage in accordance with Section 1.3.3, in which case Unlock will provide You notice of such election, Unlock and You will enter into a separate Conversion Agreement, and You will cooperate in promptly executing all other documentation (in the applicable form attached to the Unlock Agreement and/or the form provided by Unlock) necessary to complete the Conversion on or prior to the date of the Permitted Sale.

2.3 At the time of a Permitted Sale where Unlock has elected a Conversion:

(a) Unlock will deliver to You and to Escrow Agent a Settlement Statement containing a calculation of the Settlement Payment.

(b) You will deed Unlock its percentage interest in the Property through escrow for the Permitted Sale, as described in the Conversion Agreement.

(c) You and Unlock, as co-owners of the Property, will deed the Property to the third-party buyer through escrow; and

(d) The Escrow Agent will close the Permitted Sale, transfer title to the third-party buyer, and liquidate Unlock's and Your respective percentage interests in the Property.

(e) In accordance with local and customary practice and applicable law, Unlock will release its lien on the Property, as described in the Conversion Agreement.

2.4 As an alternative to Conversion, You can elect to settle the Unlock Agreement by tendering to Unlock, through escrow for the Permitted Sale, the Settlement Payment. Unlock will deliver to You and to Escrow Agent a Settlement Statement containing a calculation of the Settlement Payment. Following such payment, Unlock will deliver executed, notarized documents required by Escrow Agent for the Permitted Sale to affect a full release of the Unlock Agreement, including Unlock's lien on the Property.

2.5 Any attempted sale or transfer of the Property that does not comply with these Permitted

Sale requirements shall be deemed an Event Of Default and shall be conclusively deemed to prejudice Unlock's rights hereunder.

2.6 If a Permitted Sale is being undertaken by Your Estate, the words "Your Estate" will replace "You" and "Your" in this Section.

**3. <u>Settlement Event: Owner Buyout.</u>**

3.1 You can end the Unlock Agreement without selling Your Home, at any time during the Term, by electing an Owner Buyout in accordance with the following requirements:

(a) You must submit a Buyout Request Form to Unlock and include copies of any listings for sale or offers to purchase that may exist at least 60 days ahead of the desired Owner Buyout closing date, which must occur on or before the Expiration Date.

(b) Ending Home Value and Property condition will be determined by obtaining a Property Appraisal and a Property Inspection, at your expense. The amount of any Improvement Adjustment and/or Maintenance Adjustment will be determined in accordance with Section 7, and Sharable Value and the Unlock Share will be calculated in accordance with Section 1.8.1.

(c) Unlock will select an Escrow Agent who will open escrow to facilitate the Owner Buyout. Unlock will deliver to You and Escrow Agent a Settlement Statement containing a calculation of the Settlement Payment and closing instructions. In addition to the Settlement Payment, You will pay all costs in connection with the Owner Buyout, including Closing Costs, any unpaid Appraisal Expenses and Inspection Expenses and any other expenses, in accordance with the closing statement prepared by the Escrow Agent and approved by Unlock. You will deliver into escrow the amount stipulated in such closing statement. Upon Escrow Agent's delivery and Unlock's acceptance of the Settlement Payment from You, Unlock will deliver executed, notarized documents required by Escrow Agent to affect a full release of the Unlock Agreement, including Unlock's lien on the Property.

(d) If You receive or have pending a written offer for the purchase of the Property, the Unlock Share will be calculated using the greater of the then-current Appraised Value or the gross amount of such purchase offer ("Offered Value"). If You fail to disclose an Offered Value that exceeds the Appraised Value used to calculate the Unlock Share at the time of Owner Buyout or within 180 days thereafter, and the Property is sold for such Offered Value, You will be liable to Unlock for the difference in the Unlock Share had the Unlock Share been calculated based upon the Offered Value.

(e) Unlock will retain the right to reject any Owner Buyout where Unlock has not had adequate opportunity to obtain and review appraisals, inspections, pest reports or other required documents, or Unlock deems Your tender of the Settlement Payment insufficient, inadequate, or untimely.

(f) If the Owner Buyout closing date is delayed and will occur after the Expiration Date, the Term and the Expiration Date will automatically extend for such reasonable period in Unlock's

discretion needed to accommodate the closing.

3.2 If an Owner Buyout is being requested by Your Estate, the words "Your Estate" will replace "You" and "Your" in this Section.

**4. Settlement Event: Death of the Last Surviving Signatory.**

4.1 You must identify to Unlock, at all times during the Term, the person or persons who will acquire legal title to Your interest in the Property on account of your death (each such person or persons together or individually, is referred to in the Unlock Agreement as "Your Estate"). You must at all times during the Term notify Unlock immediately in writing (a) if the identity of Your Estate changes during the Term of the Unlock Agreement, and (b) of the name, postal address, e-mail address and contact telephone number of the person who will represent Your Estate in connection with the Unlock Agreement.

4.2 "Last Surviving Signatory" means the last surviving individual who is a signatory to the Unlock Agreement, including any signatory added by addendum after the Effective Date. Your Estate must notify Unlock immediately in writing of the death of the last Surviving Signatory.

4.3 Upon Unlock's receipt of notice of the death of the Last Surviving Signatory, Ending Home Value and Property condition will be determined by obtaining a Property Appraisal and Property Inspection, at Your Estate's expense. The amount of any Improvement Adjustment and/or Maintenance Adjustment will be determined in accordance with Section 7, and Sharable Value and the Unlock Share will be calculated in accordance with Section 1.8.1. Unlock will deliver to Your Estate a Settlement Statement containing a calculation of the Settlement Payment.

4.4 Your Estate is required to settle the Unlock Agreement upon the death of the Last Surviving Signatory, through either a Permitted Sale or an Owner Buyout, with a Settlement Date no later than 180 days following the date of death or such longer time as Unlock may agree in writing or in accordance with applicable law. Your Estate is required to notify Unlock of the chosen settlement method within 30 days following the date of death. An Owner Buyout resulting from the death of the Last Surviving Owner is not subject to the Buyout Active Date restriction.

4.5 If Unlock determines that Your Estate has commenced a good faith effort to sell the Property in a Permitted Sale within the 180-day period, Unlock, in its discretion, may extend the Settlement Date deadline for a maximum of two consecutive 90-day periods (for a maximum total of 360 days from the date of death) to permit Your Estate to complete the Permitted Sale.

4.6 If Your Estate is unable to make the Settlement Payment for an Owner Buyout, it may need to sell the property in order to settle the Unlock Agreement.

4.7 If Your Estate does not start the process to settle the Unlock Agreement through either a Permitted Sale or an Owner Buyout within 60 days following the date of death (or such longer time as Unlock may agree in writing or in accordance with applicable law), Unlock may elect a Conversion of

the Unlock Percentage in accordance with Section 1.3.3, in which case:

(a) Unlock will provide Your Estate notice of such election. Unlock and Your Estate will enter into a separate Conversion Agreement.

(b) Unlock will select an Escrow Agent who will open escrow, and Your Estate will deed Unlock its percentage interest in the Property through escrow pursuant to the Conversion Agreement.

(c) Unlock and Your Estate, as co-owners of the Property, will promptly market and sell the Property in order to liquidate their respective percentage interests. Your Estate will provide all necessary cooperation (including access to the Property) in order to promptly market and complete the sale of the Property.

(d) If needed, the Term and the Expiration Date will automatically extend for such reasonable period, in Unlock's discretion, to accommodate Unlock's Conversion and the closing of such subsequent sale.

(e) Your Estate will pay all Closing Costs owed in connection with the sale of the Property following Unlock's Conversion other than any Closing Costs which will be paid by the third-party buyer. In no event shall Unlock be liable for any Closing Costs.

4.8 Your Estate will administer and protect the Property to preserve Unlock's rights and the value of the Unlock Share following the death of the Last Surviving Signatory.

4.9 All time periods specified in this Section 4 will run from the actual date of the death of the Last Surviving Signatory. Failure of Your Estate or any other individual or entity to notify Unlock of the death of the Last Surviving Signatory will not reduce or suspend the running of the time periods and shall be deemed an Event Of Default.

## 5. Settlement Event: Expiration of the Unlock Agreement.

5.1 You are required to settle the Unlock Agreement on or before the Expiration Date, through either a Permitted Sale or an Owner Buyout. If You are unable to make the Settlement Payment for an Owner Buyout, You may need to sell the property prior to the Expiration Date in order to settle the Unlock Agreement.

5.2 Unlock will start the settlement process by obtaining a Property Appraisal and Property Inspection to determine Ending Home Value and Property condition, at Your expense. The amount of any Improvement Adjustment and/or Maintenance Adjustment will be determined in accordance with Section 7, and Sharable Value and the Unlock Share will be calculated in accordance with Section 1.8.1. Unlock will deliver to You a Settlement Statement containing a calculation of the Settlement Payment.

5.3 You must notify Unlock of Your intended method of settlement no later than 90 days prior to the Expiration Date.

5.4 If Unlock determines that there is a good faith effort underway to sell the Property in a Permitted Sale at the Expiration Date, Unlock, in its discretion, may extend the Expiration Date deadline for a maximum of two consecutive 90-day periods to permit You to complete the Permitted Sale.

5.5 On the Expiration Date (or if the Expiration Date falls on a Sunday or legal public holiday specified in 5 U.S.C. 6103(a), the last business day before the Expiration Date), if You have not completed a Permitted Sale or an Owner Buyout, Unlock, in its discretion, may elect a Conversion of the Unlock Percentage in accordance with Section 1.3.3, in which case:

(a) Unlock will provide you notice of such election. Unlock and You will enter into a separate Conversion Agreement.

(b) Unlock will select an Escrow Agent who will open escrow, and You will deed Unlock its percentage interest in the Property through escrow pursuant to the Conversion Agreement.

(c) Unlock and You, as co-owners of the Property, will promptly market and sell the Property. You will provide all necessary cooperation in order to promptly market and complete the sale of the Property.

(d) The Term and the Expiration Date will automatically extend for such reasonable period, in Unlock's discretion, to accommodate Unlock's Conversion and the closing of such subsequent sale.

(e) You will pay all Closing Costs owed in connection with the sale of the Property following Unlock's Conversion other than any Closing Costs which will be paid by the third-party buyer. In no event shall Unlock be liable for any Closing Costs.

**6. <u>Partial Buyout.</u>**

6.1 The Unlock Agreement allows you to request a Partial Buyout at any time during the Term, in accordance with this Section 6.

6.2 You must submit a Partial Buyout Request Form to Unlock, in which You will state what portion of Your Agreement You want to buy out, and include copies of any listings for sale or offers to purchase that may exist, at least 60 days ahead of the desired closing date of the Partial Buyout, which must occur at least 180 days before the Expiration Date.

6.3 Unlock will select an Escrow Agent who will open escrow to facilitate the Partial Buyout. Unlock will deliver to You and Escrow Agent a "Partial Settlement Statement" containing a calculation of the "Partial Settlement Payment" and closing instructions.

6.4 The following calculations will apply:

(a) Ending Home Value and Property condition will be determined by obtaining a Property Appraisal and a Property Inspection, at your expense. The amount of any Improvement Adjustment and/or Maintenance Adjustment will be determined in accordance with Section 7, and Sharable Value

and the Unlock Share will be calculated in accordance with Section 1.8.1.

(b) The portion of the Unlock Share You want to buy out will determine the dollar amount required (the "Partial Unlock Share").

(c) Unpaid Owner Obligations must be paid in full at the time of a Partial Buyout. Unlock will calculate the "Partial Settlement Payment" as follows:

***Partial Settlement Payment = Partial Unlock Share + Unpaid Owner Obligations***

(d) The Unlock Percentage will be reduced by the exact percentage of the Unlock Share paid in the Partial Buyout, as follows:

***Reduced Unlock Percentage =***

***(1 - (Partial Unlock Share / Unlock Share)) X original Unlock Percentage***

6.5 You will deliver the Partial Settlement Payment into escrow together with all Closing Costs, any unpaid Appraisal Expenses and Inspection Expenses and any other expenses incurred in connection with the Partial Buyout, in accordance with the closing statement prepared by the Escrow Agent and approved by Unlock. Upon Escrow Agent's delivery and Unlock's acceptance of the Partial Settlement Payment from You, Unlock and You will enter into an amendment of the Exchange Agreement to reflect the reduced Unlock Percentage as described above.

6.6 If You receive or have pending a written offer for the purchase of the Property, the Unlock Share will be calculated using the greater of the then-current Appraised Value or the Offered Value. If You fail to disclose an Offered Value that exceeds the Appraised Value used to calculate the Unlock Share at the time of the Partial Buyout or within 180 days thereafter, and the Property is sold for such Offered Value, You will be liable to Unlock for the difference in the Unlock Share had the Unlock Share been calculated based upon the Offered Value.

6.7 Unlock will retain the right to reject any Partial Buyout where Unlock has not had adequate opportunity to obtain and review appraisals, inspections, pest reports or other required documents, or Unlock deems Your tender of the Partial Settlement Payment insufficient, inadequate, or untimely. Unlock may decline a Partial Buyout request if the remaining Unlock Percentage would be less than 25% of the Unlock Percentage as of the Effective Date.

**7. Adjustments to Ending Home Value.**

7.1 Improvement Adjustment.

(a) You may make improvements to the Property without Unlock's consent during the Term of the Unlock Agreement. All improvements must comply with all applicable laws, including zoning, permitting and the use of licensed tradespeople.

(b) If You believe that any of Your improvements materially increased the value of the

Property ("Material Improvements"), You may request that an "Improvement Adjustment" be made to the Ending Home Value at the time of a Settlement Event.

(c) An improvement is a Material Improvement under the Unlock Agreement only if it adds to the value of the Property, as reasonably determined by Unlock; in contrast to ordinary and necessary maintenance and repairs, which maintain the general condition and value of the Property. Costs of ordinary and necessary maintenance and repairs to keep the Property in an efficient operating condition, as more particularly outlined in U.S. Treasury Regulation 1.162-4 (as amended from time to time), are not eligible for an Improvement Adjustment. For the avoidance of doubt, certain maintenance items, such as replacing a roof or HVAC, are considered ordinary and necessary maintenance and repair, regardless of the cost, and do not qualify for an Improvement Adjustment.

(d) An "Improvement Adjustment" is subject to these additional requirements:

(i) You must request an Improvement Adjustment in writing at least 45 days before any Settlement Event or any event that requires a determination of the Ending Home Value.

(ii) As part of the request, You must specify the Material Improvements for which an Improvement Adjustment is sought and provide Unlock with photographic and supporting evidence of the Material Improvements in accordance with subsection (iv) below.

(iii) A Property Appraisal will be obtained to determine if Your Material Improvements have increased the Ending Home Value of the Property. Specifically, the appraiser will provide two values for the Property: (i) the actual fair market value of the Property as-is (which is called the "Actual Value"); and (ii) a hypothetical amount representing what the value of the Property would be if You had not made the Material Improvements (which is called the "Hypothetical Value"). If the Property Appraisal is conducted in connection with a Permitted Sale, and the proposed Gross Sale Price is not deemed by Unlock to differ materially from the market value of the Property, the appraiser will be instructed to assume that the Gross Sale Price is the Actual Value of the Property. The difference between the Actual Value and the Hypothetical Value is the dollar amount of the Improvement Adjustment. The appraiser will be instructed to consider the age, depreciation and potential functional obsolescence of Material Improvements, and not to consider the cost of the Material Improvements.

(iv) You will maintain, and provide to Unlock upon any request for an Improvement Adjustment, photographic and other physical documentation of the Property before completion of the Material Improvements, which will be sufficient in scope, clarity, number and detail to permit the appraiser to compare the Actual Value to the Hypothetical Value, in appraiser's independent discretion.

(v) No Improvement Adjustment will be given to the extent (i) the appraiser

determines that the Material Improvements have become functionally obsolete; (ii) any Material Improvements result in a violation of the Unlock Agreement; or (iii) the photographic and other supporting evidence provided by You is not of sufficient quality to support the appraiser's calculation.

(vi) Material Improvements that in the aggregate have added less than $10,000 to the Property value do not qualify for an Improvement Adjustment unless agreed to by Unlock.

(e) The Improvement Adjustment will typically reduce the Ending Home Value when calculating the Sharable Value and the Unlock Share. If the Property Appraisal process described above determines that the Actual Value minus the Hypothetical Value yields a negative number, Unlock may apply any such decrease in value as a "Negative Improvement Adjustment" in which case the Ending Home Value would be increased by the amount of the Negative Improvement Adjustment to account for the reduction in fair market value to the Property as a result of the Material Improvements. If Unlock believes the process described above would likely result in a Negative Improvement Adjustment, then Unlock may obtain such Property Appraisal.

(f) Provided all of the conditions of this Section 7.1 are met, Unlock will apply the Improvement Adjustment to the Ending Home Value when calculating the Sharable Value and the Unlock Share.

7.2 <u>Maintenance Adjustment.</u>

(a) In connection with a Settlement Event Unlock determines that either:

(i) You have breached Your duties to maintain and repair the Property as required under the Unlock Agreement; or

(ii) Ending Home Value is negatively affected as the direct result of any repair items, defects or conditions, or damage to the Property or its title which either existed as of the Effective Date or which occurred or developed during the Term ("Deferred Maintenance"),

Unlock will have the right, in consultation with one or more independent, third-party appraisers, property inspectors, home repair contractors, and other experts not affiliated with Unlock, to make a commercially reasonable estimate of the dollar amount which is required, at that time, to repair or perform such Deferred Maintenance, without reference to any repair estimates that may have been obtained by Owner, and to add such dollar amount as a "Maintenance Adjustment" to Ending Home Value when calculating the Sharable Value and the Unlock Share.

(b) Unlock may also apply a Maintenance Adjustment to Ending Home Value when calculating the Sharable Value and the Unlock Share where:

(i) as of the Effective Date, Unlock identified and expressly reserved for a Maintenance Adjustment (by attaching a Maintenance Addendum to the Unlock Agreement in the form of the attached Exhibit G) any Deferred Maintenance items which, if not remedied promptly or within a reasonable time, posed clear and serious risks to the Property improvements or Property value, and You failed to correct such items during the Term; or

(ii) You knew or had reason to know of any Deferred Maintenance items as of the Effective Date or during the Term of the Unlock Agreement but failed or neglected to disclose them to Unlock.

(c) Unlock will not apply a Maintenance Adjustment unless the Property value has been negatively impacted by $10,000 or more, unless agreed to by You.

(d) Unlock will have no liability in connection with, or for Your failure to cure, any Deferred Maintenance items.

8. **Property Appraisal.**

8.1 A "Property Appraisal" is an independent determination of Property value obtained from a professional appraiser or appraisal management company selected by Unlock and unaffiliated with either You or Unlock, and who satisfies the requirements of Fannie Mae, Freddie Mac or FHA and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and related regulations, and any applicable state laws, as of the date of the Property Appraisal, and performed in compliance with all applicable laws and the Uniform Standards of Professional Appraisal Practice, or an alternative property valuation as specified in Section 8.7

8.2 Whenever a Property Appraisal is obtained by Unlock under the Unlock Agreement, You are required to cooperate with the appraiser by granting full access to the Property, making available any relevant documents and information in Your possession pertaining to the Property and ensuring that the Property is presented in reasonable condition to be appraised.

8.3 Property Appraisals may be used:

(a) To determine Starting Home Value and as an input to determine Property Condition and the need for a Property Inspection as of the Effective Date.

(b) To determine Property value during the Term in connection with Unlock's investor reporting needs, an Event Of Default or a calculation of Total Home Finance under Section 12.

(c) In connection with a Settlement Event or a Partial Buyout:

(i) To establish or validate the Property's market value and the Ending Home Value.

(ii) As an input to determine Property condition and the need for a Property Inspection and a possible Maintenance Adjustment.

(iii) To determine the amount of any Improvement Adjustment and/or Maintenance Adjustment and the Sharable Value.

8.4 When establishing Ending Home Value and calculating the Unlock Share:

(a) In any Settlement Event where the Property is being sold, Ending Home Value will equal the proposed Gross Sale Price as described in Section 2.1(g); provided that a Property Appraisal may be obtained to determine if the proposed Gross Sale Price differs materially from the market value of the Property, in which case the Appraised Value, as determined in Section 8.5, may be used as Ending Home Value.

(b) In any Settlement Event where the Property is not being sold, Ending Home Value will equal the Appraised Value, as determined in Section 8.5.

(c) Notwithstanding the provisions of Sections 8.4(a), 8.4(b) and 8.5, in any Event Of Default, Unlock may elect to obtain a Property Appraisal and provide instructions to the appraiser that the Property is to be appraised on a "non-distressed" basis, and to use the "non-distressed" Appraised Value as Ending Home Value.

8.5 The Appraised Value is the dollar value of the Property that Unlock will determine and You and Unlock will agree upon where a Property Appraisal has been obtained after the Effective Date. In most situations, a single Property Appraisal will establish the Appraised Value. However, if You or Unlock believes, in good faith, that the first Property Appraisal contains a material omission or material error of fact, either party, at its own cost, no later than 10 days after receipt of the Property Appraisal, may request any of all of the following:

(a) a reconsideration of the Property Appraisal by the appraiser who provided it;

(b) an additional Property Appraisal by a different appraiser;

(c) an alternative property valuation such as a Broker Price Opinion or Automated Valuation Method (AVM).

You and Unlock will then work cooperatively, expeditiously and in good faith to agree on the Appraised Value based on all available information. If You and Unlock are unable to agree, the Appraised Value will be determined by arbitration in accordance with Section 20.

8.6 In any situation under the Unlock Agreement where You are requesting an Improvement Adjustment, Unlock will obtain a Property Appraisal, at your expense, and task the appraiser with the additional requirement to determine the amount of the Improvement Adjustment, as provided in Section 7.

8.7 Alternatives. If an Appraised Value is needed under the Unlock Agreement, Unlock, in its discretion, may determine that an alternative property valuation such as a Broker Price Opinion or Automated Valuation Method (AVM) is sufficient and may obtain such valuation in lieu of a Property Appraisal. In connection with any Settlement Event where the Property is being sold, and there is a

pre-existing appraisal available that may satisfy Unlock's requirements, such as an appraisal obtained by a third-party buyer in connection with their purchase mortgage, Unlock may, in its discretion, accept or reject such existing appraisal for purposes of establishing the Appraised Value. In certain situations where Unlock determines that the Property is difficult to value, Unlock may require more than one Property Appraisal as input to a determination of Appraised Value.

8.8 Appraisal Expenses.

(a) Costs incurred in obtaining a Property Appraisal or other valuation of the Property are called "Appraisal Expenses." To the extent allowed by applicable law, and unless paid by Unlock, You will pay all Appraisal Expenses in connection with the first Property Appraisal or other valuation of the Property obtained in connection with: (i) initial valuation of the Property prior to execution of the Unlock Agreement to establish the Starting Home Value; (ii) any Settlement Event; (iii) any Partial Buyout; (iv) any Event Of Default; (v) any allocation of insurance or condemnation proceeds; (vi) any other determination of an Ending Home Value; (vii) any determination of an Improvement Adjustment or Maintenance Adjustment; or (viii) any Approved Subsequent Loan as set forth in Section 12.

(b) If there is more than one Property Appraisal or other valuation obtained in connection with any of the events described in this Section, the Appraisal Expenses will be paid by the requesting party, or if both parties agree that an additional Property Appraisal or other valuation should be obtained, by both parties divided equally. If Appraisal Expenses have not been paid by the party required to bear them, the other party may subtract them out of the party's funds from escrow at the closing of a Settlement Event, as allowed by applicable law. In the case of unpaid Appraisal Expenses by Owner, such amounts shall be considered Unpaid Owner Obligations.

8.9 All Property Appraisals and alternative valuation tools must conform to Unlock's most current requirements. A Property Appraisal or alternative valuation report may be deemed invalid by Unlock in its discretion if the report is more than 60 days old.

**9. <u>Property Inspection.</u>**

9.1 A "Property Inspection" is an independent determination of Property condition obtained from a professional inspection company selected by Unlock and unaffiliated with either You or Unlock. The property inspector and/or inspection company must have experience in the local community and be appropriately licensed, in good standing, in the jurisdiction in which the Property is located, where required. Inspections may be general in nature or specific in scope, such as a roof or pest inspection. As a result, more than one inspection may be required to determine Property condition, in which case the term Property Inspection, as used in the Unlock Agreement, may refer to multiple inspections.

9.2 Whenever Unlock obtains a Property Inspection, You are required to cooperate with the inspector(s) by granting full access to the Property, making available any relevant documents and information in Your possession pertaining to the Property and ensuring that the Property is presented in reasonable condition to be inspected.

9.3 Property Inspections may be used:

(a) To determine the Property's condition as of the Effective Date.

(b) To determine the Property's condition during the Term in connection with Unlock's investor reporting needs or an Event Of Default.

(c) To determine the Property's condition and the amount of any Improvement Adjustment or Maintenance Adjustment in connection with a Settlement Event or a Partial Buyout.

9.4 Costs incurred in obtaining a Property Inspection are called "Inspection Expenses." To the extent allowed by applicable law, and unless paid by Unlock, You will pay all Inspection Expenses in connection with the first Property Inspection of each type obtained in connection with: (i) any initial inspection of the Property prior to execution of the Unlock Agreement; (ii) any Settlement Event; (iii) any Partial Buyout; (iv) any Event Of Default; (v) any allocation of insurance or condemnation proceeds; (vi) any other determination of an Ending Home Value; and (vii) any determination of an Improvement Adjustment or Maintenance Adjustment.

9.5 If there is more than one Property Inspection of a given type obtained in connection with any of the events described in this Section, the Inspection Expenses will be paid by the requesting party, or if both parties agree that an additional Property Inspection should be obtained, by both parties divided equally. If Inspection Expenses have not been paid by the party required to bear them, the other party may subtract them out of the party's funds from escrow at the closing of a Settlement Event, as allowed by applicable law. In the case of unpaid Inspection Expenses by Owner, such amounts shall be considered Unpaid Owner Obligations.

9.6 In connection with any Settlement Event where the Property is being sold, and there is a pre-existing property inspection available that may satisfy Unlock's requirements, such as an inspection obtained by a third-party buyer in connection with their purchase, Unlock may, in its discretion, accept or reject such existing property inspection.

9.7 All Property Inspections must conform to Unlock's most current requirements.

9.8 To monitor Property condition during the Term of the Unlock Agreement, Unlock may, at its expense:

(a) Conduct reasonable inspections of the interior and exterior of the Property, including Property Inspections and inspections conducted with drone photography.

(b) Require You to provide written answers to questions regarding any conditions known to You which may affect the Property or its value.

## 10. <u>Annualized Cost Limit.</u>

10.1 The cost of Your Unlock Agreement on an annual basis ("Annualized Cost") is subject to and capped at the Annualized Cost Limit set forth in Table of Key Terms. Whenever the Unlock Share

is calculated in connection with a Settlement Event or Partial Buyout, Unlock will also determine the exact number of days that passed between the Effective Date and the Settlement Date (or closing date of the Partial Buyout). This number, called the "Term Days", will be used to calculate the Annualized Cost and the "Maximum Unlock Share", as follows:

***Annualized Cost =***

***(Unlock Share / Investment Payment) ^ (365 / Term Days) - 1***

***Maximum Unlock Share =***

***Investment Payment X (1 + Annualized Cost Limit) ^ (Term Days / 365)***

The Maximum Unlock Share is the greatest amount the Unlock Share can be when determining the Settlement Payment or Partial Settlement Payment. If the Annualized Cost exceeds the Annualized Cost Limit, the Unlock Share will be set equal to the Maximum Unlock Share when calculating the Settlement Payment or Partial Settlement Payment.

**11. Owner Representations, Warranties and Covenants.**

11.1 Owner makes the representations, warranties and covenants in this Section 11 to, and for the benefit of, Unlock. The representations, warranties and covenants of Owner in this Section 11 shall be deemed made and restated on and as of, as applicable: (a) the Effective Date; (b) the closing date of a Settlement Event; (c) an Unlock Conversion; and (d) upon the assignment of the Unlock Agreement by Unlock, as permitted hereunder. Unlock is relying on the accuracy and completeness of the representations, warranties and covenants of Owner set forth in this Section 11 in entering into the Unlock Agreement.

11.2 Title. As of the Effective Date, all Owners, individually and collectively, will appear on record title to the Property as holding fee simple title to one hundred percent (100%) of the Property. You will have good and marketable title to the Property, which will be free of any license, easement, or other encumbrance or restriction against the title to the Property, other than Approved Existing Loans and Permitted Encumbrances, which are defined below.

(a) "Approved Existing Loan" means, as of the Effective Date, any pre-existing loan secured by a lien on the Property which is (i) listed in the property title report obtained by Unlock ("Title Report") or (ii) otherwise known to and approved in writing by Unlock.

(b) "Permitted Encumbrance" means all licenses, easements, or other title restrictions to the Property that exist as of the Effective Date, and are listed in the Title Report, plus any additional licenses, easements or title restrictions agreed to in writing by Unlock after the Effective Date.

As of the Effective Date, You represent that the Title Report accurately reflects all pre-existing loans secured by a lien on the Property and all Permitted Encumbrances, and to the extent that the it does not, and there are any existing loans secured by a lien on the Property or any licenses, easements, or

other title restrictions to the Property that are not reflected in the Title Report, You have disclosed them in full detail to Unlock.

During the Term You will keep the Property free of any liens, title exceptions, and easements except for: liens securing Approved Existing Loans or Approved Subsequent Loans (as defined in Section 12.4) and Permitted Encumbrances.

11.3 Secured Obligations. A “Secured Obligation” is an obligation secured by a lien on the Property, including, but not limited to: mortgage loans, home equity lines of credit, Property taxes and assessments, homeowner association dues or assessments and mechanics liens. During the Term You will promptly pay, and at all times remain current on, all Secured Obligations and You will provide Unlock proof of payment upon request. You will provide advance written notice of Your intent to apply for any deferrals or forbearance of any Secured Obligation. If there is a default under any Secured Obligation, You will take immediate action necessary to: (i) cure the default, (ii) terminate any foreclosure or enforcement action, (iii) satisfy the Secured Obligation, and/or (iv) remove or release such lien from the Property. You, and not Unlock, are solely liable for all Secured Obligations, including in the event of an Unlock Conversion.

11.4 Litigation. You represent and warrant that there is no foreclosure, notice of default, notice of sale, condemnation, environmental, zoning, or land-use regulation proceeding; or any lawsuit, arbitration, proceeding, tax claim, or special assessment that is pending or threatened against Owner, the Property, or that arises out of the ownership of the Property or that might adversely affect the Property, the value of the Property or Owner’s ability to perform its obligations under the Unlock Agreement.

11.5 Legal Use. You represent, warrant and covenant that the use and occupancy of the Property are fully compliant, and will be fully compliant during the Term, with all state, federal and local laws, zoning ordinances, and regulations, including environmental prohibitions.

11.6 Property Condition. You warrant there are no material defects or conditions on or affecting the Property or title to the Property undisclosed to Unlock, which are now known to or could reasonably have been discovered by You, which could affect the use or value of the Property. You acknowledge that evidence of misrepresentation or non-disclosure as to the condition of the Property by You raises a presumption of bad faith and is a breach of the Unlock Agreement.

11.7 Environmental Matters. There is not any violation of, or claim of violation of any federal, state, or local environmental law or regulation, including, without limitation, those relating to hazardous materials (“Environmental Laws”). In addition, there is no presence of any hazardous materials on, in, or about the Property or property in the vicinity of the Property. Owner shall not, and shall not allow others to, violate any Environmental Laws with respect to the Property or perform any activities upon, or use or occupy the Property, or any portion of the Property, in any manner that violates any Environmental Law.

**11.8** Your Decision. **You understand that entering into the Unlock Agreement can have significant tax, financial and estate planning consequences. You understand that Unlock will have a lien on the Property and an Event Of Default that is uncured could result in a foreclosure by Unlock in which case You could lose the Property. You understand that Unlock does not provide tax advice and makes no representations as to the tax advantages or disadvantages which may accrue to You in connection with the Property or the Unlock Agreement. You are not relying on any information or representation by Unlock, its agents, affiliates, officers, or employees regarding: (i) the value of the Property; and (ii) the advisability of You entering into the Unlock Agreement, including but not limited to tax, legal, financial, and estate planning consequences. You acknowledge that Unlock has urged You to discuss the Unlock Agreement with family members, heirs, and with independent tax, legal and financial advisors to ensure an understanding of the risks and benefits of the Unlock Agreement with respect to Your particular situation. You represent and warrant that You have had the opportunity to seek independent advice regarding such matters and by entering into the Unlock Agreement You fully understand the terms, conditions and potential consequences.**

11.9 Non-Owner Occupants. As of the Effective Date You have identified all residents of legal age who occupy the Property but who are not signatories to the Unlock Agreement ("Non-Owner Occupants") and informed them of the existence, terms and potential impact of the Unlock Agreement on (i) Your Estate and (ii) their ability to inherit or continue living in the Property. You shall promptly so inform any additional Non-Owner Occupants at all times during the Term.

11.10 Reliance. Unlock relies on information provided by You when making its investment decision. You have promptly delivered all available documentation and information requested by Unlock during the underwriting of Your application. All documentation and information You have provided to Unlock fairly and accurately reflects the condition of the Property and Your financial condition and is truthful, complete, and not misleading.

11.11 Authority. You are one or more individuals with the legal power, authority and full capacity to enter into and to consummate all transactions contemplated by the Unlock Agreement. The execution and delivery of the Unlock Agreement will not conflict with, or result in an acceleration or breach of any of the terms, conditions or provisions of, or constitute a default under, any note or other evidence of indebtedness or any contract, indenture, mortgage, deed of trust, loan, agreement, lease or other agreement or instrument to which Owner is a party or by which any portion of the Property may be bound.

11.12 No Change. You warrant that there has been no material change in Your financial condition since Your application was last submitted to Unlock.

11.13 Status of Owner. You represent and warrant that You are either (a) single or unmarried and You are not in a domestic partnership, and that in each case no spouse, domestic partner or former spouse or domestic partner has any interest in the Property that you have not disclosed in writing to Unlock, (b) married or in a domestic partnership and Your spouse or domestic partner has an interest

in the Property, and such person has signed the Unlock Agreement, or (c) married or in a domestic partnership and Your spouse or domestic partner does not have an interest in the Property, and such person has signed the Consent of Spouse/Domestic Partner set forth in Exhibit D hereto.

11.14 Continuing Obligation. You warrant You have a continuing obligation to comply with the representations made in this Section 11 and to notify Unlock during the Term if any representation You have made ceases to be materially accurate or true.

**12. Total Home Finance Limit and Approved Subsequent Loans.**

12.1 During the Term of the Unlock Agreement, there is a limit on the amount of financing that can be secured by the Property ("Total Home Finance"). Total Home Finance is calculated as follows:

***Total Home Finance = (Housing Debt + Unlock Share) / Appraised Value***

***Where "Housing Debt" equals the total principal balance of loans secured by the Property, including the unused portion of any credit lines secured by the Property.***

***And where Unlock Share ignores any impact of the Annualized Cost Limit and any impact of a potential Improvement Adjustment and/or Maintenance Adjustment.***

12.2 During the Term of the Unlock Agreement, Total Home Finance cannot exceed the Total Home Finance Limit as set forth in the Table of Key Terms, subject to adjustment in accordance with Section 14.8.

12.3 The Total Home Finance Limit applies both to Approved Existing Loans, as defined in Section 11.2, and Approved Subsequent Loans, as defined below.

12.4 If, during the Term of the Unlock Agreement, You want to obtain an "Approved Subsequent Loan", You must:

(a) Provide Unlock with loan documentation related to the proposed loan as follows:

(i) Immediately upon Your receipt of the "Loan Estimate" as required under federal regulations (or equivalent disclosure if your loan does not mandate a Loan Estimate), but in no case less than seven business days prior to the proposed close of the loan, You must provide a full copy of it to Unlock.

(ii) Immediately upon Your receipt of the "Closing Disclosure" as required under federal regulations (or similar disclosure if your loan does not mandate a Closing Disclosure), but in no case less than two business days prior to the proposed close of the loan, You must provide a full copy of it to Unlock.

(b) Cooperate with Unlock to obtain a Property Appraisal, to be completed no later than 10 business days prior to the proposed close of the loan.

(c) Ensure that copies of all loan documents and all documents recorded against the Property

are delivered to Unlock immediately following the closing of the loan.

(d) Obtain Unlock's prior written consent to the loan. Unlock will not unreasonably withhold consent if:

(i) The Appraised Value of the Property is greater than or equal to the Starting Home Value and the proposed loan will not result in a breach of the Total Home Finance Limit, as possibly adjusted in accordance with Section 14.8; or

(ii) The Appraised Value of the Property is less than the Starting Home Value, the proposed loan is being used solely to refinance existing senior debt secured by the Property, and the amount of the proposed loan is less than or equal to the principal balance of the debt being refinanced, plus actual and reasonable refinancing costs.

Notwithstanding the foregoing, Unlock in its discretion may refuse to consent to any lien on the Property that could materially impair its rights, including, reverse mortgage loans, shared appreciation mortgage loans, mortgage loans with negative amortization or prepayment penalties, private or non-institutional loans, unrecorded loans secured by the Property, and certain loans with payment reset or other variable payment features.

(e) Unlock will subordinate the priority of its rights under the Unlock Agreement to the lien of any lender that extends to You an Approved Subsequent Loan, provided that: (i) the Approved Subsequent Loan satisfies the requirements of this Section 12.4; (ii) any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Unlock in its discretion; and (iii) You pay all costs incurred by Unlock associated with the subordination.

(f) Unlock makes no representations or warranties regarding the availability or terms of any loan that You may seek during the Term of the Unlock Agreement, and Unlock will have no liability to You as a result of the unavailability or unfavorable terms of any such loan. Note that mortgage lenders may not agree to lend on a property with an Unlock Agreement to the same extent or on the same terms as they would for a property without an Unlock Agreement. It is possible that You will need to terminate Your Unlock Agreement in order to complete a future home loan.

## 13. <u>Property Condition.</u>

13.1 You will maintain the Property in good condition, and no worse than its condition as of the Effective Date, subject to normal wear and tear. You will prevent any waste, deterioration or decrease in value due to the Property's condition. You will periodically perform customary and reasonable repairs as needed or as required. You are solely responsible for all ordinary maintenance costs incurred in connection with maintaining the condition and value of the Property.

13.2 You acknowledge that Unlock will have no liability to You or to any third party for, and You hold Unlock harmless from, any loss or liability in connection with, any defect or condition on or

affecting the Property, whether known or unknown.

**14. Occupancy and Property Use.**

14.1 You will enjoy sole right of occupancy of the Property under the Unlock Agreement as an owner and not as a tenant or lessee, whether or not Unlock has elected a Conversion, subject to limited Unlock rights of entry and repair following an Event Of Default or as otherwise set forth in the Unlock Agreement.

14.2 You will (i) use the Property solely as a residential property, except for a "home office" in compliance with the Internal Revenue Code and applicable U.S. tax regulations; and (ii) occupy the Property as stated in the Table of Key Terms.

14.3 If Your Occupancy is declared as Principal Residence in the Table of Key Terms: (i) You will occupy the Property as "Principal Residence" throughout the Term, which means that You live and sleep in the Property for no less than 180 days out of any 365-day period. Unlock will not unreasonably withhold consent to a temporary lapse in occupancy if You make arrangements satisfactory to Unlock to care for the Property while You are not occupying it. (ii) You may rent part of the Property without Unlock's consent, but You cannot rent 100% of the Property.

14.4 If Your Occupancy is declared as Second Home in the Table of Key Terms: (i) You are not required to occupy the Property as "Principal Residence. (ii) You may rent part of the Property without Unlock's consent, but You cannot rent 100% of the Property.

14.5 If Your Occupancy is declared as Rental Property in Table of Key Terms: (i) You are not required to occupy the Property as "Principal Residence. (ii) You may rent all or part of the Property without Unlock's consent.

14.6 Regardless of Occupancy declaration, You cannot enter into any lease or rental agreement with a term that expires after the Expiration Date of the Unlock Agreement.

14.7 In any Settlement Event where Unlock determines that an existing rental agreement or tenant who is occupying or has rights to occupy the Property or a portion of the Property is having a negative impact on the Unlock Share, You, at Your expense, will be responsible for terminating such rental agreement or removing such tenant from the Property, or otherwise for compensating Unlock for the loss in Unlock Share, in accordance with the following process:

(a) The Settlement Payment will be calculated at the time the Settlement Event is triggered and is being delayed due to an existing rental or tenant issue.

(b) Unlock and You will monitor the situation and cooperate to complete the Settlement Event as soon as the rental or tenant issue is resolved.

(c) When the Settlement Event can proceed, the Settlement Payment will be recalculated. If the newly calculated amount is less than the previously calculated amount, the difference will be

added to the amount of the Settlement Payment.

14.8 If Your Occupancy is declared as Principal Residence in the Table of Key Terms on the Effective Date, and You begin using the Property as a Second Home or Rental Property during the Term, Unlock may, in its discretion, lower the Total Home Finance Limit to what it would have been if You had originally declared Your Occupancy as a Second Home or Rental Property.

**15. Administration Fees.**

15.1 Unlock may charge reasonable Administration Fees in connection with the handling of various events that can occur during the Term of the Unlock Agreement, including, without limitation a change to title, a subordination in connection with new or refinanced debt, a Settlement Event, an Event Of Default, a Protective Advance and a Non-Distressed Sale. The schedule of charges for Administration Fees is set forth in the attached Exhibit E.

15.2 Administration Fees are due and payable by You when incurred. However, Unlock may elect, in its discretion, to defer payment of Administration Fees until a later date, or until the occurrence of a Settlement Event ("Deferred Fees"). Unpaid Administration Fees and Deferred Fees shall be considered Unpaid Owner Obligations.

**16. Default.**

16.1 The occurrence of any of the following will constitute an "Event Of Default" under the Unlock Agreement:

(a) Failure to Perform. You breach or fail to perform in accordance with any provision of the Unlock Agreement, or You take any action to impede a Conversion or interfere with or negatively impact Unlock's rights.

(b) Misrepresentation. You (i) make any representation, (ii) provide Unlock with any information or (iii) fail to provide Unlock with any information, whether oral or written, in each case, that is false, inaccurate or misleading, including with respect to the condition or value of the Property, in connection with the amount or kind of consideration given to You in any sale or transfer of the Property, when a non-signatory to Your Unlock Agreement becomes an owner or a principal resident of the Property, or when Your marriage or domestic partner status changes; or (iv) fail to correct a representation that has become untrue within a reasonable time after learning of the new information regarding the representation.

(c) Delinquencies. You become delinquent on any obligation regarding the Property, including on any loans secured by, or with respect to any taxes or assessments owed on, the Property.

(d) Occupancy. You violate the occupancy provisions of Section 14.2 through 14.6 or the Non-Owner Occupant provisions of Section 11.9.

(e) Unauthorized Transfers. You transfer or attempt to transfer the Property, or any interest

in the Property, other than in accordance with the Unlock Agreement.

(f) Unapproved Liens. A lien attaches to the Property without Unlock's prior written approval, or You obtain any loan secured or to be secured by the Property that Unlock has not approved in writing, whether recorded or unrecorded.

(g) Financial Difficulty. You become insolvent or unable to pay Your debts, or there is a voluntary or involuntary commencement of a bankruptcy against You, or an appointment of a receiver for Your assets, or You make a general assignment for the benefit of creditors, or any similar event or proceeding.

(h) Insurance. You fail to maintain insurance on the Property, as prescribed in the Unlock Agreement.

(i) Notices. You fail to timely provide to Unlock any notice(s) required under the Unlock Agreement.

(j) Condition of Property. You fail to maintain, preserve or repair the Property in accordance with Section 13.1.

(k) Transfer of Agreement. Any assignment, attempted assignment, or other transfer of the Unlock Agreement by You in violation of the Unlock Agreement.

(l) Rental Terms. The Property becomes subject to a lease or rental agreement that extends beyond the Expiration Date.

(m) Cooperation. You fail to cooperate with Unlock or any of Unlock's agents to affect a sale of the Property in connection with a Settlement Event.

(n) Other Adverse Acts. Any other occurrence, action or inaction by You which may have an adverse effect on the Property, the legal ownership of the Property, the value of the Property, or Unlock's rights.

**17. Unlock Rights and Remedies.**

17.1 Your performance under the Unlock Agreement will be secured as a recorded lien on the Property by recording the Security Instrument in the county or local jurisdiction where the Property is located.

17.2 Upon an Event Of Default, Unlock will provide You with a Notice Of Default which will state the triggering circumstances. Except as otherwise provided in the Unlock Agreement, You will have thirty (30) days from the notice delivery date to cure the default, subject to Section 17.4 and the provisions of any laws which apply to the Unlock Agreement. If You fail to cure within thirty (30) days, Unlock may exercise any of its rights or remedies, subject to applicable law, including the following:

(a) Unlock may make Protective Advances in accordance with Section 17.12.

(b) Unlock may demand for You to promptly remedy any material defect or adverse condition on the Property.

(c) Unlock or its agents may enter the Property to (i) to conduct Property Inspections and Property Appraisals; (ii) to prevent waste of the Property; and (iii) for any other purpose reasonable to prevent continuing harm to or diminution in value of the Property.

(d) Unlock may seek monetary damages against You, including interest, attorney's fees, and costs.

(e) Unlock may be irreparably injured and will have the right to specific performance, injunctive relief, or any other equitable relief against You.

(f) Unlock may elect to exercise its right to a Conversion, then solicit and sell the entire Property, including Owner's interest therein, to one or more third parties, and receive the Settlement Payment from the proceeds of such Property sale. Upon the sale of the Property, Owner shall be entitled to receive all other proceeds after the Settlement Payment is paid to Unlock and Closing Costs have been paid to the applicable parties.

(g) Unlock may exercise its rights and remedies under the Security Instrument, including its foreclosure right. This could result in a termination and settlement of the Unlock Agreement. In the event Unlock elects to exercise the power of sale and foreclose on the Property under the Security Instrument and in this Section 17.2, Unlock may declare the Settlement Payment immediately due and payable by delivery of the notice(s) specified in the Security Instrument.

17.3 If Unlock is required to pay money pursuant to a preference claim in a bankruptcy proceeding involving You, then such amount will become an Unpaid Owner Obligation and Unlock is entitled to assert a claim against You for the same amount.

17.4 In any default situation where, in Unlock's discretion, absent immediate action there could be material damage to the Property, Unlock's interests therein or the value of the Unlock Share, Unlock may suspend the 30-day cure period and take immediate action to exercise any of its rights or remedies, subject to applicable law.

17.5 Unlock is entitled to demand immediate termination of the Unlock Agreement, the return of the Investment Payment and any other payments tendered to You, and the payment of the amount, if any, by which the Settlement Payment exceeds the Investment Payment, together with any and all attorney's fees and costs incurred by Unlock in connection with such termination in an Event Of Default related to: (i) fraud, bad faith, or misrepresentation or nondisclosure by You; or (ii) a transfer or sale, or attempted transfer or sale, of the Property by You in violation of the terms of the Unlock Agreement.

17.6 In the event of (i) fraud, bad faith, or misrepresentation or nondisclosure by You; (ii) any

transfer or sale, or attempted transfer or sale, of the Property by You in violation of the terms of the Unlock Agreement, or (iii) any other uncured default by You under the terms of the Unlock Agreement, Unlock, in its discretion, may increase the Settlement Payment by an amount equal to ten percent (10%) of the Investment Payment.

17.7 Owner and Unlock each waive and relinquish all rights either of them may now or later have to seek partition of the Property, whether in kind or by sale; provided, however, that Unlock will retain the right to seek a partition, (i) in the event of, and as part of any action arising out of an uncured Event Of Default, or (ii) in connection with any claim or action by Owner which asserts that any provision of the Unlock Agreement is against the law or unenforceable.

17.8 In an Event Of Default which has resulted in a foreclosure action by a mortgage lender, tax authority or other lien holder (and provided that You have first reasonably exhausted any loss mitigation remedies offered to You by such lienholder), Unlock, in its discretion, may offer to You the remedy of a "Non-Distressed Sale," as follows: If You accept Unlock's offer of a Non-Distressed Sale, Unlock may cure the default through one or more Protective Advances; in exchange You will give Unlock the power to exclusively and unilaterally market and sell the Property, and You will cooperate and execute all documentation required by Unlock to market the Property and complete the Non-Distressed Sale. The Non-Distressed Sale remedy is intended to prevent the Property from going to foreclosure and becoming a "distressed" property, to protect Your and Unlock's interest in the Property, and to prevent a foreclosure event from impacting Your credit.

17.9 In any Event Of Default which leads to a sale of the Property: (i) Unlock may elect to calculate the Unlock Share based on an Appraised Value in accordance with Section 8.4(c); and (ii) You will pay all costs in connection with the sale, including Closing Costs, any Appraisal Expenses and Inspection Expenses and any other expenses, unless paid by Unlock, but not any closing costs to be paid owed by the third-party buyer.

17.10 The remedies provided in the Unlock Agreement are cumulative. A party who asserts a right or seeks a remedy may also assert other rights or seek other remedies available at law, equity or otherwise.

17.11 In connection with any Event Of Default, the Expiration Date will automatically extend for whatever time is necessary to permit Unlock to exercise its rights and remedies.

17.12 <u>Protective Advances.</u> If You fail to protect the Property and Unlock's rights therein, Unlock may make "Protective Advances," as defined in this Section, as Unlock deems appropriate. Unlock may make Protective Advances for things such as:

(a) The placement of insurance; the payment of taxes, assessments, levies, liabilities, obligations and other charges of every nature on the Property;

(b) The making of necessary repairs;

(c) The cure of any defaulted loans secured by the Property; or

(d) The removal of a receiver appointed for the Property.

Unlock will provide 30 days' written notice to You, to correct Your default, or such longer period as may be required by applicable law. If, after the 30-day notice period, You have not cured the default, Unlock may make the payments itself. All such payments by Unlock (including attorneys' fees incurred in litigation or arbitration with parties other than You) are deemed Protective Advances. Notwithstanding the foregoing notice period, prior notice from Unlock is not required if the Unlock Agreement expressly so provides, or when Unlock determines that prompt action is necessary to protect the Property and Unlock's rights.

You consent to Unlock's unilateral authority to determine the appropriateness or necessity of making any Protective Advances in accordance with the Unlock Agreement. Unlock incurs no liability for its election not to take any action authorized under this Section 17.12.

17.13 Unlock may demand prompt reimbursement for any Protective Advances. You must reimburse Unlock no later than 10 days after demand. Protective Advances incur interest at the rate of 8% per annum, subject to applicable law, from the date of demand until paid in full. Protective Advances, plus any associated interest charges, to the extent You do not reimburse Unlock, become a component of Unpaid Owner Obligations.

**18. Insurance.**

18.1 Coverage.

18.1.1. You must maintain at Your sole expense:

(a) Insurance on the Property against fire and other hazards included in the special form (HO 3) policy (and any successor forms).

(b) Hazard insurance, including flood hazard, and any other insurance Unlock may reasonably require and which is common for similar properties in similar locations, in an amount equal to the current replacement cost of the improvements on the Property, or the maximum amount as available under applicable law, which amount will be increased not less frequently than annually as the replacement cost of the improvements increases.

(c) Liability insurance on the Property against such risks with coverage in an amount of at least one million dollars ($1,000,000) for any single occurrence, or such lesser amount as is reasonable for similar properties in Your location.

18.1.2. You hereby authorize Unlock to communicate with all insurance companies at any time to ensure the maintenance of policies, the coverage, and the reimbursement of losses.

18.1.3. Unlock must be named as an additional "named insured" and "loss payee" under all hazard and liability insurance policies obtained by You related to the Property.

18.1.4. You may obtain insurance from any insurance carrier reasonably acceptable to Unlock that has a Financial Strength Rating of “B” or better from A.M. Best (or equivalent rating from Kroll, S&P or Demotech).

18.1.5. You must provide Unlock with copies of all insurance policies related to the Property when the insurance is obtained and at any time there is a change in carrier or policy. You must provide Unlock with proof of coverage upon request.

18.1.6. If You fail to maintain or obtain the insurance coverage required by this Section 18.1, Unlock may obtain such coverage on the Property. Any such expenses paid by Unlock are Protective Advances.

18.2 Distribution of Insurance Proceeds for Losses.

18.2.1. Subject to Your obligations and the requirements in connection with any Approved Existing Loans or Approved Subsequent Loans, insurance for losses will be distributed as described in this Section 18.2.

18.2.2. You and Unlock will cooperate in the pursuit, settlement, and adjustment of any losses under any insurance policies.

18.2.3. In the event of damage to the Property where insurance claim proceeds are sufficient to restore or repair the Property to at least the same condition and characteristics as of the time immediately preceding such destruction or damage, the Unlock Agreement will continue, and the proceeds must promptly be applied to such restoration or repair, further subject to:

(a) Unlock has the right to approve any restoration or repair plans, including the contractors or subcontractors used and the costs associated with the restoration or repair.

(b) Unlock has the right to release insurance proceeds to the individuals or entities performing the repair and restoration work in one or more progress payments as the work is completed.

(c) Unless required by law, Unlock is not required to pay You any interest or earnings on insurance proceeds.

(d) You are responsible for ensuring that any repair or restoration work is completed in a cost-effective manner that in no way impairs the structural integrity, habitability or value of the Property.

(e) You are responsible for obtaining any governmental approvals or permits that are required for such repair or restoration work.

18.2.4. Unlock has no obligation to pay any amount of the restoration or repair of the Property even if the insurance proceeds are insufficient to complete the restoration or repair. You are responsible for any shortfall. If restoration or repair is not economically feasible due to insufficient

insurance claim proceeds because the Property was underinsured, Unlock, in its discretion, may require You to pay for the restoration or repair out of Your other assets.

18.2.5. If restoration or repair is not economically feasible due to insufficient insurance claim proceeds where the Property was not underinsured, all insurance proceeds will be allocated in the following order:

(a) To payment of reasonable expenses incurred by You or Unlock in collecting and contesting with the insurers the payments under the relevant insurance policies, including attorney's fees that have been approved by Unlock;

(b) To payment of all Approved Existing Loans or Approved Subsequent Loans that have priority over the Unlock Agreement;

(c) To Unlock, in an amount equivalent to the Settlement Payment as it would have been calculated had the Unlock Agreement been settled immediately before the destruction or damage occurred; and

(d) To You, the balance of the proceeds.

The Unlock Agreement will end upon payment to Unlock of the insurance proceeds as described in Section 18.2.5(c) above.

18.2.6. In the event of loss to Unlock resulting directly from Your failure to maintain insurance, maintain insurance at the required coverage level, or obtain a claim, Unlock shall be entitled to all remedies available under the Unlock Agreement, including, without limitation, in connection with an Event Of Default, and/or available at law or in equity.

**19. <u>Condemnation.</u>**

19.1 If the Property is condemned in whole or in part during the Term, You shall immediately notify Unlock of such condemnation and all condemnation proceeds will be distributed as follows:

(a) To repay any reasonable costs and expenses incurred by You or Unlock in collecting and contesting the condemnation proceeds, including attorney's fees that have been approved by Unlock;

(b) To payments for extinguishing all Approved Existing Loans or Approved Subsequent Loans that have priority over the Unlock Agreement;

(c) To Unlock, in amount equal to the Settlement Payment;

(d) To You, the balance of the proceeds.

19.2 In the case of a full condemnation, the Unlock Agreement will end upon payment to Unlock of the condemnation proceeds as described in Section 19.1(c) above.

19.3 In the case of a partial condemnation: (i) The Unlock Agreement will continue and Unlock will retain its rights with respect to any Property that has not been condemned; and (ii) after distribution of the proceeds of the partial condemnation in accordance with Section 19.1, for all remaining calculations to be made under the Unlock Agreement, the Unlock Share will be reduced by an amount equal to any condemnation proceeds paid to Unlock under Section 19.1(c) above.

**20. <u>Arbitration.</u>**

20.1 In the event of any inconsistencies between the terms and conditions of the Unlock Agreement (or any of them) and the terms and conditions of this Section 20, this Section 20 shall control and be binding.

20.2 OWNER AGREES THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH BENEFICIARY (INCLUDING ANY AFFILIATE, EMPLOYEE, OFFICER, DIRECTOR OF BENEFICIARY IN THEIR CAPACITY AS SUCH OR OTHERWISE) ARISING OUT OF, RELATING TO, OR RESULTING FROM THE UNLOCK AGREEMENT OR THE PROPERTY, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES OF JAMS, THE RESOLUTION EXPERTS (THE "RULES"), AND, BECAUSE THIS AGREEMENT SUBSTANTIALLY AFFECTS INTERSTATE COMMERCE THE PARTIES AGREE THIS AGREEMENT, INCLUDING ITS ENFORCEMENT IS TO BE GOVERNED BY THE FEDERAL ARBITRATION ACT, 9 U.S.C. § 1 ET SEQ.

20.3 <u>Procedure.</u> OWNER AGREES THAT ANY ARBITRATION WILL BE ADMINISTERED BY JAMS, THE RESOLUTION EXPERTS ("JAMS"), AND THAT A SINGLE NEUTRAL ARBITRATOR WILL BE SELECTED IN A MANNER CONSISTENT WITH JAMS' COMPREHENSIVE ARBITRATION RULES AND PROCEDURES AND JAMS POLICY ON MINIMUM STANDARDS OF PROCEDURAL FAIRNESS FOR CONSUMER ARBITRATIONS. OWNER HAS ACCEPTED JAMS RULES AND USE OF JAMS. OWNER ALSO AGREES THAT THE ARBITRATOR SHALL HAVE THE POWER TO AWARD ANY REMEDIES, INCLUDING ATTORNEYS' FEES AND COSTS, AVAILABLE UNDER APPLICABLE LAW, EXCEPT AS OTHERWISE SET FORTH IN THE UNLOCK AGREEMENT. OWNER UNDERSTANDS THAT UNLOCK WILL PAY FOR ANY ADMINISTRATIVE OR HEARING FEES CHARGED BY THE ARBITRATOR OR JAMS EXCEPT THAT OWNER SHALL PAY THE FIRST $250.00 OF ANY FILING FEES ASSOCIATED WITH ANY ARBITRATION OWNER INITIATES. OWNER AGREES THAT THE ARBITRATOR SHALL ADMINISTER AND CONDUCT ANY ARBITRATION IN A MANNER CONSISTENT WITH THE RULES AND THAT TO THE EXTENT THAT THE APPLICABLE JAMS' ARBITRATION RULES CONFLICT WITH THE RULES, THE RULES SHALL TAKE PRECEDENCE. OWNER AGREES THAT THE DECISION OF THE ARBITRATOR SHALL BE IN WRITING AND PROVIDE A CONCISE WRITTEN STATEMENT OF THE ESSENTIAL FINDINGS AND CONCLUSIONS ON WHICH THE AWARD IS BASED.

20.4 <u>Remedy.</u> EXCEPT AS PROVIDED BY THE RULES AND THE UNLOCK AGREEMENT,

ARBITRATION SHALL BE THE SOLE, EXCLUSIVE AND FINAL REMEDY FOR ANY DISPUTE BETWEEN THE OWNER AND BENEFICIARY. REMEDIES THAT WOULD OTHERWISE BE AVAILABLE TO OWNER UNDER APPLICABLE FEDERAL, STATE OR LOCAL LAWS SHALL REMAIN AVAILABLE. THE ARBITRATOR WILL HAVE NO AUTHORITY TO AWARD PUNITIVE DAMAGES OR CONSEQUENTIAL DAMAGES. ACCORDINGLY, EXCEPT AS PROVIDED FOR BY THE RULES AND THE UNLOCK AGREEMENT, NEITHER THE OWNER NOR BENEFICIARY WILL BE PERMITTED TO PURSUE COURT ACTION REGARDING CLAIMS THAT ARE SUBJECT TO ARBITRATION.

20.5 Availability of Injunctive Relief. BOTH PARTIES AGREE THAT ANY PARTY MAY PETITION A COURT FOR INJUNCTIVE RELIEF AS PERMITTED BY THE RULES INCLUDING, BUT NOT LIMITED TO, IF BENEFICIARY ALLEGES OR CLAIMS A BREACH OF THE UNLOCK AGREEMENT WHERE THE VALUE OF THE PROPERTY OR THE SETTLEMENT PAYMENT IS AT A RISK OF MATERIAL LOSS. BOTH PARTIES UNDERSTAND THAT ANY SUCH BREACH OR THREATENED BREACH OF THE UNLOCK AGREEMENT WILL CAUSE IRREPARABLE INJURY AND THAT MONEY DAMAGES WILL NOT PROVIDE AN ADEQUATE REMEDY THEREFOR AND BOTH PARTIES HEREBY CONSENT TO THE ISSUANCE OF AN INJUNCTION. IN THE EVENT EITHER PARTY SEEKS INJUNCTIVE RELIEF, THE PREVAILING PARTY SHALL BE ENTITLED TO RECOVER REASONABLE COSTS AND ATTORNEYS' FEES.

20.6 Small Claims Court. NOTWITHSTANDING THE ARBITRATION AGREEMENT ABOVE, BOTH PARTIES AGREE THAT ANY PARTY MAY SEEK REMEDIES IN SMALL CLAIMS COURT FOR DISPUTES OR CLAIMS WITHIN THE SCOPE OF SUCH COURT'S JURISDICTION, PROVIDED THE COURT'S REQUIREMENTS ARE SATISFIED.

20.7 Class Action Waiver. ARBITRATION MUST BE ON AN INDIVIDUAL BASIS. THIS MEANS NEITHER YOU NOR UNLOCK MAY JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER INDIVIDUALS OR LITIGATE IN COURT OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS.

**21. Miscellaneous.**

21.1 Multiple Owners. If You are more than one individual:

(a) The Unlock Agreement must be signed by each of You;

(b) All of You are jointly and severally liable for liabilities and obligations under the Unlock Agreement;

(c) Notice required to be given to You is adequate if given to any of You; and

(d) Unlock may treat any notice received from any one of You as notice from all of You.

21.2 Revocable Trusts. If You are the trustee of a Revocable Trust:

(a) All trustees and all trustors must be disclosed in writing to Unlock prior to the Effective Date and must sign the Unlock Agreement;

(b) All rights and powers specified for, and all actions required of, You in the Unlock Agreement that are exercised by a trustee are deemed approved and exercised by all trustees unanimously;

(c) All trustees and all trustors, in their capacities as individuals, are jointly and severally liable with You for Your liabilities and obligations under the Unlock Agreement;

(d) All representations and warranties by You in the Unlock Agreement are made by all trustees on behalf of the Revocable Trust and by all trustees and all trustors in their capacities as individuals;

(e) Notice required to be given to You is adequate if given to any of the trustees;

(f) Unlock may treat any notice received from any trustee as notice from all trustees and from You.

21.3 Notices.

21.3.1. You will immediately provide Unlock with written notice of any event that may have a material effect upon the Property, the value of the Property, or Unlock's rights, including but not limited to (i) the death or divorce of any Owner; (ii) the death or removal of any Trustee or Trustor, as well as the appointment of any substitute or additional Trustee or Trustor; (iii) environmental matters affecting the Property; (iv) the commencement of any legal action involving the Property, or (v) the occurrence of an Event Of Default.

21.3.2. All required notices must be in writing and will be considered given when delivered (i) personally, (ii) to the mailing address set forth in the attached Exhibit C by overnight delivery by a nationally recognized courier service, or (iii) by email to the email address specified for You or Unlock, as applicable, set forth in Exhibit C.

21.3.3. The following notices are deemed not given by You (or Your Estate) to Unlock until Unlock makes written confirmation of receipt to You: notices of default and notices of sale in connection with secured liens on the Property; notices of delinquency in tax or insurance payments on the Property; notices of Your death; and notices of the commencement of legal or other action concerning the Property, or of Your bankruptcy proceedings.

21.3.4. During the term, You and Unlock will each provide the other with prompt notice regarding any changes to Exhibit C. Notice to You shall also be effective when delivered to any other individual whom You have designated in writing to Unlock as authorized to receive notices under the Unlock Agreement.

21.4 Unpaid Owner Obligations. Unpaid Owner Obligations, in total, are the sum of (i) any

unreimbursed Protective Advances plus any associated unpaid interest, fees and other charges; (ii) any unpaid Administration Fees; (iii) any Deferred Fees; (iv) any unpaid Appraisal Expenses and Inspection Expenses; and (v) any other amounts expended by Unlock to protect its rights or the value of the Property in an Event Of Default.

21.5 Not A Loan. Unlock and Owner agree that the Unlock Agreement and the transaction contemplated thereunder, including payment of the Investment Payment and the sale of the Unlock Percentage, is not a loan or extension of credit. Owner does not have an obligation to repay the Investment Payment, and there are not any required periodic payments of principal, interest or any other finance charges. As set forth herein, Unlock may lose all or a portion of the Investment Payment. The Security Instrument secures Owner's performance and obligations under the Unlock Agreement and not in connection with a promissory note, loan or extension of credit. The Annualized Cost Limit is not an annual percentage rate limit, but rather a limit on Unlock's investment return. To the fullest extent possible, Unlock and Owner agree that the Unlock Agreement is not subject to any federal, state and/or local law concerning consumer credit, including, without limitation, usury ceilings, disclosures, and any other requirements, restrictions, limitations or prohibitions set forth in such laws.

21.6 Tax Benefits. Unlock is not entitled to any tax advantages that You benefit from relating to the Property, including, without limitation, all available deductions for taxes and mortgage interest paid by You.

21.7 Voluntary Release by Unlock. Unlock may voluntarily rescind its rights under the Unlock Agreement in writing at any time, in which case Unlock will affect a full release of the Unlock Agreement, and You may keep the Investment Payment and have no further obligation to Unlock.

21.8 Release of Security Instrument. The Exchange Agreement shall remain in full force and effect subject to the terms and conditions herein in the event Unlock voluntarily releases the Security Instrument on the Owner's Property.

21.9 Successors and Assignees.

21.9.1. Unlock may assign, participate, hypothecate, securitize or sell, in whole or in part, the Unlock Percentage and/or Unlock's right and title to, and interest in the Unlock Agreement at any time and to any person or entity without prior notice to, or consent of, Owner. In connection with any such transaction, Owner agrees and consents that Unlock may in its discretion disclose any and all documents and information in its possession relating to Owner and the Property, including without limitation, "return information" information as such term is defined under the Internal Revenue Code (Title 26 of the United State Code), such as tax transcripts, subject to its assignee's agreement to continue to observe Unlock's policies regarding privacy and disclosure of personal and financial information and applicable privacy laws. Upon such assignment, Unlock's assignee, such other future assignee, shall automatically have all the rights and remedies of Unlock under the Unlock Agreement. Unlock and Owner shall execute and deliver in recordable form, if requested, at Unlock's expense, such other documents as are appropriate to reflect the assignment of the Unlock Agreement. Owner

agrees to cooperate with such assignee and execute such additional documents as may be necessary to ensure assignee's interest in the Unlock Agreement. Unlock, or its successors and assigns, shall notify Owner no later than 60 days after the effective date of any such assignment.

21.9.2. Absent Unlock's prior written consent, which consent may be withheld in Unlock's discretion, Owner may not assign or otherwise transfer the Unlock Agreement. In the event of an assignment of the Unlock Agreement pursuant to this paragraph the original Owner, jointly and severally with the additional Owner, shall continue to remain liable under the Unlock Agreement, and such assignment will not trigger a Settlement Event. You shall be liable for all costs and expense incurred by Unlock related to such assignment.

21.9.3. The Unlock Agreement shall be binding upon and insure to the benefit of Owner and Unlock and their respective heirs, successors and assignees. If Owner dies, then the Unlock Agreement shall be binding on Owner's estate. The death of Owner shall not terminate the Unlock Agreement. Nothing in this provision shall permit assignment by Owner or Owner's estate of the Unlock Agreement contrary to the express provisions of the Unlock Agreement.

21.10 Right to Obtain or Disclose Certain Information. Subject to applicable laws, Unlock may obtain certain personal and financial information as necessary to maintain the Unlock Agreement, including Your credit report histories, or current balances and payoff amounts of loans secured by the Property. Subject to applicable laws, Unlock may share certain personal and financial information about the Unlock Agreement with affiliates, subsidiaries, investors, assignees and those with which it intends to conduct business. This information includes, without limitation, the address and general location of the Property, Property Appraisal reports and other valuations of the Property, and the financial terms of the Unlock Agreement.

21.11 Covenants to Run with Land. The provisions of the Unlock Agreement are deemed to be covenants running with the land as reflected in the Security Instrument. The interpretation of the phrase "covenants running with the land" shall be within the meaning of the applicable law of the state where the Property is located so as to give it the broadest possible application.

21.12 Indemnification. You hereby agree to indemnify, defend and hold Unlock, its affiliates and their respective directors, officers, agents and employees harmless from, and against, any and all claims, damages, liabilities, actions and expenses (including, without limitation, attorneys' fees and costs) (collectively "Losses") arising out of or relating to: (i) a breach of any of Your covenants, representations or warranties under the Unlock Agreement; (ii) any act or omission by You or Your agents; (iii) the Property; or (iv) the use of electronic or digital signatures and electronic methods of submission with respect to this Unlock Agreement and any documents or notices delivered pursuant to this Unlock Agreement or the related documents, including the risk of Unlock acting on unauthorized instructions, and the risk of interception and misuse by third parties. You will not, without Unlock's prior written consent, which shall not be unreasonably withheld, settle or compromise any claim, action or proceeding or consent to the entry of any judgment regarding which indemnification is owed to Unlock. The indemnification provided by You herein shall be with respect to Losses involving third

parties and Losses between You and Unlock. Without limiting Your indemnification obligation, in no event will Unlock's aggregate liability arising out of or related to the Unlock Agreement or the Property exceed the Investment Payment.

21.13 Delegation of Duties. Unlock may execute any of its duties under the Unlock Agreement by or through agents. Unlock is entitled to advice of counsel concerning all matters pertaining to such duties and any actions taken on the basis of advice from counsel will be deemed to have been taken in good faith. Unlock will not be responsible for the negligence or misconduct of any agent that Unlock selects.

21.14 Relationship. Unlock shall not be deemed a partner, joint venturer, trustee, agent, representative, lender or fiduciary with, or of, You. You expressly waive any claims against any of Unlock's agents, assignees, affiliates, employees, directors or funding sources.

21.15 Applicable Law and Venue. The Agreement will be governed by the law of the state in which the Property is located. Any lawsuit or arbitration arising directly or indirectly out of the Agreement will be contested in the venue where the Property is located. EACH PARTY IRREVOCABLY APPOINTS THE INDIVIDUAL(S) IDENTIFIED IN ON EXHIBIT C TO RECEIVE NOTICES ON ITS/HIS/HER BEHALF, AS ITS AGENT FOR SERVICE OF ALL PROCESS IN ANY ARBITRATION OR LAWSUIT, WITH REGISTERED MAIL SERVICE AGREED TO BE BINDING IN EVERY RESPECT. NOTHING HEREIN SHALL AFFECT THE RIGHT TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW.

21.16 Waiver of Jury Trial. YOU AND UNLOCK HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVE ANY AND ALL RIGHTS EACH MAY HAVE TO A TRIAL BY JURY IN ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THE UNLOCK AGREEMENT, OR ANY OTHER DOCUMENTS AND INSTRUMENTS EXECUTED IN CONNECTION HEREWITH.

21.17 Further Assurances. The parties agree to correct any error or inaccuracy in the Unlock Agreement to ensure that such documents reflect the true and correct terms upon which the parties agreed to enter into and to replace any missing or misplaced documentation, to confirm and restate any authorities granted hereunder to the extent such authority is impacted by a change in any law, rule or regulation, and to execute and deliver any instruments and take any action reasonably necessary or desirable in order to implement the provisions and otherwise to affect the intent and purposes of the Unlock Agreement.

21.18 Severability. Each provision of the Unlock Agreement must be interpreted in a way that is valid under applicable law. If any provision is held invalid or unenforceable, such adjudication shall not affect, impair, invalidate, or nullify the remainder of the Unlock Agreement, but shall only affect that provision.

21.19 Waivers. A waiver by Unlock of a breach of any term in the Unlock Agreement by You will

not be considered (i) waiver of a further breach of the same term, or (ii) a waiver of a breach of any other term, or (iii) a waiver of Unlock's right to declare an immediate or subsequent default.

21.20 No Third-Party Beneficiaries. The Unlock Agreement is entered into for the protection and benefit of Unlock and Owner and their respective successors and permitted assigns. No other Person will have any rights, remedies or recourse under the Unlock Agreement.

21.21 Consent of Spouse/Domestic Partner. If You are married or in a civil union or registered domestic partnership on the date of the Unlock Agreement and Your spouse or domestic partner, as applicable, is not named on the title to the Property and does not have an interest in the Property under applicable law, Unlock may require Your spouse or domestic partner, as applicable, to execute and deliver to us a Consent of Spouse/Domestic Partner in the form of the attached Exhibit D. If You should marry or remarry or enter into a civil union or registered domestic partnership after the Effective Date, within thirty (30) days after the marriage, civil union, or domestic partnership, as applicable, You and Your spouse or domestic partner, as applicable, must execute and deliver a Consent of Spouse/Domestic Partner, except if that individual is added on the title to the Property or otherwise has an interest in the Property under applicable law, in which case he/she must execute, acknowledge and deliver the Unlock Agreement and all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Unlock may reasonably require (and fully cooperate, or procure cooperation with, all filings and recordings as Unlock may reasonably require) in each case to protect its rights and interest under the Unlock Agreement including, without limitation, Unlock's interest in the Property. If Your spouse or domestic partner does not execute the Unlock Agreement within the thirty (30) days after the marriage, civil union, or domestic partnership, or such other time period as mutually agreed upon in writing between You and Unlock, Your death, rather than the later of Your death or Your spouse's or domestic partner's death, shall be deemed a Settlement Event in accordance with Sections 1.8.2 and 4.

21.22 Subordination of Homestead and Waivers. If You have acquired or acquire in the future an estate of homestead in the Property, you agree, to the greatest extent permitted by applicable law, that such homestead estate is subject to all of our rights under and subordinated in all respects to the Security Instrument and Exchange Agreement, and any amounts due under the Unlock Agreement, and to all extensions and modifications of the Unlock Agreement.

21.23 Injunction. Notwithstanding anything to the contrary in the Unlock Agreement or otherwise, if Unlock is stayed or enjoined from enforcing any of its rights under the Unlock Agreement, then any deadline or notice period prescribed in the Unlock Agreement is automatically stayed for the duration of such stay, injunction or legal prohibition.

21.24 Entire Agreement. The Unlock Agreement and its Exhibits and attachments and any other documents executed at the Closing contain the entire understanding between the parties.

21.25 Titles. Titles are inserted in the Unlock Agreement for reference purposes only and must not be used to interpret the Unlock Agreement.

21.26 Counterparts. The Unlock Agreement and its attachments may be executed in counterparts, each of which shall be deemed an original, but all of which together constitute one and the same Unlock Agreement. You and Unlock intend that faxed signatures and electronically imaged signatures such as .pdf files shall constitute original signatures and are binding on all parties. You and Unlock further agree that the Unlock Agreement and any other documents to be delivered in connection herewith may be electronically signed using any electronic process or digital signature provider as specified in writing by Unlock to You, and that any electronic signatures appearing on the Unlock Agreement or such other documents are the same as handwritten signatures for the purposes of validity, enforceability and admissibility.

21.27 Survival. The indemnification provisions, obligations to pay any Unpaid Owner Obligations, obligations to pay Closing Costs, all covenants, representations and warranties of You, and all other provisions which are required by their terms to be enforceable following expiration or termination, including, without limitation, provisions prescribing monetary remedies, fees, costs and expenses owed by You in connection with any Event Of Default or any Offered Value as described in Section 3.1(d) or Section 6.6 will, in each case, survive for three years after the end of the Unlock Agreement.

## *Washington Appendix*

1. Real Estate Excise Tax (RCW 82.45). In the event that any Conversion is deemed to be subject to Washington State real estate excise tax or use tax (collectively, "Transfer Tax"), Owner shall be solely responsible for all Transfer Tax due and shall cooperate with Unlock in the preparation, execution and delivery to all appropriate taxing authorities of any tax returns or affidavits that are required to be prepared in connection with the Conversion and remittance of the appropriate Transfer Tax. Unlock and Owner further agree that, in connection with any Conversion, Unlock does not assume any liability for, and express disclaims, any obligation to pay any mortgage indebtedness on the Property. Notwithstanding the foregoing, Unlock may, in its sole discretion, advance funds necessary to pay the Transfer Tax on Owner's behalf and any such advance shall be added to the Unpaid Owner Obligations.

2. Liquidated Damages. If as a result of Owner's breach of any provision of the Unlock Agreement Unlock elects to exercise the power of sale and foreclose on the Property pursuant to the Unlock Agreement, Unlock may at its option declare any and all Liquidated Damages as Unlock's sole and exclusive remedy and relief under the Unlock Agreement, where "Liquidated Damages" is calculated as an amount equal to the sum of (i) the Settlement Payment as calculated pursuant to the Unlock Agreement , (ii) in connection with Owner's failure to make any monetary payment, the sum of all monetary obligations owed to Unlock by You under the Unlock Agreement, and (iii) any and all amounts, properly chargeable to Owner as necessary to satisfy Owner's obligations under the Unlock Agreement with respect to Owner's mortgage, tax and insurance obligations on the Property, including late fees, reinstatement fees and other amounts. UNLOCK AND OWNER ACKNOWLEDGE THAT THE ACTUAL DAMAGES TO UNLOCK WHICH WOULD RESULT FROM OWNER'S BREACH OF ANY PROVISION OF THE UNLOCK AGREEMENT WOULD BE EXTREMELY DIFFICULT TO CALCULATE OR ESTABLISH ON THE DATE OF THE UNLOCK AGREEMENT. IN ADDITION, OWNER DESIRES TO HAVE A LIMITATION PUT UPON OWNER'S POTENTIAL LIABILITY TO UNLOCK IN THE EVENT OF SUCH BREACH BY OWNER. BY PLACING THEIR INITIALS IN SPACES HEREINAFTER PROVIDED, UNLOCK AND OWNER SPECIFICALLY ACKNOWLEDGE AND AGREE, AFTER NEGOTIATION BETWEEN UNLOCK AND OWNER, THAT THE AMOUNT OF THE LIQUIDATED DAMAGES CONSTITUTES REASONABLE COMPENSATION TO UNLOCK FOR SUCH BREACH BY OWNER AND SHALL BE DISBURSED TO AND RETAINED BY UNLOCK AS LIQUIDATED DAMAGES IN THE EVENT OF SUCH BREACH BY OWNER. THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY.

**Initials of Owner:** ________________

**Initials of Unlock:** ________________

BY INITIALING BELOW, OWNER EXPRESSLY (A) WAIVES ANY RIGHTS IT MAY HAVE UNDER ANY APPLICABLE LAW TO TERMINATE AND REPURCHASE THE UNLOCK AGREEMENT, WITHOUT ANY FEE OR PENALTY, UPON ANY SUCH TERMINATION AND REPURCHASE OF THE UNLOCK AGREEMENT, AND (B) AGREES THAT IF, FOR ANY REASON, ANY TERMINATION AND REPURCHASE OF THE UNLOCK AGREEMENT IS MADE OR THE SETTLEMENT PAYMENT IS OTHERWISE DUE AND OWING, THEN OWNER SHALL BE OBLIGATED TO PAY UNLOCK THE CALCULATED SETTLEMENT PAYMENT AND OWNER AGREES THAT UNLOCK'S PAYMENT OF THE INVESTMENT PAYMENT SET FORTH IN THE UNLOCK AGREEMENT CONSTITUTES ADEQUATE CONSIDERATION FOR THIS WAIVER AND AGREEMENT.

**Initials of Owner:** ________________

[Unlock Exchange Agreement signature page]

**READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. ENFORCEMENT OF THE TERMS OF THE UNLOCK AGREEMENT MAY RESULT IN THE SALE AND LOSS OF YOUR PROPERTY. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH UNLOCK AND/OR UNLOCK'S AGENT(S), INCLUDING ALL CORRESPONDENCE, OFFER LETTERS, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THE UNLOCK AGREEMENT, AS APPLICABLE.**

IN WITNESS WHEREOF, intending to be legally bound, the parties have executed this Unlock Forward Sale and Exchange Agreement as of the Effective Date.

**UNLOCK PARTNERSHIP SOLUTIONS INC.:**

By: _________________

Title: _________________

Date: _________________

**Owner:**

By: _________________

Name:

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF WASHINGTON )

COUNTY OF ____________________ ) SS.

)

I certify that I know or have satisfactory evidence that _________________________________, is the person who appeared before me, and said person acknowledged that he or she signed this instrument and acknowledged to be the free and voluntary act and deed of such individual, for the uses and purposes mentioned in the instrument.

WITNESS my hand and official seal hereto affixed on _________________, ____________.

________________________________________
(Signature of Notary)

________________________________________
(Print or stamp name of Notary)
My Appointment Expires:
______________________

# EXHIBIT A

## PROPERTY DESCRIPTION

{{full_legal_description}}

**Parcel ID / APN:** {{parcel_number}}

[End of legal description]

# EXHIBIT B

## UNLOCK CONVERSION AGREEMENT

This Unlock Conversion Agreement ("Agreement") is made between the homeowner(s) set forth on the signature page attached hereto under the heading of "Owner" ("Owner" or "You" or "Your") and Unlock Partnership Solutions Inc., a Delaware corporation, with its principal offices at 270 Madison Ave, Suite 702, New York, NY 10016, and its successors and assigns ("Unlock"), as of [Conversion Agreement Effective Date] ("Conversion Effective Date").

WHEREAS, You and Unlock entered into that certain Forward Sale and Exchange Agreement dated and effective as of {{effective_date}} ("Exchange Agreement"), secured by Your property located at {{property_address}}, {{city}}, {{state}} {{zip}} and any improvements thereon ("Property"), whereby you sold, transferred and conveyed to Unlock the right to receive {{unlock_percentage}} percent ("Unlock Percentage") of the future value of the Property.

WHEREAS, under the Exchange Agreement Unlock has the right to elect to convert the Unlock Percentage to an undivided fee simple ownership percentage in the Property ("Conversion") equal to the Unlock Percentage, upon the occurrence of certain defined events, as set forth in the Exchange Agreement ("Settlement Event").

WHEREAS, a Settlement Event has occurred and Unlock has elected to exercise its right to a Conversion.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, You and Unlock agree as follows:

**1. Conversion Terms.**

(a) Unlock and You agree that the Unlock Percentage shall convert into an undivided fee simple ownership percentage in the Property, including the related oil, mineral and water rights if currently owned by Owner, equal to the Unlock Percentage ("Unlock Ownership Percentage").

(b) Within [x] days of the Conversion Effective Date, Unlock shall select an escrow agent in order to conduct the Conversion. Unlock shall provide the escrow agent with instructions for the Conversion closing. You and Unlock shall agree to a Conversion closing date not later than [x] days from the Effective Date ("Conversion Closing Date"). You agree to pay all fees, costs and charges in connection with completing the Conversion.

(c) You shall transfer and convey the Unlock Ownership Percentage to Unlock by executing a deed, the form of which is determined by Unlock, in accordance with applicable law. You agree to cooperate and execute all other documentation on or prior to the Conversion Closing Date which Unlock deems necessary to complete the Conversion.

(d) After the Conversion Closing Date and upon confirmation that Unlock's ownership has been recorded on title, Unlock will take the necessary steps to release its lien on the Property.

(e) On and after the Conversion Closing Date, You and Unlock will be co-owners of the Property, with the form of such co-ownership determined by Unlock.

Draft Do Not Sign

(f) Unlock agrees that You shall continue to have the right to remain in possession and reside in the Property until the Property is sold or transferred, as set forth in the Exchange Agreement. On and after the Conversion Effective Date, You shall not enter into a new lease, renew or extend an existing lease, or otherwise rent the Property, except in accordance with the terms and conditions of the Exchange Agreement.

(g) On and after the Conversion Effective Date, You agree that You shall remain responsible for all liabilities, costs, charges and any other amounts related to the ownership of the Property, including, without limitation, property taxes, assessments, maintenance and insurance. Unlock shall have no responsibility for payment of any of these items, and You agree that You shall not seek payment of such amounts by Unlock. You agree to defend, indemnify and hold Unlock harmless from all third-party claims directly or indirectly related in any way to such items. The indemnification provided by You herein shall be with respect to losses involving third parties and losses between You and the Unlock.

**2. Miscellaneous.**

(a) The Agreement will be governed by the law of the state in which the Property is located. Any lawsuit or arbitration arising directly or indirectly out of the Agreement will be contested in the venue where the Property is located.

(b) You understand that by entering into this Agreement you are transferring a portion of the ownership of Your Property to Unlock. You have consulted with your tax, legal, financial and estate planning advisors regarding the consequences of the Conversion.

(c) The Exchange Agreement and related Security Instrument shall remain in full force and effect in accordance with the terms and conditions thereof.

[SIGNATURE PAGE FOLLOWS]

Draft Do Not Sign

IN WITNESS WHEREOF, intending to be legally bound, the parties have executed this Unlock Conversion Agreement as of the Conversion Effective Date.

| **UNLOCK PARTNERSHIP SOLUTIONS INC.:** | **OWNER:** |
|---|---|
| By: ________________ | By: ________________ |
| Title: ________________ | Title: ________________ |
| Date: ________________ | Date: ________________ |

Draft Do Not Sign

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF WASHINGTON )

COUNTY OF ____________________ ) SS.

)

I certify that I know or have satisfactory evidence that _________________________________, is the person who appeared before me, and said person acknowledged that he or she signed this instrument and acknowledged to be the free and voluntary act and deed of such individual, for the uses and purposes mentioned in the instrument.

WITNESS my hand and official seal hereto affixed on _________________, ____________.

________________________________________
(Signature of Notary)

________________________________________
(Print or stamp name of Notary)
My Appointment Expires:
______________________

Draft Do Not Sign

## EXHIBIT C

## NOTICE ADDRESSES

Notice shall be effective when made in writing to the addresses below:

| **UNLOCK:** | **OWNER:** |
|---|---|
| Unlock Partnership Solutions Inc.<br><br>548 Market St, STE 31036<br>San Francisco, CA 94104<br><br>**Personal or Overnight Delivery**<br>Unlock Partnership Solutions Inc.<br>270 Madison Ave, Suite 702<br>New York, NY 10016<br><br>**Fax:** 844-916-4006<br><br>**Email:** support@unlock.com | {{owner 1}}<br><br>{{owner_conatact_address}}<br><br><br>{{city}}, {{state}} {{zip}}<br><br>**Email:** {{contact_email}} |

**EXHIBIT D**

**CONSENT OF SPOUSE/DOMESTIC PARTNER**

*None*, the spouse or registered domestic partner of Owner ("**Spouse**"), without assuming personal liability for the obligations under the Unlock Agreement, as an inducement to Unlock to enter into the Unlock Agreement, agrees to subject and subordinate Spouse's interest, whether arising as the result of being married to or the registered domestic partner of Owner or arising in any other manner, to the lien and security interest of the Unlock Agreement, and waives and releases all claims with respect thereto, including without limitation any claim for homestead exemption or allowance. Spouse agrees to the execution of the Unlock Agreement by Owner and agrees to be bound thereby to the extent of Spouse's interest in any assets or property of Owner and further agrees that the community assets of Owner and Spouse shall be bound thereby. This consent shall not be construed as an agreement by Spouse that Spouse's separate property is subject to the claims of Unlock arising out of enforcement of the Unlock Agreement.

**Spouse/Domestic Partner:**

By: ________________

Name: None

Date: ________________

Draft Do Not Sign

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
|---|

STATE OF WASHINGTON )

COUNTY OF ____________________ ) SS.

)

I certify that I know or have satisfactory evidence that _________________________________, is the person who appeared before me, and said person acknowledged that he or she signed this instrument and acknowledged to be the free and voluntary act and deed of such individual, for the uses and purposes mentioned in the instrument.

WITNESS my hand and official seal hereto affixed on _________________, ____________.

________________________________________
(Signature of Notary)

________________________________________
(Print or stamp name of Notary)
My Appointment Expires:
______________________

Draft Do Not Sign

# EXHIBIT E

## ADMINISTRATION FEE SCHEDULE

| | |
|---|---|
| **Processing changes to Title:** | **$300.00** |
| Addition or removal of **Unlock Agreement** signatory | |
| Other changes to Title including change of Title to Trust | |
| **Processing Protective Advances made by Unlock (per advance) due to:** | **$250.00** [1] |
| Non-payment of property insurance, property taxes, mortgage or other obligation | |
| Deferred maintenance | |
| **Processing Subordination Requests:** | **$300.00** |
| **Recording and Reconveyance (per document):** | **$75.00** |
| Release of lien | |
| Quitclaim deeds | |
| Other requested release documentation | |
| **Processing an Owner Buyout or Partial Buyout:** | **$500.00** |
| **Processing a Permitted Sale:** | **$500.00** |
| **Administering an Event Of Default** | **$500.00 - $3500.00 (estimated)** [2] |

In addition to the fees itemized above, other actual, necessary, bona fide, reasonable, out-of-pocket fees and costs, customary to the area, which are paid by Unlock to third parties (including persons and entities retained by Unlock) may be charged to Owner from time to time during the Term or upon a Settlement Event, including fees and costs related to title, legal, recording, and appraisal, whether incurred in connection with an Event Of Default, a Settlement Event, or otherwise.

The above listed fees are estimates based on the current costs of the service provided. These fees are subject to change as the costs of providing any such services change. If a fee has changed at the time Owner requests any one of the above services, a disclosure of the then-current charge will be provided to Owner. Please note that additional fees for expediting requests may apply.

---

[1] Plus interest on amounts advanced, in accordance with the Unlock Agreement.

[2] The range of Administrative Fees and/or Protective Advances which may be charged by Unlock in connection with an Event Of Default is an estimate only, given the difficulty of actually predicting the cost. As a result, the actual amount of such Administrative Fees and/or Protective Advances may vary depending on the duration, and difficulty of resolution, of any given Event Of Default and may significantly exceed the estimate given here. Under no circumstances, however, shall Unlock charge any Administrative Fees or Protective Advances in connection with an Event Of Default unless they are customary, reasonable, bona fide and actually incurred. Interest may be charged on such Administrative Fees and/or Protective Advances, in accordance with the Unlock Agreement.

# EXHIBIT F

## GLOSSARY OF TERMS

Administration Fees are reasonable fees that may be charged to Owner by Unlock to perform various services during the Term, as described in Section 15.1.

Annualized Cost is the annualized percentage cost of the Investment Payment over the Term, as described in Section 10.

Annualized Cost Limit is a percentage cap on the Annualized Cost, as set forth in the Table of Key Terms and described in Section 10.

Approved Existing Loans are any pre-existing loans, as of the Effective Date, known to and approved by Unlock as described in Section 11.2.

Approved Subsequent Loans are loans secured by liens on the Property that are approved by Unlock and originated after the Effective Date, as described in Section 12.4.

Closing Costs are costs incurred in connection with the origination of the Unlock Agreement, any Permitted Sale or other sale of the Property, an Owner Buyout or a Partial Buyout, including, without limitation, recording fees and costs, credit reports, reconveyance fees, escrow fees, title report and insurance fees, federal, state, local and documentary transfer taxes, and real estate broker and other sales commissions.

Deferred Fees are Administration Fees for which Unlock elects, in its discretion, to defer payment until a later date, as described in Section 15.2.

Deferred Maintenance is any repair items, defects or conditions, or damage to the Property or its title which either existed as of the Effective Date or which occurred or developed during the Term, as described in Section 7.2.

Effective Date is the date of origination of the Unlock Agreement, as set forth in the Table of Key Terms.

Ending Home Value is the value of the Property at the time of a Settlement Event or Partial Buyout. It typically equals the Gross Sale Price if the home is being sold as described in Section 2.1(g). It is determined by a Property Appraisal if the home is not being sold as described in Section 8.5.

Escrow Agent is a title company or neutral third-party settlement agent, title agent or attorney closing firm reasonably acceptable to Unlock that closes or settles any transaction contemplated under the Unlock Agreement.

Event Of Default is a breach of the terms of the Unlock Agreement by Owner, as described in Section 16.

Exchange Rate is the price of the Unlock Agreement, as set forth in the Table of Key Terms.

Expiration Date is the date upon which the Unlock Agreement expires, as set forth in the Table of Key Terms. Reaching the Expiration Date is a Settlement Event, as described in Section 5.

Gross Sale Price is the gross price agreed upon by Owner and a new third-party buyer when the Property is being sold, as described in Section 2.1(g).

Improvement Adjustment is an adjustment to Ending Home Value that may be made so that Unlock does not share in any Property value attributable to Property improvements made by Owner during the Term, as described in Section 7.1.

Investment Payment is the gross cash payment paid by Unlock and received by Owner at origination, as set forth in the Table of Key Terms.

Investment Percentage is the Investment Payment expressed as a percentage of Starting Home Value, as set forth in the Table of Key Terms.

Last Surviving Signatory is the last surviving individual who is a signatory to the Unlock Agreement, including any signatory added by addendum after the Effective Date. The death of the Last Surviving Signatory is a Settlement Event, as described in Section 4.

Maintenance Addendum is an addendum to the Exchange Agreement (see Exhibit G) whereby Unlock reserves for a Maintenance Adjustment certain Deferred Maintenance items identified as of the Effective Date, as described in Section 7.2.

Maintenance Adjustment is an adjustment to Ending Home Value that may be made so that Unlock does not share in any loss in Property value attributable to Owner's failure to properly maintain the Property during the Term, as described in Section 7.2.

Maximum Unlock Share is the greatest amount the Unlock Share can be when determining the Settlement Payment or Partial Settlement Payment, as described in Section 10.

Net Closing Proceeds is the net amount you receive from the Unlock Agreement, as described in Section 1.5.2(c).

Non-Distressed Sale is a remedy to a foreclosure action by a mortgage lender, tax authority or other lien holder that Unlock, in its discretion, may offer to Owner. It is intended to result in a non-distressed sale of the Property and protect Owner's and Unlock's interest therein, as described in Section 17.8.

Non-Owner Occupants are residents of legal age who occupy the Property but who are not signatories to the Unlock Agreement, as described in Section 11.9.

Offered Value is the gross amount of any pending written offer for the purchase of the Property, as described in Sections 3.1(d) and 6.6.

Origination Fee is a fee charged to Owner by Unlock at closing to offset some of the processing and administrative costs of the Unlock Agreement, as set forth in the Table of Key Terms.

Owner Buyout is a Settlement Event in which Owner chooses to buy Unlock out in accordance with the provisions of Section 3.

Partial Buyout is similar to an Owner Buyout in which Owner may choose to buy out only a portion of the Unlock Agreement, as described in Section 6.

Partial Settlement Payment is the payment Unlock will receive from a Partial Buyout as described in Section 6.4.

Partial Unlock Share is the portion of the Unlock Share Owner may choose to buy out in a Partial Buyout as described in Section 6.4.

Permitted Encumbrances are all licenses, easements, or other title restrictions to the Property that are approved by Unlock, as described in Section 11.2.

Permitted Sale is a Settlement Event in which Owner sells the Property in accordance with the provisions of Section 2.

Property Appraisal is an independent determination of Property value as described in Section 8.

Property Inspection is an independent determination of Property condition as described in Section 9.

Protective Advances are payments made or expenses incurred by Unlock on Owner's behalf to protect the value of the Property, as described in Section 17.12.

Secured Obligation is an obligation secured by a lien on the Property, as described in Section 11.3.

Settlement Date is the date the Unlock Agreement is terminated and settled in accordance with the Unlock Agreement.

Settlement Event is an event which leads to the termination and settlement of the Unlock Agreement, as described in Section 1.8.2.

Settlement Payment is the payment Unlock will receive from a Settlement Event, as described in Section 1.8.1.

Settlement Statement is s statement provided by Unlock to You (or Your Estate) and Escrow Agent in connection with a Settlement Event.

Sharable Value is the adjusted Ending Home Value used to calculate the Unlock Share, as described in section 1.8.1.

Starting Home Value is the value of the Property determined by Unlock and agreed to by Owner as of the Effective Date, as set forth in the Table of Key Terms.

Term is the period of time between the Effective Date and the Settlement Date.

Total Home Finance is the total amount of financing that is secured by the Property during the Term, as described in Section 12.1.

Total Home Finance Limit is the percentage limit on the amount of financing that can be secured by the

Property, as set forth in the Table of Key Terms, described in Section 12 and subject to adjustment as provided in Section 14.8.

Unlock Percentage is the percentage of the home's future value that Unlock will share, as set forth in the Table of Key Terms.

Unlock Share is the dollar amount of Unlock's percentage share of the Sharable Value to be received from a Settlement Event, as described in section 1.8.1.

Unpaid Owner Obligations are the total of any unpaid Administration Fees, Deferred Fees, Protective Advances (and any associated interest or other charges), Appraisal Expenses, Inspection Expenses and other amounts expended by Unlock to protect its rights or the value of the Property, as described in Section 21.4.

Your Estate is the person or persons who will acquire legal title to Your interest in the Property on account of your death as described in Section 4. Depending on the terms of Your estate plan or if You do not have an estate plan, Your estate may include but is not limited to the executor(s), administrator(s) or personal representative(s) of Your estate, if Your interest in the Property will pass to such executor(s), administrator(s) or personal representative(s) on account of Your death, or the successor trustee(s) of Your revocable living trust if Your interest in the Property will pass pursuant to Your revocable living trust to such successor trustee(s) on account of Your death, or the person who is a beneficiary under a revocable transfer on death deed or its equivalent under applicable state law if Your interest in the Property will pass to such beneficiary on account of Your death.

## EXHIBIT G

## MAINTENANCE ADDENDUM TO UNLOCK AGREEMENT

Reference is made to that certain Unlock Agreement by and between (“Owner”) and [Unlock], its successors and assigns (“Unlock”) in connection with the Property. Capitalized terms used herein are defined in the Unlock Agreement.

Section 7.2 of the Unlock Agreement provides for Unlock to identify, as of the Effective Date, on a Maintenance Addendum to the Unlock Agreement, certain repair items, defects or conditions on the Property (Deferred Maintenance), and expressly reserve such Deferred Maintenance items for application by Unlock of a Maintenance Adjustment in connection with the determination of the Sharable Value and the Unlock Share at the time of a Settlement Event, Partial Buyout or Event Of Default.

The following Deferred Maintenance items are so identified and reserved:

[maintenance items]

If the Deferred Maintenance items listed above have not been fully corrected or repaired by Owner at the time of any determination of the Sharable Value and the Unlock Share, Unlock will have the right under the Unlock Agreement to make, in consultation with one or more independent, third-party appraisers, property inspectors, home repair contractors and other experts not unaffiliated with Unlock, a commercially reasonable estimate of the dollar amount which is required, at that time, to repair such Deferred Maintenance, without reference to any repair estimates that may have been obtained by Owner, and to apply such dollar amount as a “Maintenance Adjustment” to Ending Home Value when calculating the Sharable Value, the Unlock Share and the Settlement Amount.

Unlock will have no liability in connection with, or for Owner’s failure to cure, the Deferred Maintenance items listed above.

This Addendum may be executed in counterparts.

**UNLOCK PARTNERSHIP SOLUTIONS INC.:**

By: ________________

Title: ________________

Date: ________________

**OWNER:**

______________________

Name:

Draft Do Not Sign

# EXHIBIT D

unlock

# PAYOFF REQUEST STATEMENT

**DATE:** 4/21/2025
**HOMEOWNER:** Seungjae & Do Seong
**PROPERTY:** [redacted]

**AGREEMENT #:** [redacted]
**APN:** [redacted]
**CLOSING DATE:** 5/21/2025
**SETTLEMENT TYPE:** HOME SALE

Payoff funds must be sent through **WIRE** and reference the Agreement # and Homeowner Name in the OBI (Originator Beneficiary Information). Failure to do so may cause delays resulting in additional fees due or the return of funds to the remitter. Funds received after 2:00 PM Pacific Time may be posted the following business day.

| Settlement Terms | | Explanation |
|---|---|---|
| **Ending Home Value** | 1,140,000 | The value of the property determined by a Home Sale. |
| **Improvement Adjustment** | 0 | We do not share in the value created by improvements you make. |
| **Maintenance Adjustment** | 0 | We do not share in the value lost if you do not maintain your property. |
| **Sharable Value** | 1,140,000 | *Sharable Value = Ending Home Value - Improvement Adjustment + Maintenance Adjustment* |
| **Term Days** | 995 | The exact number of days that passed between the Effective Date and the Settlement Date. |
| **Maximum Unlock Share** | 320,324.89 | *Maximum Unlock Share = Investment Payment X (1 + Annualized Cost Limit) ^ (Term Days / 365)* |
| **Unlock Share** (uncapped) | 321,049.08 | *Unlock Share = Sharable Value X Unlock Percentage* |
| **Unlock Share** | **$320,324.89** | *Unlock Share subject to the Maximum Unlock Share cap* |

| Settlement Payment | |
|---|---|
| **Unlock Share** | $320,324.89 |
| **Settlement Costs** | $575.00 |
| **Other Expenses** | $0.00 |
| **Unpaid Owner Obligations** | $0.00 |
| **Credits** | $0.00 |
| **Net Settlement Payment (5/21/2025)** | **$320,899.89** |

*See page 2 for additional information on costs, expenses, obligations and credits.*
*Payoff Request Statement is void after 5/21/2025.*

| Investment Terms | |
|---|---|
| **Effective Date** | 8/30/2022 |
| **Starting Home Value** | $1,150,000 |
| **Investment Payment** | $190,509 |
| **Investment Percentage** | 16.57% |
| **Exchange Rate** | 1.70x |
| **Unlock Percentage** | 28.16% |
| **Annualized Cost Limit** | 21.00% |
| **Origination Fee** | $5,715 |

| WIRING INSTRUCTIONS | |
|---|---|
| **Account Name** | Unlock Asset Management Inc |
| **Account Number** | [redacted] |
| **Routing Number** | 111017979 |
| **Bank Name** | Texas Capital Bank |
| **Bank Address** | 2000 McKinney Ave. Dallas, Texas 75201 |

*- Only Wire Transfers Accepted -*

**NOTES**

Upon receipt of correct Net Settlement Payment, Unlock will execute and record a release of corresponding Performance Deed of Trust or Performance Mortgage.

## Settlement Statement Details

| Settlement Costs | Homeowner Paid At Settlement | Homeowner Paid Before Settlement | Paid by Others |
|---|---|---|---|
| **A. Administration Fees** | **$575.00** | | |
| 01 Processing Permitted Sale | $500.00 | | |
| 02 Release of Lien | $75.00 | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| **B. Third-Party Transaction Expenses** | | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| 05 | | | |
| 06 | | | |
| 07 | | | |
| 08 | | | |
| **C. TOTAL SETTLEMENT COSTS (Homeowner Paid)** | **$575.00** | | |
| Settlement Costs Subtotals (A + B) | $575.00 | $0.00 | |

| Other Expenses | Homeowner Paid At Settlement | Homeowner Paid Before Settlement | Paid by Others |
|---|---|---|---|
| **D. Taxes and Other Government Fees** | **$0.00** | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| **E. Other** | **$0.00** | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| **F. TOTAL OTHER EXPENSES (Homeowner Paid)** | **$0.00** | | |
| Other Expenses Subtotals (D + E) | $0.00 | $0.00 | |

| Unpaid Owner Obligations | Homeowner Paid At Settlement | Homeowner Paid Before Settlement | Paid by Others |
|---|---|---|---|
| **G. Protective Advances** | **$0.00** | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| **H. Interest, Fees and Other Charges** | | | |
| 01 | | | |
| 02 | | | |
| 03 | | | |
| 04 | | | |
| **I. TOTAL UNPAID OWNER OBLIGATIONS (Homeowner Paid)** | **$0.00** | | |
| Unpaid Owner Obligations Subtotals (G + H) | $0.00 | $0.00 | |

| | |
|---|---|
| **J. CREDITS** | **$0.00** |

| | |
|---|---|
| **K. COSTS, EXPENSES, OBLIGATIONS AND CREDITS (C + F + I + J)** | **$575.00** |

# EXHIBIT E

unlock

# Product Guide



Unlock offers an innovative financial product that – not surprisingly – ***unlocks*** a portion of your home equity. The cash you receive from Unlock **is not a loan**, so you pay no interest and make no monthly payments to Unlock. In fact, there are no payments to us at all until you decide to sell your home – up to 10 years later. Instead, we share in a portion of your home's value when you sell.

So, if it's not a loan, what is it? We call it a Home Equity Agreement (HEA). It's a new and better way to access the home equity you worked so hard to build.

This Product Guide will help you learn about the Unlock HEA, to see if it might be right for you.

# Table Of Contents

unlock


1 INTRODUCTION

3 CHAPTER 1: THE FOUNDATION

7 CHAPTER 2: THE NUMBERS

15 CHAPTER 3: LIVING WITH YOUR UNLOCK HEA

19 CHAPTER 4: ENDING YOUR UNLOCK HEA

25 CHAPTER 5: ADDITIONAL DETAILS

31 APPENDIX


**The examples in this Product Guide are for the purpose of illustration only.**

The terms offered in a specific Unlock HEA may be materially different. The maximum length of the Unlock HEA is 10 years. Pricing and other important terms will vary. Your actual terms will be determined during the underwriting of your application based upon your property, your credit history and financial profile, and terms being offered at that time, and will always be disclosed to you in advance in writing.

Your receipt of this Product Guide is not a commitment by Unlock to enter into a transaction.


Unlock gives you the freedom to pay off debts or invest in your home, your children or your retirement.

# Introduction

## About Unlock

Unlock is an innovative consumer finance company on a mission to help homeowners unlock the value of their biggest asset, their home equity, and to dramatically improve their lives by doing so. The company was founded by respected real estate and finance veterans with deep experience in innovative consumer finance products.

We offer an innovative home finance solution, called a Home Equity Agreement (HEA). When your Unlock HEA closes, you'll receive a lump-sum cash payment. It's not a loan. You can use the money for the entire term without interest charges or monthly payments. In exchange for the cash, Unlock will receive a percentage of your home's value when you decide to sell or buy us out. The more cash we give you up front, the larger our future share will be. We're hoping that your home will rise in value and we'll both benefit from price appreciation. It's that simple.

Imagine paying off debts, doing home renovations, funding long term care insurance or paying for college, all without interest or monthly payments. And you decide when to settle up with us, up to 10 years later. Now that's financial flexibility!

Thank you for your interest. We look forward to assisting you with your home finance needs.

## Our Thoughts On Customer Education

We want you to have a full understanding of the terms and conditions of the Unlock HEA before making any decisions about it. Education is a key part of who we are as a company and it is a required step in our process.

This Product Guide is intended to explain the most important features of the HEA. You should also review the HEA legal documents as part of the process.

During the processing of your application, we will provide you with additional disclosures containing the key terms of your HEA. Your Unlock Home Equity Consultant will review those disclosures with you and answer all of your questions. You will complete our education process before indicating your intent to proceed.

You are urged to carefully review the Unlock HEA legal documents and other materials with your financial, tax and legal advisors, and family members. Your Home Equity Consultant will be happy to discuss the HEA with them as well, at your request.

**What's The Catch?**

We get this question all the time. People ask how we can offer homeowners money for up to 10 years with no monthly payments. Where does tbe money come from?

Put simply, there is no catch. The HEA is a new type of home finance that differs from a loan. Loans require borrowers to make monthly payments based on a specified interest rate. Loan investors find that attractive. HEAs allow homeowners to defer the cost of the financing until termination, and then share a percentage of the home's value at that time. HEA investors find that attractive.

What this means for you is immediate cash - without payments - until you decide to sell your home or buy us out.



# Chapter 1:
# The Foundation

The Unlock HEA is designed to put you, the homeowner, in control. You decide, within certain guidelines, how much cash you would like to receive from us. You use the cash without interest or payments. You own and manage your home the way you see fit. And you decide when and how your HEA will end.

In Chapter 1 we will introduce the key concepts and events that can occur over the life of an Unlock HEA.

## At The Start

At the start of the Unlock HEA, we invest in your home by making a cash payment to you. It's not a loan, and you can use the money for the entire term without interest charges or monthly payments. In exchange for the cash, Unlock will receive a percentage of your home's value when you decide to sell or buy us out.

It all begins with two simple questions: Do you and your home qualify? If so, how much cash can we give you?
To answer these questions, we'll need to know a few things:

- Your home's address and value
- The current balance of all existing mortgage debt on your home
- Some basic credit information
- Your occupancy status

| Qualifying & Determining Maximum Available Cash | | | | |
|---|---|---|---|---|
| Address | Home Value | Mortgage Debt | Basic Credit Info | Occupancy |
| Your home must be located in an area served by Unlock and must not be an atypical property | Higher value = more cash available<br>Lower value = less cash available<br>(limits may apply) | More debt = less cash available<br>Less debt = more cash available<br>(limits may apply) | Good credit = more cash available<br>Credit issues = less cash available<br>(limits may apply) | Primary residence = more cash available<br>Second home or rental home = less cash available |

We'll review your basic information against our guidelines and determine if your home is eligible and you qualify. If so, we'll also tell you approximately how much cash can be available from the Unlock HEA and how much of your home's future value you would share with Unlock in exchange for that cash payment.

Remember, you're in control. You can decide if you want to receive the maximum amount of cash available, or a smaller amount. The more cash you receive up front, the larger Unlock's percentage will be. The less cash you receive, the smaller Unlock's percentage will be.

Here's an example:

- Your home is your primary residence and its current value is estimated at $1,000,000.
- You have a credit score of 640 and a $530,000 balance remaining on your mortgage.
- We estimate that the maximum available cash is $200,000 (20% of your home's value). In exchange for providing that amount to you, we'd receive 32% of your home's future value when your HEA ends.
- You decide that you would like to receive half of that amount: $100,000, or 10% of your home's current value. That reduces Unlock's share of your home's future value by half, to 16%.
- We issue Preliminary Terms: you could receive $100,000 (10% of today's value) in exchange for 16% of your home's future value.

unlock

After receiving the Preliminary Terms, you will complete an application. We will verify your information and issue an Investment Estimate ("IE") containing detailed, but not final terms. Terms are still subject to obtaining independent, third-party reports for appraisal, title, and when needed, home inspection, so numbers can still change at this point.

We'll schedule a call to walk you through the IE and answer any questions and confirm your knowledge of the HEA. With your approval we will then obtain, at your expense, the required third-party reports, complete our underwriting and issue an Investment Closing Statement ("ICS") with final terms and costs. We'll also provide you with copies of the HEA legal documents. Upon your approval of the ICS we will schedule the closing.

Closing involves signing the Unlock HEA documents with a closing agent. To allow you additional time to consider your decision, we will not schedule your signing any sooner than three business days from the date you approve the Investment Closing Statement. You can cancel at any time before the signing by simply notifying us. Your HEA is effective as of the signing and you will typically receive funds one business day later.

The process from start to finish typically takes about 30 days, but it can go faster depending on how quickly you want to move and how long it takes to obtain the appraisal and inspection. Please note that obtaining an appraisal can sometimes take much longer than anticipated, which can result in the process taking longer. We don't typically have much control over appraisal turn times, just like mortgage lenders don't.

| | As Fast As 1-3 Days | | 10-14 Days | 3-5 Days |
|---|---|---|---|---|
| **Preliminary Terms** | **Application** | **Investment Estimate** | **Investment Closing Statement** | **Closing** |
| • Estimate of available cash<br>• Initial decision on desired amount | • Easy process<br>• Provide requested documentation | • Review detailed terms (not yet final)<br>• Call to confirm knowledge and intent to proceed | • Appraisal, title and inspection reports<br>• Review final terms<br>• Review legal docs<br>• Approve ICS | • Sign with closing agent after 3-day waiting period<br>• Receive cash 1 day later |

Unlock Partnership Solutions Inc.
270 Madison Avenue, Suite 702, New York, NY 10016

*Save a copy of this estimate for your records. Before closing, terms from this estimate may change.*

**Investment Estimate and Summary of Key Terms**

| | | | |
|---|---|---|---|
| **DATE ISSUED** | 1/1/2022 | **MAX TERM** | 10 years |
| **APPLICANTS** | Marty J McFly<br>515 Masonic Ave #3<br>San Francisco, CA 94117 | **PURPOSE** | Unlock Equity |
| | | **PRODUCT** | Home Equity Agreement (HEA) |
| | | **OCCUPANCY** | Principal residence |
| | | **HEA #** | 123-456-7890 |
| **PROPERTY** | 515 Masonic Ave #3<br>San Francisco, CA 94117 | | |

| | | Explanation |
|---|---|---|
| **Starting Home Value** | $831,500 | Estimated and subject to appraisal; may affect the Investment Percentage and Unlock Percentage if it changes. |
| **Investment Payment** | $100,000 | The gross amount of money you receive from Unlock's investment in your home. This is not a loan. No interest is charged on the Investment Payment and there are no monthly payments due. |
| **Investment Percentage** | 12.03% | Investment Payment as a % of Starting Home Value. |
| **Exchange Rate** | 1.60x | The price of your HEA; subject to underwriting. |
| **Unlock Percentage** | 19.24% | In exchange for an up front cash payment of 12.03% of your home's value, Unlock will receive 19.24% of the your home's value when the Unlock HEA ends. (12.03% X Exchange Rate of 1.60 = 19.24%) |
| **Annualized Cost Limit** | 17.00% | Maximum cost of your HEA per year from start to end, expressed as a percentage rate of investment return. |
| **Home Finance Limit** | 85.00% | Maximum amount of debt and equity financing secured by your home, expressed as a percentage of home value. |

*See page 3 of this document for additional information on investment terms*

*Here's a sample portion of an Investment Estimate ("IE"). It contains preliminary terms and is used as the basis for a review call with the homeowner to ensure full understanding of the HEA.*

## During

During the HEA term, you continue to own your home. Unlock is not a co-owner. You continue living in your home, and enjoy the benefits of ownership, including any tax benefits. You pay your mortgage, real estate taxes, property insurance and other housing obligations, including maintenance. You abide by the provisions of the HEA, including occupancy requirements and certain restrictions on additional borrowing secured by your home. Unlock will have a lien on the property to protect its investment until the HEA ends.

You manage your home as you see fit. Want to redecorate or remodel? Rent out the basement or post a rental room on Airbnb? No problem.

**Important Requirements That May Apply**

To help ensure an efficient closing of your Unlock HEA, please note these important requirements that may sometimes apply during the underwriting process:

- Depending on your circumstances, we may need your help in adding Unlock as a mortgagee and/or additional interest on your home insurance policy. This is typically not a difficult task.
- If you are legally married but your spouse does not co-own your home, your spouse will be required to sign a spousal consent form at the closing.

## At The End

At the end of the Unlock HEA, we will receive our percentage share of your home's value. Let's continue with the example from above.

- Your home's value at the start is $1,000,000, and Unlock provides you with $100,000 in exchange for 16% of your home's future value.
- You decide to sell your home ten years later, and it has increased in value by 20%, to $1,200,000.

When your sale closes, the payment to Unlock is $192,000, calculated simply as Unlock's percentage of the home's value at the time the HEA ends.

*$1,200,000 X 16% = $192,000*

You have great flexibility in deciding how to end your Unlock HEA, either by selling your home or buying us out, subject to the maximum term of 10 years. You can buy us out at any time during the term, without any penalty. With a buy out there is no sale price, so the ending home value is determined by appraisal and the calculation of the payment to Unlock is the same. You can even buy us out partially, subject to certain restrictions.

| AT THE START | DURING | AT THE END |
|---|---|---|
| • Decide on cash amount<br>• Complete application<br>• Review terms and legal docs, complete knowledge review<br>• Closing and funding | • Live in your home as you normally would<br>• Remain current on housing obligations<br>• Abide by HEA provisions | • Decide when to sell your home or buy Unlock out, subject to maximum term (10 years)<br>• Pay Unlock its percentage of your home's value |


There's finally a way
to unlock home equity
without additional
debt or monthly
payments.

# Chapter 2:
# The Numbers

Unlock's HEA was carefully designed to solve a big problem with a simple, widely available solution that is easy to understand. To do that we created an entirely new financial product based on a concept we call the Exchange Rate.

As you learn about the Unlock HEA it will be useful to get familiar with its terminology. Over the course of this chapter we will define the terms listed below. In the Product Guide, whenever a term is defined we will highlight it **in bold text**.

- Investment Payment
- Starting Home Value
- Investment Percentage
- Exchange Rate
- Unlock Percentage
- Origination Fee
- Ending Home Value
- Unlock Share
- Annualized Cost
- Annualized Cost Limit

## The Exchange Rate

The Exchange Rate establishes the price of your Unlock HEA*. We'll see how by defining a few terms and doing some simple calculations.

- **Investment Payment** is the amount of cash you receive from Unlock.
- **Starting Home Value** is the value of your home at the start, typically based on an appraisal or other third-party valuation report.
- **Investment Percentage** is the amount of cash you receive from Unlock expressed as a percentage of the Starting Home Value.
- **Exchange Rate** is the price of your Unlock HEA* (typically 1.6).
- **Unlock Percentage** is the portion of your home's future value that you will share with Unlock at the end.

If we assume an Investment Payment of $100,000 and a Starting Home Value of $1,000,000, the Investment Percentage will be 10%. If the Exchange Rate is 1.6, the Unlock Percentage will be 16%. Here are the simple calculations:

| Investment Payment | / | Starting Home Value | = | Investment Percentage | X | Exchange Rate | = | Unlock Percentage |
|---|---|---|---|---|---|---|---|---|
| *$100,000* | / | *$1,000,000* | = | *10%* | X | *1.6* | = | *16%* |

The Exchange Rate is the essence of the Unlock HEA, and we can boil it down to something really simple.

*Unlock gives you 10% of your home's current value in exchange for 16% of your home's future value.*

Note that the Exchange Rate is not always 1.6. It can vary depending on the situation. To the right are some Exchange Rate examples assuming a 10% Investment Percentage. Your Exchange Rate will be determined when we underwrite your application. See the Appendix for more information about the Exchange Rate.

| Situation | Exchange Rate | Investment Percentage | Unlock Percentage |
|---|---|---|---|
| Typical Pricing For Owner Occupied Homes | 1.6 | X 10% | = 16% |
| Typical Pricing For Rental Homes | 1.65 | | = 16.5% |
| Additional Risk | 1.7 | | = 17% |
| Higher Risk | 1.8 | | = 18% |

* Subject to the Annualized Cost Limit, which can also establish price, as we will see later in this chapter.

unlock

## Choosing Available Cash And Unlock Percentage

Depending on your circumstances (including home value, existing mortgage debt, occupancy status, credit score and other factors) and our guidelines, a maximum amount of cash will be available from the Unlock HEA. You can choose the amount of your Investment Percentage within that limit. Regardless of the Investment Percentage you choose, the Unlock Percentage is calculated the same way, as shown in the table.

There are also a few other guideline restrictions which can impact how much cash may be available:

- Maximum Investment Payment: $500,000
- Minimum Investment Payment: $30,000
- Maximum Starting Home Value: $3,000,000
- Minimum Starting Home Value: $175,000
- Maximum Unlock Percentage: 70%

Exceptions may be available. We do our best to be flexible.

## Upfront Expenses

As in most real estate transactions, with the Unlock HEA there are typical upfront third-party expenses, such as appraisal, inspection, title, escrow, credit and recording fees. You will either pay these directly or reimburse Unlock for any fees incurred by us on your behalf during the process. There is also an **Origination Fee** equal to 3% of the Investment Payment. This offsets a portion of the costs we incur to process and administer your HEA. The Origination Fee on a $100,000 investment is $3,000, and third-party expenses might add up to about $2,000, so net cash at closing might be approximately $95,000. More detail about upfront expenses is provided in the Appendix.

Unlock may pay referral sources for introducing customers. Any such payment will be disclosed to you, will be paid by Unlock, and will not impact the pricing or terms of your HEA.

| Choosing Terms That Are Right For You | | |
|---|---|---|
| Investment Percentage | Exchange Rate | Unlock Percentage |
| 5% | X 1.6 | = 8% |
| 10% | X 1.6 | = 16% |
| 20% | X 1.6 | = 32% |
| 43.75% | X 1.6 | = 70% |

If your Exchange Rate is 1.6, for every 1% of your home's value you receive from Unlock at the start, we will share in 1.6% of your home's future value when you choose to end the HEA.*

* Subject to the Annualized Cost Limit, which can also establish price, as we will see later in this chapter.

unlock

## Transaction Examples

In the next few sections we'll go into more detail about the calculations that apply when your Unlock HEA ends. The examples are based on the following assumptions:

- Starting Home Value is $600,000
- You choose an Investment Payment of $60,000, which is 10% of your home's value
- Your Exchange Rate is 1.6, so your Unlock Percentage is 16% (10% X 1.6)

Example 1 – Home Value Increases

Let's assume you decide to sell your home ten years later, and its value has increased by an average of about 3% per year, to $806,000. We call this the **Ending Home Value**. At closing, Unlock's share of the sale proceeds (called the **Unlock Share**) is calculated as:

*Ending Home Value X Unlock Percentage = Unlock Share*

*$806,000 X 16% = $128,960*

Example 2 – Home Value Decreases

Again we'll assume you sell ten years later, but this time your home's value has decreased by 10% to $540,000. The Unlock Share is calculated as:

*Ending Home Value X Unlock Percentage = Unlock Share*

*$540,000 X 16% = $86,400*

Example 3 – Home Value Unchanged

Here we'll assume you sell ten years later and your home's value is $600,000. The Unlock Share is calculated as:

*Ending Home Value X Unlock Percentage = Unlock Share*

*$600,000 X 16% = $96,000*

As a general principle, the higher the Ending Home Value the more the Unlock HEA costs, and the lower the Ending Home Value the less it costs.

## Cost Comparison: HEA Versus Loan

Our customers sometimes ask *"how much will my HEA cost and how does that compare to a loan?"* That's an interesting question. If we were asking about the cost of a home equity loan or line of credit, a simple answer might be *"my loan will cost me 6% per year"* and with a personal loan or credit card cash advance (and assuming sub-600 FICO) it might be *"my loan will cost me 22% per year."* **But the Unlock HEA is not a loan, so it has no interest rate.** So how do we answer the question?

Here's a solution: we can calculate an estimated **Annualized Cost** for the HEA, which is expressed as a rate of investment return that can be compared to the interest rate on a loan. We'll demonstrate this by referring back to Examples 1, 2 and 3 on the previous page and calculating the Annualized Cost for each.

| HEA Annualized Cost | | | | |
|---|---|---|---|---|
| | Cash Received From Unlock At The Start (Investment Payment) | Term Length | Cash Paid To Unlock At The End (Unlock Share) (see previous page) | Annualized Cost |
| Example 1 | $60,000 | Ten Years | $128,960 | 7.95% |
| Example 2 | | | $86,400 | 3.71% |
| Example 3 | | | $96,000 | 4.81% |

What is the table above telling us? In all three examples, you received $60,000 from Unlock at the start and the term length was ten years. In Example 1 you paid Unlock $128,960 at the end, so the money cost 7.95% per year over the ten-year period. In Example 2 you paid Unlock $86,400 at the end, so the money cost 3.71% per year over the ten-year period. In Example 3 you paid Unlock $96,000 at the end, so the money cost 4.81% per year over the ten-year period.

The Annualized Cost is the annual rate of investment return that grows the Investment Payment received at the start to the Unlock Share paid at the end, over the assumed term length. Here's a useful way to understand the concept. Imagine putting $60,000 into a savings account at a bank and leaving the money there for exactly ten years.

- If the savings account paid 7.95% annual interest, at the end of year ten you would have $128,960 (see Example 1).
- If the interest rate was 3.71%, at the end of year ten you would have $86,400 (see Example 2).
- If the interest rate was 4.81%, at the end of year ten you would have $96,000 (see Example 3).

At the start of the HEA we will know the exact Investment Payment amount, but we will not know the exact term length (years, months and days) or the exact amount of the Unlock Share to eventually be paid at the end (since it is based on future home value). Therefore, actual Annualized Cost cannot be calculated up front. But it can be estimated based on assumptions, as we show in our examples. In general, the larger the Unlock Share payable at the end, the higher the Annualized Cost, and the smaller the Unlock Share, the lower the Annualized Cost.

As we will see in the next section, term length is also a big factor in calculating Annualized Cost. In general, the shorter the term length, the higher the Annualized Cost, and the longer the term length, the lower the Annualized Cost.

Investment Payment Received At The Start → Exact Term Length From Start To End (Years, Months, Days) → Unlock Share Paid At The End

Annualized Cost = annual rate of investment return that grows the starting dollar amount to the ending dollar amount over the term length

Annualized Cost can be a useful way to compare the HEA to a loan, but it is not an entirely "apples to apples" comparison, since you must make payments every month on the loan, whereas with the HEA there are no monthly payments and the entire cost is deferred until the end.

## Annualized Cost Limit

Now that we know how to calculate Annualized Cost, we can demonstrate another important feature of the HEA: the **Annualized Cost Limit**. This will also demonstrate the impact of a shorter term length on Annualized Cost.

We'll do one more example, using the same assumptions: $600,000 Starting Home Value and a $60,000 Investment Payment (10% of Starting Home Value) in exchange for a 16% Unlock Percentage. But this time, instead of a ten-year term length, we'll assume you sell your home after one year, and your home's value has increased by 3% to $618,000. As usual, we'll calculate the Unlock Share by multiplying the Ending Home Value by the Unlock Percentage.

| *Ending Home Value* | *X* | *Unlock Percentage* | *=* | *Unlock Share* |
|---|---|---|---|---|
| *$618,000* | *X* | *16%* | *=* | *$98,880* |

At the start you received $60,000. If you paid Unlock $98,880 one year later your HEA would have an Annualized Cost of 64.8%. That's because the Exchanage Rate creates a higher Annualized Cost in early years that decreases significantly over time. To offset the higher cost in early years your Unlock HEA will specify an Annualized Cost Limit, which is typically set at 17%*.

The Annualized Cost Limit acts as a cap on the cost of your HEA. Whenever the calculated Annualized Cost exceeds the Annualized Cost Limit, the Unlock Share is automatically reduced. In the example above, if your Annualized Cost Limit was set at 17%, instead of paying Unlock $98,880 from the sale proceeds you would pay $70,200 (calculated by applying the 17% Annualized Cost Limit to the $60,000 Investment Payment for a term length of one year).

The Annualized Cost Limit is a component of the pricing of your Unlock HEA, along with the Exchange Rate. If the Annualized Cost Limit applies when your Unlock HEA ends, the Annualized Cost Limit will determine cost. If the Annualized Cost Limit does not apply when your HEA ends, the Exchange Rate will determine cost.

* The Annualized Cost Limit varies based on the circumstances of each transaction. Your Annualized Cost Limit will be determined in underwriting and will be specified in your Investment Closing Statement.

The table below displays Ending Home Value, Calculated Unlock Share, Actual Unlock Share and Annualized Cost calculations for term lengths from one to ten years based on the following assumptions:

- Starting Home Value of $600,000 and Investment Payment of $60,000 (10% of home value)
- Exchange Rate of 1.6 and Unlock Percentage of 16% (10% X 1.6)
- Home price appreciation of 3% for each of the ten years
- Annualized Cost Limit of 17%

| Term Length | Ending Home Value* | Calculated Unlock Share** | Actual Unlock Share*** | Annualized Cost |
|---|---|---|---|---|
| 1 | $618,000 | $98,880 | $70,200 | 17.00% |
| 2 | $637,000 | $101,920 | $82,134 | 17.00% |
| 3 | $656,000 | $104, 960 | $96,097 | 17.00% |
| 4 | $675,000 | $108,000 | $108,000 | 15.83% |
| 5 | $696,000 | $111,360 | $111,360 | 13.17% |
| 6 | $716,000 | $114,560 | $114,560 | 11.38% |
| 7 | $738,000 | $118,080 | $118,080 | 10.15% |
| 8 | $760,000 | $121,600 | $121,600 | 9.23% |
| 9 | $783,000 | $125,280 | $125,280 | 8.52% |
| 10 | $806,000 | $128,960 | $128,960 | 7.95% |

* Rounded to the nearest $1,000. ** Ending Home Value X 16% Unlock Percentage.
*** Capped by the 17% Annualized Cost Limit; and where the limit applies, calculated by applying a 17% return to the $60,000 Investment Payment for the specified term length.

As you can see (highlighted in green), in years 1 through 3 the Unlock Share is capped by the 17% Annualized Cost Limit. In years 4 through 10, the Unlock Share equals 16% of the Ending Home Value.

**With the Unlock HEA the cash you receive will never cost more than your specified Annualized Cost Limit, no matter when the HEA ends.**

More information about Annualized Cost and Annualized Cost Limit, including the formulas used to calculate them and tables which provide calculations for various future home price scenarios, can be found in the Appendix.

**Some Final Thoughts On The Cost Of Your HEA**

- If you expect to end your Unlock HEA within the first couple of years, your Annualized Cost will likely equal the Annualized Cost Limit. Regardless of when your HEA ends, your Annualized Cost can never exceed the Annualized Cost Limit.
- If your HEA goes beyond the first couple of years, Annualized Cost can't be known in advance since we don't know exactly when your HEA will end and what your home will be worth in the future. This is fundamentally different from a loan. What we can do is make assumptions, as shown in our examples. We provide tables and tools to help you to consider various future scenarios.
- The cost of your Unlock HEA is all paid at the end, versus a loan for which the cost is paid along the way. This is also fundamentally different from a loan. For many people, this is very valuable.
- The HEA may be the least expensive choice. Interest rates on a home equity line of credit or cash-out refinance may be attractive, but many of our customers don't qualify for those products. For those with damaged credit, personal loan rates can exceed 20% and range up to 30% or more, and credit card cash advance rates can range up to 25% or more. Hard money loans can range from 10-20% and may have only a one or two-year term.
- The HEA does not appear on your credit report so it does not negatively impact your credit score like a loan can. In fact, many of our customers use the HEA to pay off debts and that can lead to a rapid and significant credit score improvement.

## Distribution Of Sale Proceeds

Let's take a quick look at how sale proceeds are distributed when you sell your home. We'll assume the following:

- Starting Home Value is $600,000. You choose an Investment Payment of $60,000, which is 10% of your home's value. Your Exchange Rate is 1.6, so your Unlock Percentage is 16% (10% X 1.6).
- You have one mortgage on your property with a remaining balance of $300,000.
- You sell your home seven years later for $750,000. The Unlock Share is 16% of that amount, or $120,000.

Proceeds from a home sale are typically distributed by the escrow company in the following order:

1. Selling expenses are paid first, including realtor commissions and escrow fees. This can typically add up to about 6-9% of the sale price. We'll assume 7%. $750,000 X 7% = $52,500.
2. The remaining balance on your mortgage is paid next. We'll assume that after seven years of monthly payments your loan balance has declined from $300,000 to $250,000.
3. The Unlock Share of $120,000 is paid next.
4. You receive the remainder of the sale proceeds.

| Distribution of Sale Proceeds | | | | |
|---|---|---|---|---|
| Sale Price | 7% Selling Expenses | Loan Balance | Unlock Share | Owner Net From Sale |
| $750,000 | - $52,500 | - $250,000 | - $120,000 | = $327,500 |



# Chapter 3:
# Living With Your Unlock HEA

When you enter into an Unlock HEA you agree to observe certain requirements that are intended to preserve your home's value. This chapter contains a summary of those requirements.

Terminology defined here:

- Total Home Finance Limit
- Administration Fees

## Occupancy And Use

You will enjoy sole right of occupancy during the term of the HEA. Unlock has no occupancy rights.

You will declare your occupancy intention in your application as one of the following:

- Principal Residence: defined as principal living and sleeping residence that you occupy for at least 180 days in every 365-day period
- Second Home: an owner-occupied second home
- Rental Property: rented to a tenant and not occupied by you*

In the world of real estate investment, it is generally well known that a second home or rental property is a riskier investment than a principal residence. Therefore, if the subject property is not your principal residence, the Exchange Rate for your Unlock HEA may be higher (typically 1.65 or more), and the Total Home Finance Limit (as described later in this Chapter 3) for your Unlock HEA may be lower.

If your occupancy starts out as principal residence and you convert to a second home or rental property during the term, to offset the increased risk Unlock may lower the Total Home Finance Limit to what it would have been if you had originally declared your occupancy as a second home or rental property.*

If the subject property is your principal residence or a second home, you may rent a portion of it (such as a bedroom, attic or basement) whenever you want, as long as it remains your principal residence or second home and not a rental property.*

At the time your Unlock HEA ends, if there is an existing rental agreement or tenant in place that is negatively impacting the Unlock Share, you will be responsible for terminating the rental agreement or removing the tenant from your home, or you will otherwise compensate Unlock for any loss.

You cannot use your home other than as a residential property or permit any commercial use of your home except as a "home office". Your use and occupancy of your home must remain fully compliant with all state, federal and local laws, zoning ordinances, and regulations, including environmental prohibitions.

## Keeping Your Home In Good Repair



To preserve your home's value, you are required to keep it in good condition (subject to ordinary wear and tear). All home repairs should be made in accordance with local building ordinances. If you fail to maintain your property, or a significant defect or condition on your property is not addressed during the term of your Unlock HEA, a Maintenance Adjustment may apply when your HEA ends. More about this in Chapter 4.

## Staying Current On Your Payments

You must promptly pay your mortgage, property taxes, property insurance and any other housing obligations, such as homeowners association or condominium fees.

* Unlock may not offer the HEA on rental properties in certain areas. If rental properties are not allowed, conversion to a rental and/or renting a portion of a property are also not allowed..

unlock

## Maintaining Insurance

Our insurance requirements are similar to what a mortgage lender typically requires. The Unlock HEA requires you to maintain hazard insurance equal to the replacement cost of your home. You must increase your coverage when replacement costs rise. Your policy must include fire and other hazards in coverage amounts that are typical for similar homes in your area. If your home is located in a flood zone, you will need to have flood insurance, and there may be other location-specific insurance requirements.

Unlock must be named on all property insurance policies as a "mortgagee" and/or "additional interest" throughout the term of the HEA, even if the insurance carrier changes. Adding us as a loss payee to your insurance policies is a simple process that is handled by your insurance provider.

If there is damage to your home that materially affects its value during the term of the Unlock HEA, you will be expected to make an insurance claim and restore or repair the Property to its previous condition. If the property was underinsured, you must pay for the restoration or repair out of your other assets.

## Observing The Total Home Finance Limit

Unlock wants you to have significant equity in your home during the term of the HEA. This protects the value of your equity stake in the home and Unlock's investment. The HEA therefore contains a provision called the **Total Home Finance Limit**, which limits the amount of financing that can be secured by your home to a percentage of its value. The limit is typically set at 90% for a principal residence and 85% for a second home or rental property, but it can vary based on circumstances. Your Total Home Finance Limit will be determined when we underwrite your application.

The limit applies to all outstanding mortgage loan balances, any available but undrawn credit lines secured by your home (for example, a home equity line of credit) and the value of the Unlock Share, assuming no Annualized Cost Limit. It does not apply to any financing that is not secured by your home, such as credit cards, car loans or personal loans. If your occupancy starts out as principal residence and you convert to a second home or rental property during the term, the Total Home Finance Limit may be lowered accordingly.

You are generally free to borrow against your home during the term of your HEA, and we will subordinate our lien to the new loan, as long as you don't exceed the Total Home Finance Limit. We will not typically consent to a reverse mortgage, shared appreciation loan, or any loan with a negative amortization feature. If the value of your home has declined during the term of the Unlock HEA, we may refuse to subordinate to new or modified debt if the total amount of debt on the property will increase as a result.

If you get a new loan or refinance an existing one, we may charge a reasonable **Administration Fee** for processing the subordination of our lien to the new debt, and you will be responsible for any related third-party expenses, such as a recording fee.

Unlock will typically subordinate to new loans subject to the Total Home Finance Limit, but we cannot guarantee that a lender will lend on a property with an Unlock HEA to the same extent or on the same terms as they would for a property without an Unlock HEA. It is possible that you will need to terminate your HEA in order to complete a future home loan.

More information about the Total Home Finance Limit, including a numerical example, can be found in the Appendix.

| | | |
|---|---|---|
| | Outstanding Balances Of All Mortgage Debt & Credit Lines | |
| + | Undrawn Balances Of Any Secured Credit Lines | |
| + | Value Of Unlock Share | *Assuming no impact of Annualized Cost Limit* |
| = | Total Home Finance<br>*Cannot exceed the Total Home Finance Limit as specified in your HEA* | |

## Regarding Title, Ownership And Unlock's Lien

The Unlock HEA allows you to hold title to your property in the name of a revocable inter vivos family trust if at least one trustor resides in the home as their primary residence, and all trustees and trustors sign the HEA in such capacities and as individuals. Title can also be held by a corporate entity, such as an LLC, subject to certain restrictions. This is sometimes a preferred method of ownership for rental properties.

Life events may occur during the term of your Unlock HEA that require changes to title or ownership of your home, or to Unlock's lien. We will help you manage such changes as they relate to the HEA, including:

- Placing your home in a family trust
- Adding or removing one or more persons from the title of your home
- Subordinating to a new loan approved by Unlock

Depending on the type and amount of work required to accommodate the changes, there may be a reasonable Administration Fee charged, and you will pay or reimburse Unlock for any third-party expenses related to the work.

## Informing Unlock About Changes

You are required to promptly notify us of any developments that could have a material impact on your home or our rights under the Unlock HEA, including:

- Your decision to sell or transfer your home, or receiving an offer to purchase your home
- A non-signatory to your Unlock HEA becomes an owner or a principal resident of your home
- Any lien is placed on your home
- A change in occupancy status
- Filing for personal bankruptcy
- Failing to maintain required property insurance
- Falling behind on your mortgage or property taxes
- Significant property damage due to fire or some other hazard
- A condemnation of your home



# Chapter 4:
# Ending Your Unlock HEA

Your Unlock HEA will typically end when one of the following occurs:

1. You decide to sell your home
2. You decide to buy Unlock out
3. The last signatory to the HEA passes away
4. You reach the end of the maximum term

Terminology defined here:

- Improvement Adjustment
- Sharable Value
- Maintenance Adjustment
- Owner Buyout
- Partial Buyout

In this Chapter we'll summarize the process for each of these endings. But first we'll examine some special circumstances that can result in an adjustment to the Ending Home Value.

## Improvement Adjustment

Making home improvements is a great way to increase the value and enjoyment of your home. And as a partner in homeownership, we designed the Unlock HEA to be supportive of home improvement efforts.

If you make home improvements at your expense, and thereby increase your home's value, it makes sense that you should keep all of the value you create. To address that, the HEA contains a provision called the **Improvement Adjustment**. Here's an example.

- You enter into an Unlock HEA and soon after you improve your home by adding a new bedroom and upgrading a bathroom.
- At the end of year ten you sell your home for $800,000 (the Ending Home Value).
- You request an Improvement Adjustment as part of the sale process. An appraiser determines that the improvements you made ten years ago added $40,000 to the current value of your home.
- Unlock applies a $40,000 Improvement Adjustment to the Ending Home Value. The Unlock Share is calculated based on a value of $760,000 (we call this the **Sharable Value**).
- The result: Unlock does not share in any value created by your home improvements.

It is important to note that the cost of your home improvement project is not used to determine the amount of the Improvement Adjustment. The amount will equal the portion of your home's value that is attributable to your improvements at the time you sell. An independent third-party appraisal determines the amount of the Improvement Adjustment. To enable the appraiser to determine what increase in value of your property is attributable to your improvements, you must submit clear, detailed photographic evidence of your property in its "before" condition (and other evidence including building permits and descriptions of the project), so the appraiser can visually compare your improvements with the prior condition of your property.

Home improvement projects will sometimes increase the value of your home by less than what they cost. In some cases the added value can depreciate over time. For example, adding an additional room to your home may increase the value of your home by 80% or more of the cost of the project. Adding an in-ground pool might only increase value by 20% of its cost. A kitchen remodel may fully depreciate over a long period of time, as the appliances, countertops and cabinets wear out and the style becomes dated.

unlock

In order for your project to qualify for an Improvement Adjustment, you must comply with local building ordinances, including obtaining any required work permits. Improvement projects that in the aggregate have added less than $10,000 to your home's value may not qualify for an Improvement Adjustment.

A more detailed example of the Improvement Adjustment can be found in the Appendix.

## Maintenance Adjustment

During the term of the Unlock HEA it is your responsibility to maintain your home in good condition, subject to normal wear-and-tear. Unlock makes its investment under the assumption that you will honor this obligation. If you don't, when the HEA ends your home's value will most likely be less than it would have been if it had been properly maintained and that would negatively impact both of us.

To address that, the HEA contains a provision called the **Maintenance Adjustment**. It's essentially the opposite of the Improvement Adjustment.

For example, if you decide to sell your home 10 years after entering into an Unlock HEA and the Ending Home Value is $40,000 less than it should be due to extensive termite damage, we would have the right to make a Maintenance Adjustment. For purposes of calculating the Unlock Share, the Ending Home Value would be adjusted upward by $40,000 (to arrive at the Sharable Value), so Unlock would not share in the loss.

Unlock determines the amount of the Maintenance Adjustment based on independent third-party appraisals, inspections and repair estimates. Typically, no Maintenance Adjustment will apply unless the aggregate cost of the required repairs is at least $10,000.

| | Improvement Adjustment | Maintenance Adjustment |
|---|---|---|
| What Happened During The Term | You made home improvements which increased your home's value | You did not properly maintain your home, which decreased its value |
| The Spirit Of Our Agreement | You paid for the improvements; you should keep all of that additional value | Unlock invests assuming you will maintain the home; we are negatively impacted if you don't |
| What Happens When The HEA Ends | Improvement Adjustment decreases Ending Home Value | Maintenance Adjustment increases Ending Home Value |
| Result | Unlock does not share the value added by your improvements | Unlock does not share the value lost by improper maintenance |

You can think of the Improvement Adjustment and Maintenance Adjustment as flip sides of the same coin. In each case, something happened during the term; the resulting adjustment preserves the spirit of our agreement.

In some cases there can be both an Improvement Adjustment and Maintenance Adjustment applied to the Ending Home Value.

*Ending Home Value - Improvement Adjustment + Maintenance Adjustment = Sharable Value*

A more detailed example of the Maintenance Adjustment can be found in the Appendix.

Unlock may require an upfront home inspection as a condition to entering into the HEA. The inspection may occasionally reveal defects or conditions which could worsen over time and significantly and negatively impact the property's future value and desirability. Unlock may choose to note these defects and conditions in a **Maintenance Addendum** to the HEA and reserve them for the application of a Maintenance Adjustment if they are not corrected during the term.

A Maintenance Adjustment may also be applied if a home declines in value as the result of a significant defect or condition in the property which the owner knew or should have known about before or during the term but which was not disclosed to Unlock.

## Selling Your Home

You have the right to sell your home whenever you want. You'll need to notify Unlock as soon as you decide to sell and provide us with all related documentation. If you are going to request an Improvement Adjustment you need to inform us and provide the supporting evidence of its "before" condition.

To calculate the Unlock Share we need to determine the Ending Home Value. Typically, the Ending Home Value is equal to the sale price to a bona fide, arms-length, third party buyer. It includes the fair market value of any non-cash consideration (such as a seller concession), and does not include deductions for closing costs, taxes, documentary fees, mortgage loans, other liens or secured loans, sales commissions, or appraisal expenses.

After we receive notice of your intent to sell, we may decide to obtain a third-party appraisal. In addition to providing an independent measure of your home's value, an appraisal will be needed if you have requested an Improvement Adjustment. We will also typically obtain a property inspection to determine if a Maintenance Adjustment might be required. Special provisions may apply if it appears that your sale is not arms-length or the proposed sale price is materially different from your home's market value.

Once the Ending Home Value and Sharable Value are determined, we will provide the escrow company with a settlement statement including the exact amount of the Unlock Share and documents needed to release our lien on the property. At the closing of your sale, the escrow company will pay us the Unlock Share out of the sale proceeds and release our lien, ending the Unlock HEA. How much you will receive from the sale will depend on the amount payable to us, the outstanding balances of any loans secured by your property, and real estate commissions and other costs associated with the sale of your home.

## Owner Buyout

At any time during the term of your Unlock HEA, you have the right to end it without selling your home, by buying Unlock out. We call this an **Owner Buyout**. You start the process by submitting an Owner Buyout Request at least 60 days ahead of the desired closing date. There is no prepayment penalty.

The calculation and payment of the Unlock Share is just like with a home sale (including being subject to the Annualized Cost Limit), but since there is no sale price available to determine Ending Home Value, it is determined based on an independent third-party appraisal. The appraisal will determine the amount of an Improvement Adjustment, if you have requested one. We will obtain a property inspection to determine if a Maintenance Adjustment might be required.

Once the Ending Home Value and Sharable Value are determined, we will engage an escrow company and provide a settlement statement including the exact amount of the Unlock Share and documents needed to release our lien on the property. You will wire funds to the escrow company to pay the Unlock Share and all transaction costs. At the closing, the escrow company will pay us the Unlock Share and release our lien, ending the Unlock HEA.

If you qualify for a mortgage loan, you may be able to pay some or all of the cost of an Owner Buyout by refinancing your mortgage or obtaining an additional loan against your property. Since the Owner Buyout would end your Unlock HEA, the Total Home Finance Limit described in Chapter 3 would no longer be a restriction.

## Partial Buyout

To provide even more flexibility, you can request a **Partial Buyout** at any time during the term of your Unlock HEA. The process and calculations are essentially the same as with an Owner Buyout except you identify your intention as partial and let us know what portion of your HEA you want to buy out.

All Partial Buyouts are subject to Unlock approval, which will not be unreasonably withheld. There is technically no limit to the number of Partial Buyouts you can do during the term as long as you are willing to pay for the required appraisal each time (and a home inspection, if needed), but Unlock may decline a Partial Buyout if the remaining Unlock Percentage would be less than 25% of the original Unlock Percentage. Here's an example:

- You enter into an Unlock HEA
  - Starting Home Value is $500,000
  - You receive an Investment Payment of $75,000, which is 15% of your home's value
  - The Exchange Rate is 1.6, so your Unlock Percentage is 24% (15% X 1.6)
- Four years later you request a Partial Buyout for half of your HEA
  - Unlock approves your request
  - Let's assume Ending Home Value for purpose of the Partial Buyout is established by appraisal at $550,000. Half of your Unlock Percentage is 12%. The payment needed to buy out half of your HEA is therefore $66,000 ($550,000 X 12%)
  - Upon making this payment, your Unlock Percentage is reduced from 24% to 12% and your Unlock HEA continues.

## Death Of The Last Signatory

At the start of the Unlock HEA, all owners of the property (as reflected on title) are required to be signatories. If you die during the term of your HEA and you are survived by a spouse or other co-owner of your property who is also a signatory to the HEA, the HEA will continue unaffected.

If you die and you are not survived by anyone else who is a signatory, your heirs or estate will be required to settle the HEA by either selling the home or doing an Owner Buyout. For this reason, it very important that you discuss your decision to enter into the Unlock HEA with your heirs and executor during your lifetime. They should understand the effect the HEA can have on your estate, and if you add a spouse or domestic partner onto title to your property during the term of your HEA, you should notify Unlock so that person can become a signatory.

If your heirs prefer to settle via Owner Buyout, and if they qualify for a mortgage loan, they may be able to pay some or all of the cost of the Owner Buyout by refinancing the mortgage or obtaining an additional loan against the property. Since the Owner Buyout would end your Unlock HEA, the Total Home Finance Limit described in Chapter 3 would no longer be a restriction. If your heirs are unable to pay the cost of an Owner Buyout, they will need to sell the property in order to settle the HEA.

The Unlock HEA automatically provides your heirs or estate with a 180-day period during which to settle. Unlock may provide an additional 180 days to complete a sale process if that is the chosen settlement method.

## Maximum Term

The maximum term of the Unlock HEA is 10 years. If you are still in your home at the end of the term, you will be required to settle your HEA. Unlock will provide notice to you at least 180 days prior to the expiration date. You can choose to sell your home or do an Owner Buyout. You must give notice to Unlock of your intended settlement method at least 90 days before expiration.

If you qualify for a mortgage loan, you may be able to pay some or all of the cost of an Owner Buyout by refinancing your mortgage or obtaining an additional loan against your property. Since the Owner Buyout would end your Unlock HEA, the Total Home Finance Limit described in Chapter 3 would no longer be a restriction.

## Settlement Expenses

You will pay all third-party transaction expenses associated with any Settlement Event, unless paid by Unlock or a buyer of the Property, including appraisal, inspection and closing costs, which can include recording fees, reconveyance fees, escrow fees, title report and insurance fees, federal, state, local and documentary transfer taxes and sales commissions. We may charge a reasonable **Administration Fee** for processing your Settlement Event.

## Quarterly Statements

During the term of your Unlock HEA, you will receive quarterly statements from Unlock which will provide an estimate of your home's current value and an estimate of the Unlock Share assuming you were to sell your home or do an Owner Buyout at that time.

## Other Ways The HEA Can End

There are a few highly unusual circumstances under which the Unlock HEA can end:

- The property is badly damaged by fire or other hazard and not rebuilt.
- The property is condemned.
- As a result of a material and uncured default by you.

More information about each of these can be found in Chapter 5 or the Appendix.



# Chapter 5:
# Additional Details

## The Legal Documents

What's under the hood of the Unlock HEA? In legal terms, it is a "forward sale and exchange agreement" consisting of two related legal documents.

1. Exchange Agreement

   This is the primary document. It contains all of the financial terms, conditions, requirements, rights, responsibilities and protections, and it defines the various ways in which the HEA can end.

2. Security Instrument

   This document creates a secured lien on the home during the term. It is recorded in the jurisdiction where the property is located and is typically subordinate to any existing mortgage on your property. It also highlights specific features of the HEA for public notice.

Terminology defined here:

- Protective Advance
- Non-Distressed Sale
- Unpaid Owner Obligations
- Settlement Payment

You are urged to carefully review the Unlock HEA legal documents and other materials with your financial, tax and legal advisors, and family members. Your Unlock Home Equity Consultant will be happy to discuss the HEA with them as well, at your request.

## Appraisal And Inspection Standards And Procedures

Determining Starting Home Value and property condition are required during the underwriting of your Unlock HEA. For any termination of the HEA, your home's value and condition must also be determined, and this may include calculating the amount of an Improvement Adjustment or Maintenance Adjustment. Objectivity and accuracy of the appraisal and inspection process is thus fundamental to the Unlock HEA, and we are committed to those goals in our standards and procedures, including the following:

- Appraisers and inspectors must be neutral third parties unaffiliated with either of us
- Appraisers must comply with the Uniform Standards of Professional Appraisal Practice, all applicable federal or state laws and regulations, and satisfy the requirements of Fannie Mae, Freddie Mac or FHA
- Inspectors must be experienced experts in the local community and be licensed where required

In support of these goals, Unlock requires homeowners to cooperate with appraisers and inspectors by:

- Granting full and prompt access to the property
- Making all relevant documentation available
- Ensuring that the home is presented in reasonable condition to be appraised or inspected

Appraisals will typically be ordered by Unlock through an appraisal management company or third-party appraiser, and inspections will be ordered by Unlock through a local inspection company. In some cases, alternative property valuations may be obtained from independent third parties, such as a Broker Price Opinion or AVM (Automated Valuation Method) instead of or in addition to a traditional appraisal. Inspections are sometimes specialized, and more than one may be required (for example a general inspection plus a pest inspection or roof inspection). The homeowner is typically responsible to pay for the first appraisal and the first inspections ordered by Unlock in connection with the origination and any termination of the HEA or any calculation of the Unlock Share.

If either you or Unlock believes that an appraisal is factually incorrect, we may request a timely reconsideration of the appraisal, or an additional appraisal. Generally, the requesting party will bear the additional cost. The cost will be shared if both parties are requesting.

## Handling Disagreement

During the term of your Unlock HEA, there may be a situation where we disagree about something, such as an appraised value or the amount of an Improvement Adjustment or Maintenance Adjustment. Agreeing to accurate numbers is important to both you and Unlock, and we are committed to a fair process to determine them.

Should any disagreement arise, a simple two-step process may apply:

1. After reviewing appraisals, inspection reports, repair estimates and any other information used to determine the Ending Home Value or the amount of any Improvement Adjustment or Maintenance Adjustment, either party may request a reconsideration. One or more additional appraisals, appraisal reviews, alternative property valuations, inspection reports, or repair estimates may be obtained. Our goal is to obtain additional information if useful and have a constructive discussion resulting in a friendly agreement.
2. If we are still unable to agree in good faith, the issue will be determined through arbitration, which is a relatively easy and inexpensive process in which the relevant materials are provided to an independent, neutral arbitrator who makes the final determination.

## Default

If you default under your Unlock HEA, we may need to take action to protect our investment. In many cases our action will protect you as well. A default can result from a life event like a job loss or serious illness not within a homeowner's control. Occasionally a homeowner will simply violate the HEA, knowingly or unknowingly. Events of default include:

- Falling behind on your mortgage, property taxes or property insurance
- Allowing the condition of your home to deteriorate significantly or failing to restore your home to its previous condition after damage
- Taking on additional debt that exceeds the Total Home Finance Limit or permitting a lien on your home other than as agreed to by Unlock
- Violating home usage law such as using your home for commercial purposes or constructing an addition to your home in violation of zoning restrictions or without building permits
- Becoming insolvent or declaring bankruptcy
- Misrepresenting or omitting material facts when communicating with Unlock
- Attempting to sell or transfer your property except as permitted by the HEA
- Failing to settle the HEA at the end of its term

Not all defaults are serious enough to require action, but some are. We will notify you of any problem we are aware of that requires your attention. We will give you time to fix the problem before declaring default, unless in our judgment the problem can have an immediate and material impact. You can choose not to fix the problem, and instead settle your Unlock HEA.

In the highly unlikely case of a material and uncured default, Unlock may be forced to take action to protect its investment, including: 1) initiating a foreclosure proceeding on the property in accordance with applicable law; or 2) electing to convert the Unlock Percentage into fractional ownership and compelling the sale of the property. In either case, you would have ample further opportunity to fix the problem, but if you do not cure the default you could lose the property. If a default results in a foreclosure sale of the Property or other distressed situation, Unlock may use a "non-distressed" appraised value as Ending Home Value when calculating the Unlock Share.

We may charge Administration Fees and invoice you for all third-party expenses associated with a default (such as legal expenses), but only where such expenses are reasonable and customary, and subject to applicable law.

Foreclosure will always be a last resort. As co-investors in your home, in most cases our interests will be aligned, and we will first try other remedies to help you fix a problem, such as:

Protective Advances

If a default materially jeopardizes the value of the Unlock Share, we will have the right to take action to protect your home's value. We can sometimes do this by making a **Protective Advance**, which is money that Unlock spends on your behalf. For example, if you fail to pay your property tax bill, we might decide to correct the problem by making a Protective Advance to pay it.

The Unlock HEA gives us the right to make Protective Advances when we deem necessary. You will always be responsible to repay any Protective Advances we make on your behalf, and you will typically be charged an Administration Fee when we make one. You may also be charged interest on the balance of any Protective Advance until it is repaid. This is the only circumstance in which interest is ever paid under the Unlock HEA.

Non-Distressed Sale

If you fall behind on your mortgage and the lender starts a foreclosure process, it's in our best interest to help you get the best sale price possible for your home. To do this, Unlock might decide to offer you something called a **Non-Distressed Sale** which is designed to prevent your home from going to foreclosure and becoming a "distressed" property.

For example, we might offer to make a payment to the lender to bring the mortgage loan current, which would stop the foreclosure process, and then you and we, working together, would market your home for sale in the normal way. We might also make the monthly mortgage payments on your behalf until the sale closes. This can help preserve your home's value so it can be sold for the maximum possible price. It can also protect your credit since you would not have a foreclosure on your record. This feature is a good example of how our interests are aligned as co-investors in your home.

Note that Unlock is not obligated to offer a Non-Distressed Sale and would evaluate doing so based on the circumstances of the default, home value, Total Home Finance and other considerations. Any payments made by Unlock in connection with a Non-Distressed Sale would be deemed Protective Advances, and Unlock would have to right to charge Administration Fees and incur typical third-party costs at your expense.

## Administration Fees

Unlock will sometimes charge reasonable Administration Fees in connection with the handling of various events that can occur during the term of your HEA. We have already mentioned this in connection with processing a:

- Change to title
- Subordination in connection with new or refinanced debt
- Default, Protective Advance and/or Non-Distressed Sale

Administration Fees are payable when incurred. We understand that at certain times (such as in connection with a Non-Distressed Sale) cash might be tight, so Unlock can elect to defer payment of Administration Fees until a later date, or even until the HEA ends.

Unlock's current Administration Fee Schedule can be found in the Appendix.

## Settlement Payment

Throughout this Product Guide we have referred to the payment you make to Unlock when the HEA ends as the Unlock Share. There can be circumstances in which the payment to Unlock can exceed the amount of the Unlock Share.

**Unpaid Owner Obligations** are the sum of any unpaid Administration Fees, appraisal expenses and inspection expenses, unreimbursed Protective Advances; unpaid interest, fees and other charges associated with Protective Advances; as well as any other amounts expended by Unlock to protect its rights or the value of the property in an event of default.

If there are any Unpaid Owner Obligations outstanding at the time the Unlock HEA ends, they must be repaid. The total amount due to Unlock is called the **Settlement Payment**, and it equals the Unlock Share plus any Unpaid Owner Obligations. Unpaid Owner Obligations are also payable at the time of a Partial Buyout.

## Tax Impact

It is our understanding that the cash you receive from us when you enter into an Unlock HEA should not be taxable at that time, and there should be typical real estate capital gains tax treatment when the HEA ends. But Unlock does not provide tax advice. Since each homeowner's tax situation is unique, you must consult with and rely on the advice provided by your tax advisor, not Unlock, for a full explanation of the tax impact of the Unlock HEA. Unlock does not make any representations or warranties concerning tax matters or the tax treatment of payments made or obligations owed under the Unlock HEA.


Home Equity
Agreements solve
problems that debt
cannot solve.

Our mission is to Unlock the power of home equity to enrich people's lives.

We are committed to putting consumers on a path that leads to greater financial success and a sense of control of their own destiny.

We go beyond the transactional roots of most financial products to give consumers a roadmap for relief now and then offer ever-present help on what they can do next to enjoy a better future.

We will always do the right thing, one transaction at a time, and every homeowner will receive a complete education about the value and financial impact of our products. We're committed to honesty, transparency, empathy and accountability in all aspects of our business.

Thanks for your interest and the opportunity to serve your home finance needs.

Team Unlock

# Appendix

unlock

## Upfront Expenses

As with most real estate transactions, there are upfront expenses with an Unlock HEA, including fees payable to third parties and the Unlock Origination Fee. Each transaction is unique, so the types and amounts of expenses can vary greatly with the location and home value. It is difficult to provide exact figures prior to processing an application. Here we provide descriptions and estimated price ranges. Actual amounts may be higher or lower. Your transaction may not include all of the expenses outlined and/or it may involve additional expenses not detailed here. Some fees may be collected by Unlock on behalf of third parties and will therefore be listed as payments to Unlock at closing.

If we assume a Starting Home Value of $1,000,000, an Investment Payment of $100,000, no recording tax or mortgage tax is payable, no additional appraisal or inspection reports are needed, and no title insurance is required, the cost of closing the HEA might be $5,200, as follows:

| | |
|---|---|
| Appraisal and property inspection fees: | $1,000 |
| Title, settlement, recording and document fees: | $1,200 |
| Unlock Origination Fee: | $3,000 |
| Total upfront expenses: | $5,200 |

The table below contains descriptions and typical amounts for the various expenses that may be applicable.

| Item | Description | Amount |
|---|---|---|
| Appraisal Report | Paid to an independent third-party appraisal firm. Used to underwrite your application and determine Starting Home Value. In some cases two appraisals may be required. Exact cost will be quoted before scheduling. Alternative valuation reports (such as an automated valuation method (AVM) or broker price opinion (BPO) may sometimes be used instead. | Typically $400-$800 per appraisal; can be higher on expensive properties. Alternative valuation reports are typically less expensive. |
| Home Inspection Report | Paid to an independent third-party inspection firm. Used to underwrite your application and determine property condition. Properties with condition issues may require more than one inspection (such as a separate pest inspection). Exact cost will be quoted before scheduling. | Typically $300-$550 per inspection; can be higher on expensive properties. |
| Title Report and/or Title Insurance Premium | Paid to an independent title and escrow provider. Used to confirm ownership and pre-existing liens. Title insurance is not typically required. If it is, the premium will be based on home value and can vary based on the title company. | Title report is typically about $100. If title insurance is required, the fee is based on home value and can cost $300-$1,000 or more. |
| Settlement and Escrow Fees and Recording or Mortgage Tax | Paid to independent vendors or the local government.<br>May include, but are not limited to, the following:<br>- Settlement or Closing Fee<br>- Notary Fee<br>- Recording Fees<br>- Courier/Delivery/Wire Fees<br>- Recording and/or Mortgage Tax (can be City, County, State; not required in most jurisdictions) | Typically $1,200 or less if no recording or mortgage tax is required. (Note: These fees can vary; they are sometimes based on property value, and there may be additional taxes and fees in some jurisdictions.) |
| Unlock Origination Fee | Paid to Unlock. Offsets a portion of the underwriting, closing and administration costs of your Unlock HEA. | Typically 3% of the Investment Payment. |

## Administration Fee Schedule

Unlock charges reasonable Administration Fees in connection with the handling of various events that can occur during the term of your HEA. Fee types and amounts are described below.

| Description | Amount |
|---|---|
| Processing changes to Title<br>• Addition or removal of HEA signatory<br>• Other changes to Title including change of Title to Trust | $300 |
| Processing Protective Advances made by Unlock (per advance) due to:<br>• Non-payment of property insurance, property taxes, mortgage or other obligation<br>• Deferred maintenance | $250 [1] |
| Processing Subordination Requests | $300 |
| Recording and Reconveyance (per document)<br>• Release of lien<br>• Quitclaim deeds<br>• Other requested release documentation | $75 |
| Processing a property sale, Owner Buyout or Partial Buyout | $500 |
| Administering an Event Of Default | $500 - $3500 (estimated) [2] |

In addition to the fees itemized above, other out-of-pocket fees and costs which are paid by Unlock to third parties may be charged to you from time to time during the Term or upon a Settlement Event, including fees and costs related to title, legal, recording, and appraisal, whether incurred in connection with a default, a Settlement Event, or otherwise.

The above listed fees are estimates based on the current costs of the service provided. These fees are subject to change as the costs of providing any such services change. If a fee has changed at the time you request any one of the above services, a disclosure of the then-current charge will be provided. Please note that additional fees for expediting requests may apply.

1. Plus interest on amounts advanced, in accordance with the Unlock HEA.

2. The range of Administration Fees and/or Protective Advances which may be charged by Unlock in connection with an Event Of Default is an estimate only, given the difficulty of actually predicting the cost. As a result, the actual amount of such Administration Fees and/or Protective Advances may vary depending on the duration, and difficulty of resolution, of any given Event Of Default and may significantly exceed the estimate given here. Under no circumstances, however, shall Unlock charge any Administration Fees or Protective Advances in connection with an Event Of Default unless they are customary, reasonable, bona fide and actually incurred. Interest may be charged on such Administration Fees and/or Protective Advances, in accordance with the Unlock HEA.

## Unusual Situations

The Unlock HEA contains several provisions that are intended to address unusual situations. They are mentioned here to make sure you are aware of them.

### Condemnation

If your property is condemned in whole, condemnation proceeds will be allocated between you and Unlock as specified in the HEA and the HEA will end. If the case of a partial condemnation, your HEA may continue.

### Damage

If your property is damaged or destroyed by a hazard such as fire, all insurance proceeds will be applied to restore or repair the property to at least the same condition as of the time immediately preceding its damage or destruction. If the property was underinsured, you must pay for the restoration or repair out of your other assets. In situations where the property is restored, your Unlock HEA will continue. In situations where the property is not restored, the HEA will typically end.

If restoration or repair is not economically feasible, the insurance proceeds and remaining property value will be allocated between you and Unlock as specified in the HEA. We will be entitled to a share of the proceeds based on the market value of the home prior to the damage or destruction.

### Ensuring a fair sale price

The Unlock HEA contains safeguards to assure that your home is being sold for its fair market value. If Unlock believes that a proposed sale price differs materially from the fair market value of your home, we may require one or more appraisals or other valuation reports to validate the sale price. Under certain circumstances, we may require written assurances from you, your buyer, and the respective real estate brokers that your property sale is at arm's length, we may offer to buy the property at the proposed price, or we may use an appraised value to determine Ending Home Value and calculate the Unlock Share.

### Sale by owner, non-MLS sales and intra-family sales

You are not required to use a real estate professional to assist with your home sale. However, if you sell your home without placing it on the open market through the Multiple Listing Service (MLS) and we determine that you are selling for less than fair market value, we will have the right to use an appraised value to determine Ending Home Value and calculate the Unlock Share.

Unlock may also calculate the Unlock Share using an appraised value if you are selling to a family member in an "intrafamily sale" or if the buyer is a business entity rather than an individual person.

### Selling right after an Owner Buyout

If you sell your home within 180 days following an Owner Buyout, we reserve the right to determine how much we would have received from that sale. If the amount we received from the Owner Buyout is less, and Unlock concludes that you completed the Owner Buyout under circumstances indicating a lack of good faith and fair dealing, you will be responsible to pay us an additional amount equal to the difference.

## More About HEA Pricing (Exchange Rate and Annualized Cost Limit)

Why is the typical Exchange Rate 1.6 and why is the typical Annualized Cost Limit 17%? Great questions! This is how we price our product, and the pricing is intended to compensate Unlock for the risks we take. It can be helpful to think about the risks by comparing the Unlock HEA with a mortgage loan.

| Risk | Mortgage Loan | Unlock HEA |
| --- | --- | --- |
| Type Of Investment Return | Interest, which is typically **locked in** at a known and fixed rate or margin. | Riskier: A large part of Unlock's return is dependent on home price appreciation, which is **unknown and variable**, and may be zero or negative. |
| Timing Of Investment Return | Interest and Principal are **paid each month** so the loan balance declines over time. | Riskier: No monthly payments. Investment return is **deferred for up to 10 years**. |
| Lien Position | **First position.** | Riskier: **Typically second position**. In a default situation, the first lienholder receives 100% of the amount they are owed before a second lienholder can receive anything. |
| Property Condition | A lender is **largely insulated from this risk** due to their first lien position and declining loan balance. | Riskier: A lot can happen over many years. Property condition can significantly impact value which **can directly reduce Unlock's return** and, as a second lienholder, its ability to receive that return. |

As you can see, the Unlock HEA is clearly riskier than a loan. By taking these risks Unlock creates the benefits that you enjoy: long term cash with no interest or monthly payments and a long and flexible settlement term.
A typical Exchange Rate of 1.6 and Annualized Cost Limit of 17% fairly compensate Unlock for the risks.

Why do the Exchange Rate and Annualized Cost Limit vary? Another great question! No two transactions are identical. Unlock prices each deal individually based on its specific risks. You're already familiar with this concept if you've ever gotten a mortgage loan or used a credit card, where riskier borrowers pay higher interest rates and less risky borrowers pay less. At Unlock, rather than declining applications when risk is higher, we can approve them with a higher Exchange Rate and/or higher Annualized Cost Limit.

We'll determine your exact Exchange Rate and Annualized Cost Limit based on a number of factors, including those listed in the table below.

| Risk | Detail |
| --- | --- |
| Property Type | Condominiums and townhomes are sometimes considered riskier than standalone single-family structures. Multiple unit homes (2-4 units) are typically considered riskier. |
| Pre-Existing Mortgage Debt | Higher amounts of debt typically create more risk, especially for a second lien holder like Unlock. |
| Property Location | Location is one factor that can determine home price appreciation, which impacts Unlock's investment return. |
| Occupancy Status | A principal residence is generally considered less risky than a second home or rental property. |
| Credit Profile | Lower FICO score and/or derogatory credit events are typically reliable indicators of higher default risk. |

## Annualized Cost And Maximum Unlock Share Calculations

Here we will provide an example that further demonstrates Annualized Cost and the Annualized Cost Limit, including the formulas used to calculate the numbers. We'll use the following assumptions:

- The HEA is originated on May 12, with a Starting Home Value of $600,000, an Investment Payment of $60,000 (10% of home value), an Exchange Rate of 1.6 and an Unlock Percentage of 16% (10% X 1.6).
- The Annualized Cost Limit is set at 17%.
- The home is sold on September 28 of the following year. The home value has risen by 4% during the term from $600,000 to $624,000.

We'll start by calculating the Unlock Share.

*Ending Home Value X Unlock Percentage = Unlock Share*

*$624,000 X 16% = $99,840*

Next we'll calculate Annualized Cost. To do that we need to know Term Days.

*Term Days = exact number of days that passed between the Effective date and Settlement Date*

Starting May 12 and ending September 28 of the following year results in a term of exactly 504 days. Now we can calculate Annualized Cost using this formula:

*(Unlock Share / Investment Payment) ^ (365 / Term Days) - 1 = Annualized Cost*

*($99,840 / $60,000) ^ (365 / 504) - 1 = 44.6%*

Whenever the calculated Annualized Cost exceeds the Annualized Cost Limit, the Unlock Share will be capped at an amount equal to the "Maximum Unlock Share". In this example, 44.6% is greater than 17%, so we will need to calculate the Maximum Unlock Share, using this formula:

*Investment Payment X (1 + Annualized Cost Limit) ^ (Term Days / 365) = Maximum Unlock Share*

*$60,000 X (1 + 17%) ^ (504 / 365) = $74,525*

To conclude our example, the Unlock Share would be set equal to the Maximum Unlock Share of $74,525, instead of the calculated Unlock Share of $99,840. Unlock would receive $74,525 from the sale proceeds and the resulting Annualized Cost would be exactly 17%.

Note that the Annualized Cost and Maximum Unlock Share calculations exclude the Origination Fee payable to Unlock and all third-party upfront expenses.

unlock

## Annualized Cost Scenario Tables

The first table displays Annualized Cost calculations for various annual home price change and term length assumptions, assuming an Exchange Rate of 1.6 and an Annualized Cost Limit of 17%. The green highlighted area shows when the Annualized Cost Limit applies. This information can be useful when thinking about what your HEA might cost based on your expectations for home prices and when you think you will end your HEA.

Annualized Cost

| Annual Home Price Change | Term Length | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| -2% | 17.00% | 17.00% | 14.62% | 10.22% | 7.66% | 5.99% | 4.81% | 3.93% | 3.25% | 2.72% |
| -1% | 17.00% | 17.00% | 15.79% | 11.34% | 8.76% | 7.07% | 5.88% | 4.99% | 4.31% | 3.76% |
| 0% | 17.00% | 17.00% | 16.96% | 12.47% | 9.86% | 8.15% | 6.94% | 6.05% | 5.36% | 4.81% |
| 1% | 17.00% | 17.00% | 17.00% | 13.59% | 10.95% | 9.23% | 8.01% | 7.11% | 6.41% | 5.86% |
| 2% | 17.00% | 17.00% | 17.00% | 14.72% | 12.05% | 10.31% | 9.08% | 8.17% | 7.47% | 6.91% |
| 3% | 17.00% | 17.00% | 17.00% | 15.84% | 13.15% | 11.39% | 10.15% | 9.23% | 8.52% | 7.96% |
| 4% | 17.00% | 17.00% | 17.00% | 16.97% | 14.25% | 12.47% | 11.22% | 10.29% | 9.58% | 9.00% |
| 5% | 17.00% | 17.00% | 17.00% | 17.00% | 15.35% | 13.56% | 12.29% | 11.35% | 10.63% | 10.05% |
| 6% | 17.00% | 17.00% | 17.00% | 17.00% | 16.45% | 14.64% | 13.36% | 12.41% | 11.68% | 11.10% |

The second table provides an interesting way to think about the Unlock Percentage when the Annualized Cost Limit applies. The table displays the "effective" Unlock Percentage for various home price change and term length scenarios, assuming an HEA with an Exchange Rate of 1.6, an Unlock Percentage of 16% and an Annualized Cost Limit of 17%. The green highlighted area shows when the Annualized Cost Limit applies.

"Effective" Unlock Percentage

| Annual Home Price Change | Term Length | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| -2% | 11.94% | 14.25% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% |
| -1% | 11.82% | 13.97% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% |
| 0% | 11.70% | 13.69% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% |
| 1% | 11.58% | 13.42% | 15.55% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% |
| 2% | 11.47% | 13.16% | 15.09% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% |
| 3% | 11.36% | 12.90% | 14.66% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% |
| 4% | 11.25% | 12.66% | 14.24% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% |
| 5% | 11.14% | 12.42% | 13.84% | 15.42% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% |
| 6% | 11.04% | 12.18% | 13.45% | 14.84% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% | 16.00% |

What is this table telling us? Whenever the Annualized Cost Limit applies at the termination of the HEA, Unlock does not actually receive 16% of the home's value even though the Unlock Percentage is 16%. Because the Annualized Cost Limit reduces the amount of the Unlock Share, the "effective" Unlock Percentage is reduced accordingly. For example, if you end your HEA after one year, and your home's value increased by 2% that year, you would pay Unlock an amount that is equal to 11.47% of your home's value (see the red highlight). As you might expect, the "effective" Unlock Percentage equals the actual Unlock Percentage of 16% whenever the annualized Cost Limit does not apply.

## More About The Total Home Finance Limit

Total Home Finance is the sum of:

- All outstanding mortgage loan balances
- Any available but undrawn credit lines secured by your home (for example, a home equity line of credit)
- The value of the Unlock Share, assuming no Annualized Cost Limit

You are generally free to borrow against your home during the term of your HEA as long as you don't exceed the Total Home Finance Limit. Here we'll provide an example and demonstrate how much additional borrowing capacity may be available under the limit. Let's assume the following:

- Starting Home Value of $1,000,000 and Investment Payment of $150,000 (15% of home value)
- Exchange Rate of 1.6 and Unlock Percentage of 24% (15% X 1.6)
- Total Home Finance Limit is set at 85%
- There is an existing first mortgage loan on the property with an outstanding balance of $400,000
- There is a $40,000 home equity line of credit (HELOC) on the home with an outstanding balance of $20,000

The calculations below apply at the start of the Unlock HEA. At any given time going forward, home value and outstanding loan balances may be different, which would impact the calculations.

| | | | |
|---|---|---|---|
| *Existing First Mortgage Balance* | | *$400,000* | |
| *Existing HELOC Balance* | *+* | *$20,000* | |
| *Undrawn HELOC Amount* | *+* | *$20,000* | |
| *Value Of Unlock Share At Origination* | *+* | *$240,000* | *($1,000,000 X 24%; assumes no Annualized Cost Limit)* |
| *Total Home Finance* | *=* | *$680,000* | |

| | | | |
|---|---|---|---|
| *Total Home Finance Limit* | | *$850,000* | *(85% of current home value)* |
| *Total Home Finance* | *-* | *$680,000* | |
| *Available To Borrow* | *=* | *$170,000* | |

## More About The Improvement Adjustment And Maintenance Adjustment

Here we will provide more detailed examples of the Improvement Adjustment and Maintenance Adjustment that can apply when your Unlock HEA ends. Our examples will assume the following:

- Starting Home Value of $800,000 and Investment Payment of $100,000 (12.5% of home value)
- Exchange Rate of 1.6 and Unlock Percentage of 20% (12.5% X 1.6)
- You decide to sell your home at the end of year 8. Ending Home Value is $1,000,000

Improvement Adjustment Example

To demonstrate the Improvement Adjustment let's assume that:

- Upon receipt of the Investment Payment from your Unlock HEA, you did a home improvement project which converted part of your basement into two new bedrooms and a bathroom at a cost of $60,000.
- At the end of year 8 you request an Improvement Adjustment as part of the sale process, and provide all the proper documentation, including detailed "before" photos. An appraiser determines that the improvements you made some years ago have added $50,000 to the current value of your home.

Based on this, we would conclude that without the additional bedrooms and bathroom in the basement your home would have been worth $50,000 less. Unlock would apply a $50,000 Improvement Adjustment to the Ending Home Value to arrive at a Sharable Value of $950,000. Sharable Value would then be used to calculate the Unlock Share.

| *Ending Home Value* | *-* | *Improvement Adjustment* | *=* | *Sharable Value* |
|---|---|---|---|---|
| *$1,000,000* | *-* | *$50,000* | *=* | *$950,000* |

| *Sharable Value* | *X* | *Unlock Percentage* | *=* | *Unlock Share* |
|---|---|---|---|---|
| *$950,000* | *X* | *20%* | *=* | *$190,000* |

Without the Improvement Adjustment provision in the Unlock HEA, Ending Home Value would be used to calculate the Unlock Share and the amount payable to Unlock would be $10,000 higher.

| *Ending Home Value* | *X* | *Unlock Percentage* | *=* | *Unlock Share* |
|---|---|---|---|---|
| *$1,000,000* | *X* | *20%* | *=* | *$200,000* |

The result: Unlock does not share in any value created by your home improvements.

Maintenance Adjustment Example

To demonstrate the Maintenance Adjustment let's assume that:

- During the eight-year term of your Unlock HEA, you did not properly care for your home. At the time of your sale the roof is leaking badly and there is some interior water damage.
- Using independent third-party reports (such as appraisals, inspections and repair estimates), Unlock determines that necessary repairs would cost $40,000.

Based on this, we would conclude that the sale price of your home would have been $40,000 higher if you had performed the required maintenance. Unlock would apply a $40,000 Maintenance Adjustment to the Ending Home Value to arrive at a Sharable Value of $1,040,000.. Sharable Value would then be used to calculate the Unlock Share.

| Ending Home Value | + | Maintenance Adjustment | = | Sharable Value |
|---|---|---|---|---|
| $1,000,000 | + | $40,000 | = | $1,040,000 |

| Sharable Value | X | Unlock Percentage | = | Unlock Share |
|---|---|---|---|---|
| $1,040,000 | X | 20% | = | $208,000 |

Without the Maintenance Adjustment provision in the Unlock HEA, Ending Home Value would be used to calculate the Unlock Share and the amount payable to Unlock would be $8,000 less.

| Ending Home Value | X | Unlock Percentage | = | Unlock Share |
|---|---|---|---|---|
| $1,000,000 | X | 20% | = | $200,000 |

The result: Unlock does not share in any value lost due to improper maintenance.

As you can see, when calculating Sharable Value the Improvement Adjustment decreased the Ending Home Value and the Maintenance Adjustment increased it. These adjustments are designed to ensure fairness and preserve the intended outcome of the HEA.

In some cases an Improvement Adjustment and Maintenance Adjustment can apply to the same property when the Unlock HEA ends, and the Sharable Value would be impacted by both. If we combine the two examples above, Sharable Value would be $990,000 and the Unlock Share would be $198,000.

| Ending Home Value | - | Improvement Adjustment | + | Maintenance Adjustment | = | Sharable Value |
|---|---|---|---|---|---|---|
| $1,000,000 | - | $50,000 | + | $40,000 | = | $990,000 |

| Sharable Value | X | Unlock Percentage | = | Unlock Share |
|---|---|---|---|---|
| $990,000 | X | 20% | = | $198,000 |

Objectivity and accuracy of the process to determine any Improvement or Maintenance Adjustment is fundamental to the Unlock HEA.

- An independent third-party appraisal determines the amount of the Improvement Adjustment. Improvement projects that in the aggregate have added less than $10,000 to your home's value may not qualify for an Improvement Adjustment.
- Unlock determines the amount of the Maintenance Adjustment based on independent third-party appraisals, inspections and repair estimates. Typically, no Maintenance Adjustment will apply unless the aggregate cost of the required repairs is at least $10,000.

unlock

Unlock Partnership Solutions Inc.
270 Madison Avenue, Suite 702
New York, NY 10016