The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEUNGJAE SEONG,

Plaintiffs,

v.

UNLOCK PARTNERSHIP SOLUTIONS INC., a Delaware corporation,

Defendant.

No. 2:26-cv-01023-JLR

**DEFENDANT UNLOCK PARTNERSHIP SOLUTIONS INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

**NOTE ON MOTION CALENDAR**:
JUNE 26, 2026



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**


I. ARGUMENT ..... 1

A. Plaintiff Entered a Valid Arbitration Agreement with Unlock. ..... 1

B. The Parties Unmistakably Agreed to Delegate Arbitrability. ..... 1

C. Plaintiff's Reliance on TILA Is Misplaced. ..... 2

1. TILA Does Not Bar the Parties' Agreement to Delegate. ..... 2

2. TILA Does Not Apply to the FSEA. ..... 3

D. The Delegation Agreement Is Not Unconscionable. ..... 9

E. Plaintiff's Remaining Challenges Are Delegated to the Arbitrator. ..... 11

II. CONCLUSION ..... 12




Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anthony v. Comm. Loan & Inv. Corp.*,
559 F.2d 1363 (5th Cir. 1977) ....5

*Attix v. Carrington Mortg. Servs. LLC*,
35 F.4th 1284 (11th Cir. 2022) ....2, 3

*In re BAM Trading Servs. Inc. Sec. Litig.*,
733 F. Supp. 3d 854 (N.D. Cal. 2024) ....2, 10

*Baskin v. EK Real Est. Servs., NY, LLC*,
2022 WL 17742738 (E.D. Tex. 2022) ....2

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....3

*Brookdale Senior Living Communities, Inc. v. Hardy*,
2015 WL 13446704 (W.D. Wash. 2015) ....10

*Burnett v. Ala Moana Pawn Shop*,
3 F.3d 1261 (9th Cir. 1993) ....5, 9

*Capela v. J.G. Wentworth, LLC*,
2009 WL 3128003 (E.D.N.Y. 2009), *report & recommendation adopted*, 2009 WL 10712637 (E.D.N.Y. 2009) ....4

*Caremark, LLC v. Chickasaw Nation*,
43 F.4th 1021 (9th Cir. 2022) ....3

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ....3

*Ctr. for Investigative Reporting v. DOJ*,
14 F.4th 916 (9th Cir. 2021) ....5

*Durning v. Citibank, N.A.*,
950 F.2d 1419 (9th Cir. 1991) ....5

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ....9

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
97 F.4th 1190 (9th Cir. 2024) ....11



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Ford Motor Credit Co. v. Milhollin*,
444 U.S. 555 (1980)....................6, 7

*Foster v. Equitykey Real Estate Invs. LP*,
2017 WL 1862527 (N.D. Cal. 2017) .................... *passim*

*Hauk v. JP Morgan Chase Bank USA*,
552 F.3d 1114 (9th Cir. 2009) ....................9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....................4

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024)....................6, 7

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ....................2

*Moss v. Cleo AI Inc.*,
799 F. Supp. 3d 1152 (W.D. Wash. 2025)....................6

*Olsen v. Unison Agreement Corp.*,
2023 WL 4492346 (W.D. Wash. 2023)....................2

*Olson v. Unison Agreement Corp.*,
2025 WL 2254522 (9th Cir. 2025) ....................5, 7

*Pandolfi v. Aviagames, Inc.*,
2025 WL 2463742 (9th Cir. 2025) ....................10

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) ....................10

*Quality Res. & Servs., Inc. v. Idaho Power Co.*,
706 F. Supp. 2d 1088 (D. Idaho 2010) ....................6

*Revell v. Grant Money, LLC*,
808 F. Supp. 3d 1036 (N.D. Cal. 2025) ....................6

*Sandler v. Modernizing Med., Inc.*,
170 F.4th 1209 (9th Cir. 2026) ....................2

*Veneziani v. Unison Agreement Corp.*,
2023 WL 4201961 (W.D. Wash. 2023)....................2

*In re Yang*,
2023 WL 7104764 (Bankr. S.D. Ind. 2023) ....................5



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**State Cases**

*Burnett v. Pagliacci Pizza, Inc.*,
196 Wn.2d 38 (2020) ....................10

*Keystone Land & Dev. Co. v. Xerox Corp.*,
152 Wn.2d 171 (2004) ....................1

*LaRose v. King County*,
8 Wn. App. 2d 90, 127 (2019) ....................12

*Massachusetts v. Hometap Equity Partners, LLC*,
2025 WL 2468564 (Mass. Sup. Ct. 2025) ....................6, 7

*Mattingly v. Palmer Ridge Homes LLC*,
157 Wn. App. 376 (2010) ....................10

*McKee v. AT&T Corp.*,
164 Wn.2d 372 (2008) ....................11

*Muskal v. Point*,
No. CV 2025-024855 (Ariz. Sup. Ct. Dec. 17, 2025)....................6

*Phillips v. Swedish Health Servs.*,
34 Wn. App. 2d 129 (2025), *review denied*, 5 Wn.3d 1009 (2025) ....................11

*Platts v. Arney*,
46 Wn.2d 122 (1955) ....................1

*Riley v. Iron Gate Self Storage*,
198 Wn. App. 692 (2017) ....................11

*In re Stone*,
671 B.R. 752 (Bankr. D. Colo. 2025) ....................6

*Thach v. Matrix Anesthesia P.S.*,
9 Wn. App. 2d 1100, 2019 WL 3916736 (2019) ....................10

*Weiss v. Lonnquist*,
153 Wn. App. 502 (2009) ....................1

*Zuver v. Airtouch Commc'ns, Inc.*,
153 Wn.2d 293 (2004) ....................9, 10, 11

**Federal Statutes**

15 U.S.C. § 1602(cc)....................8

15 U.S.C. § 1602(dd)(5) ....................4, 9



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

15 U.S.C. § 1602(f) .... 4, 6

15 U.S.C § 1605(a)(1) .... 9

15 U.S.C. § 1606(a) .... 9

15 U.S.C. § 1638(a)(3) .... 9

15 U.S.C. § 1638(a)(4) .... 9

15 U.S.C. § 1639c(a) .... 9

15 U.S.C. § 1639c(e)(1) .... 4

**State Statutes**

RCW 31.04.505(5)(a) .... 5

RCW 31.04.505(5)(b) .... 5

**Regulations**

12 C.F.R. § 226, Supp. I, subpt. A, 2(a)(14)(vii) .... 6

12 C.F.R. § 226, Supp. I, subpt. A, 2(a)(14)(viii) .... 7

12 C.F.R. § 226, Supp. I, subpt. A, 2(a)(17)(c)(1) .... 8, 9

12 C.F.R. § 1026.2(a)(14) .... 6

**Other Authorities**

Fannie Mae, *Origination & Underwriting Selling Guide* B4-1.3-06, https://selling-guide.fanniemae.com/sel/b4-1.3-06/property-condition-and-quality-construction-improvements .... 8

JAMS R. 4 .... 11

JAMS R. 24(e) .... 2

JAMS R. 26(a) .... 11



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

The only question before the Court is whether the parties entered a valid arbitration agreement delegating arbitrability to the arbitrator. Dkt. 11 (Mot.) 6. They did, because (a) Plaintiff assented to the FSEA; and (b) the FSEA incorporated the JAMS Rules, which delegate arbitrability disputes to the arbitrator. Mot. 7–9. Plaintiff seeks to avoid arbitration by attacking the parties' delegation agreement as unconscionable. It's not. His remaining challenges—whether TILA applies—are delegated to the arbitrator and fail on the merits.

# I. ARGUMENT

## A. Plaintiff Entered a Valid Arbitration Agreement with Unlock.

Objective manifestation of assent exists because Plaintiff does not dispute (and thus concedes) that he entered a contract with Unlock when he received, had opportunity to review, and signed the FSEA. *Id.*; Dkt. 20 (Opp.) 6; LCR 7(b)(2). His subjective intent and regret in not taking the opportunity to understand the FSEA "are irrelevant." *Weiss v. Lonnquist*, 153 Wn. App. 502, 511, (2009) (citation omitted). Plaintiff complains that he did not receive the FSEA with the initial packet of documents. Dkt. 21, Seong Decl. ¶ 14. But he concedes that the packet included a sample FSEA containing an arbitration agreement, *see* Dkt. 12, Unlock Decl. Ex. C, and that Unlock repeatedly recommended he seek legal counsel before signing the FSEA, *id.* Exs. A at 4, B at 5. Nor does he dispute that when he received the finalized FSEA, he had the opportunity to review it before signing voluntarily. No more is needed. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177–78 (2004); *see Platts v. Arney*, 46 Wn.2d 122, 126–27 (1955) (transaction consummated through multiple document exchanges).

## B. The Parties Unmistakably Agreed to Delegate Arbitrability.

Plaintiff fails to distinguish binding precedent holding that incorporation of the JAMS Rules constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability. *See* Mot. 9. His attempts to pick apart the delegation language fail.

Plaintiff argues the language stating that "to the extent that the applicable JAMS' Arbitration Rules conflict with the Rules, the Rules shall take precedence" creates confusion as to what rules govern. Opp. 7. The FSEA defines "the Rules" as the "arbitration rules of JAMS,



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the Resolution Experts." Dkt. 1-1 ("Compl.") Ex. A ("FSEA") ¶ 20.2. Thus, "the Rules" is used interchangeably with JAMS's Arbitration Rules. Regardless, Plaintiff cites no conflict between JAMS Rules that would require an outcome besides "the arbitrator decides arbitrability." *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 864 (N.D. Cal. 2024).

Next, Plaintiff argues the FSEA's preservation of "[r]emedies … otherwise … available to owner" defeats the intent to delegate. Opp. 7. That provision addresses available remedies, a distinct question from who decides arbitrability. The availability of judicial remedies does not defeat delegation of arbitrability. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016); *see also Sandler v. Modernizing Med., Inc.*, 170 F.4th 1209, 1212–13 (9th Cir. 2026) (arbitration agreements can delegate arbitrability and also address in-court contingencies). That the FSEA allows injunctive relief "as permitted by the Rules" confirms that the relief is available only if consistent with the JAMS Rules. FSEA ¶ 20.5; *see* JAMS R. 24(e).

**C. Plaintiff's Reliance on TILA Is Misplaced.**

**1. TILA Does Not Bar the Parties' Agreement to Delegate.**

Plaintiff invokes § 1691c(e)(1) to challenge the parties' delegation agreement. Opp. 8. But courts have rejected this argument (by the same counsel), noting nothing in TILA "prohibits who is empowered to decide arbitrability in the first instance." *Olsen v. Unison Agreement Corp.*, 2023 WL 4492346, *2 (W.D. Wash. 2023); *Veneziani v. Unison Agreement Corp.*, 2023 WL 4201961, *2 (W.D. Wash. 2023). Plaintiff ignores *Olsen* and *Veneziani*, as well as the weight of other authority supporting Unlock. *See* Mot. 9–10; *Baskin v. EK Real Est. Servs., NY, LLC*, 2022 WL 17742738, *10 (E.D. Tex. 2022) (nothing in TILA "bars the delegation of questions of arbitrability").

*Attix v. Carrington Mortgage Services, LLC*, 35 F.4th 1284 (11th Cir. 2022) is instructive. In addressing a related TILA provision, the Eleventh Circuit held that whether TILA applies is a threshold issue for the arbitrator because it goes to whether the dispute is arbitrable. *Id.* at 1307–08. Plaintiff there (as here) did not and cannot "explain how [TILA] bars an arbitrator from resolving that dispute," having failed to identify any TILA language "that says a



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

court, rather than an arbitrator, must decide" arbitrability. *Id.* at 1308 (emphasis omitted). Because TILA "is silent as to ***who*** may decide whether a particular contract falls within the scope of its protections," "[a]nd, of course, the parties' agreement is ***not*** silent as to who should decide," the court held that whether TILA applies is an issue delegated to the arbitrator. *Id.* at 1309.

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) did not "explicitly reject[]" *Attix*. *See* Opp. 9. *Bielski*'s reference to *Attix* addressed what level of detail a party must provide to challenge delegation. *See* 87 F.4th at 1010–11. Even if Plaintiff has sufficiently attacked delegation, the underlying argument fails because nothing in TILA bars an agreement to delegate arbitrability, as *Attix* holds. *Bielski* never reached that holding and therefore could not have "explicitly rejected" it. *Id.*

*Bielski* and *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151–52 (2024) do not undercut *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022), either.[1] *Suski* and *Bielski* addressed what a plaintiff must show to challenge delegation; *Caremark* addressed that challenge and rejected it. *Caremark*'s statutory-bar holding controls here because the court held the bar did "not impugn the validity of the delegation clauses specifically," even if it could invalidate the arbitration agreement as a whole. 43 F.4th at 1033. Unlock's district court cases also remain good law because they address the substance of the delegation challenge in finding the invoked statutory bar did not prohibit delegation. *See* Mot. 10.

Even if the Court were to ignore the delegation agreement and reach Plaintiff's arguments about TILA, the statutory bar does not apply here.

**2. TILA Does Not Apply to the FSEA.**

Delegating arbitrability to the arbitrator is especially appropriate given that Plaintiff's arbitrability arguments overlap considerably with the merits. Both Plaintiff's arbitrability arguments and his substantive claims turn on whether the FSEA is a "loan" or involves "credit."

---

[1] *Suski* was about whether a forum-selection clause in a later contract superseded the arbitration agreement in a prior contract. *See* 602 U.S. at 146–47. That issue is not present here.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*See, e.g.*, Compl. ¶¶ 6.5, 6.9. But "[a] court has 'no business weighing the merits of the grievance'" in considering arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) (citation omitted).

In any event, Plaintiff's attempts to avoid arbitration under TILA fail on the merits, as the FSEA is not a "residential mortgage loan," 15 U.S.C. § 1639c(e)(1), "credit transaction," *id.* § 1602(dd)(5), or "debt," *see id.* § 1602(f). The FSEA requires a payment only on the occurrence of a Settlement Event (which includes the end of the term), when Unlock may choose to (or not) exercise its option to take an ownership stake and participate in a sale of the property. *See* Mot. 12–13. Where a right to payment is not definite and is instead contingent on the occurrence of an uncertain condition precedent, there is no debt, i.e., no right to payment. *Id.*

Plaintiff insists that the FSEA imposes a "payment obligation" because "there will always be a Settlement Event." Opp. 14. But Plaintiff's arguments ignore Unlock's contractual discretion, and they are flawed for several reasons.

***a. Plaintiff had no obligation to pay until a Settlement Event (subject to Unlock's option), and the lack of a certain obligation (only a contingent one) means the FSEA does not create a "debt."*** Plaintiff does not meaningfully challenge that a contingent obligation is not "debt" under TILA. Plaintiff notes that TILA applies even where the amount of debt is not "fixed at the outset … because the home's value might change over time," but that's a non-sequitur. Opp. 15. It is the ***obligation to repay***, not the payment ***amount***, that must be definite and certain in order for a transaction to involve "debt," and therefore be a "loan." *Capela v. J.G. Wentworth, LLC*, 2009 WL 3128003, *9 (E.D.N.Y. 2009), *report & recommendation adopted*, 2009 WL 10712637 (E.D.N.Y. 2009). Plaintiff also notes that one dictionary definition of "debt" includes "contingent debt." Opp. 15. But he cites no TILA decision embracing that inclusion, and Unlock has found none.[2]

---

[2] Plaintiff notes that any creditor can choose not to collect, but there is a difference between non-collection entirely by grace and a contractual right to exercise discretion under certain conditions. Opp. 14. As cases like *Foster* demonstrate, the latter is too contingent of an obligation to impose "debt."



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiff's main argument is that Unlock's right to election "doesn't mean something is not a debt," Opp. 14, based on the Ninth Circuit's unpublished decision in *Olson v. Unison Agreement Corp.*, 2025 WL 2254522 (9th Cir. 2025).[3] But *Olson* is not precedential (as it's unpublished), *Ctr. for Investigative Reporting v. DOJ*, 14 F.4th 916, 932 n.6 (9th Cir. 2021), and it doesn't help Plaintiff.[4] *Olson* addressed the merits of a Washington Consumer Loan Act claim, not TILA's arbitration bar. In doing so, the court of appeals ***specifically rejected*** the position that "Washington law … should be interpreted consistently with the TILA," instead noting that the Washington legislature chose to depart from TILA in several material ways. 2025 WL 2254522, at *5. Unlike TILA, Washington law states that "shared appreciation" is a type of "future payment[]" that might constitute a "credit obligation." *Id.* at *3 (quoting RCW 31.04.505(5)(a), (b)). The *Olson* court relied on that definition to conclude that the agreement was a "credit obligation" under Washington law. *Id.* at *5. It reached no conclusions about whether agreements like the FSEA provide for "debt" generally, or about TILA.

Other courts recognize that contractual discretion to elect to collect payment, similar to that in the FSEA, makes the right to payment uncertain and contingent. *Foster v. Equitykey Real Estate Invs. LP*, 2017 WL 1862527, *4 (N.D. Cal. 2017) (agreement is "not a loan" under TILA when "there is no way to know for certain … whether Plaintiff will ***ever*** be required to pay"); *In re Yang*, 2023 WL 7104764, *2 (Bankr. S.D. Ind. 2023) ("future obligations" based on "actually exercising" an election makes the obligations arising from that election "contingent"). Plaintiff

---

[3] Plaintiff asks this Court to consider statements made to investors in deciding whether a "payment obligation" exists. Opp. 14. But he cites no basis for using parol evidence to determine the nature of the FSEA. *See Anthony v. Comm. Loan & Inv. Corp.*, 559 F.2d 1363, 1370 (5th Cir. 1977). The Court must discern the "economic substance" of the FSEA within its four corners. *See Burnett v. Ala Moana Pawn Shop*, 3 F.3d 1261, 1262 (9th Cir. 1993).

[4] Unlock had no reason to address *Olson* preemptively—it's an unpublished decision about state-law claims. Plaintiff's breathless footnote about *Olson*'s disposition (Opp. 13 n.8) is irrelevant. While rehearing was pending, a majority of the *Olson* panel voted to vacate the judgment because the parties settled. Vacating the decision would have been pointless—vacatur strips an opinion of its precedential value, *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991), which the unpublished decision never had in the first place.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

does not address these holdings.[5] The absence of an obligation to "repay absolutely" means the FSEA does not impose a "debt" and is therefore not a "loan" of any kind. *See Foster*, 2017 WL 1862527, at *4.

***b. The FSEA is not "credit" because its discretionary election makes it akin to an option contract.*** The FSEA recognizes Unlock's "right to elect to convert its Unlock Percentage" and facilitate a sale of the property, which may be exercised "upon the occurrence of a Settlement Event," FSEA ¶ 1.3.3, including at the end of the term, if a sale or a buyout has not occurred, FSEA ¶ 5.5. This discretionary election is an option, *see Foster*, 2017 WL 1862527, at *2, 5, regardless of how it is "expressly labeled." *Cf. Quality Res. & Servs., Inc. v. Idaho Power Co.*, 706 F. Supp. 2d 1088, 1094–95 (D. Idaho 2010). The Staff Commentary to Regulation Z ("Commentary"), TILA's implementing regulation, 12 C.F.R. § 226, supp. I, subpt. A, 2(a)(14)(vii), states that "[t]he execution of option contracts" is not "[c]redit."

"[S]taff opinions" on TILA are "dispositive" unless "demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980). Yet Plaintiff argues the Commentary is irrelevant because it "accompanies a regulation," not TILA itself, and because commentary cannot "trump statutory text" under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Opp. 17. Both arguments are wrong. To start, TILA and Regulation Z have virtually the same definition of "credit." *Compare* 15 U.S.C. § 1602(f), *with* 12 C.F.R. § 1026.2(a)(14). The Supreme Court has long deferred to staff opinions interpretating both. *Ford*, 444 U.S. at 565. That deference persists post-*Loper Bright*, as TILA is an area where federal agencies "exercise a

---

[5] None of Plaintiffs' cases is on point. *Moss*, *Revell*, and *Feeman* (Opp. 12–13) are all earned-wage access cases, which arguably have a "clear expectation of repayment" and a definite "repayment date." *E.g.*, *Moss v. Cleo AI Inc.*, 799 F. Supp. 3d 1152, 1156, 1159–60 (W.D. Wash. 2025). The Commentary also describes earned-wage access as a form of "credit," whereas the opposite is true here. *See Revell v. Grant Money, LLC*, 808 F. Supp. 3d 1036, 1050 (N.D. Cal. 2025).

*Muskal v. Point*, No. CV 2025-024855 (Ariz. Sup. Ct. Dec. 17, 2025), is a TILA arbitration decision, but it provides no reasoning. *Hometap* and *Stone* address state law, not TILA. *Massachusetts v. Hometap Equity Partners, LLC*, 2025 WL 2468564, *5–8 (Mass. Sup. Ct. 2025); *In re Stone*, 671 B.R. 752, 755–57 (Bankr. D. Colo. 2025).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

degree of discretion" to "fill up the details" of the statutory scheme. 603 U.S. at 394–95, 476; *Ford*, 444 U.S. at 566.

Plaintiff narrowly defines an option contract as the "right to buy or sell something within a specified time and at a specified price." Opp. 17. But *Foster*, the only decision that meaningfully analyzes the option-contracts carveout, did not adopt Plaintiff's blinkered definition.[6] Rather, *Foster* applied a broader construction: "an agreement in which the optionee … 'binds the optionor to perform an underlying agreement upon the optionee's performance of a condition precedent.'" 2017 WL 1862527, at *4 (citation omitted). The court determined that EquityKey's agreement, which provided the "option" to share in the property's appreciation, met this definition. *Id.* at *5.

So too with the FSEA, and Unlock's discretionary election: on election, it binds Plaintiff to convert Unlock's share into a fee simple stake in his property, and to facilitate the property's sale.

***c. The FSEA is an investment plan***. The FSEA provided Plaintiff with capital (the Investment Payment). Unlock Decl., Ex. B. In exchange, Unlock obtained the right to share in the appreciation of the underlying property (the Unlock Percentage). *Id.* Unlock risked loss had the property depreciated. *Id.* ¶ 4; FSEA ¶ 21.5. This meets the requirements of an investment plan, which is ***not*** "credit": Unlock has "extend[ed] capital" and "risks the loss of the capital advanced." 12 C.F.R. § 226, supp. I, subpt. A, 2(a)(14)(viii).

Plaintiff argues that the FSEA is not a true investment plan because "Unlock is guaranteed to recover its advance." Opp. 16 (emphasis omitted). He points to Washington home-pricing data, asking this Court to infer that home values will never fall enough for Unlock

---

[6] *Hometap* applied a similarly restrictive definition of "option contract." *Hometap* is not relevant here; like *Olson*, it interpreted state mortgage-lending laws, not TILA. 2025 WL 2468564, at *5–8. And its discussion of TILA is wrong. For example, *Hometap* claims that, under the Commentary, option contracts require "the party advancing money" to "risk[] the loss of the capital advance." *Id.* at *7. Not true. The Commentary mentions risk of loss relating to ***investment plans***, ***not*** option contracts. 12 C.F.R. § 226, supp. I, subpt. A, 2(a)(14)(viii).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

to lose money. Plaintiff has not offered any evidence (such as expert testimony) or plausible allegation to prove such a sweeping conclusion, and the Court cannot assume that a surge in property values is "inevitable." *Foster*, 2017 WL 1862527, at *5. Moreover, property value may go down for reasons unrelated to market forces—for example, "substantial damage [to the property] or deferred maintenance." *See* Fannie Mae, *Origination & Underwriting Selling Guide* B4-1.3-06, https://selling-guide.fanniemae.com/sel/b4-1.3-06/property-condition-and-quality-construction-improvements.

Plaintiff hyperbolizes that if any risk of loss is enough to turn a transaction into an "investment plan," then no loan would be "credit." But as Plaintiff notes, the economic substance matters. Conventional mortgage loans do not share in the appreciation of property value; they accrue interest based directly on the unpaid principal balance and require set monthly payments. The entire context of the transaction matters in determining whether it is a loan or an investment plan; here, the context demonstrates that the FSEA is the latter. Mot. 14.

***d. Plaintiff's comparisons to "nonrecourse" transactions fall short.*** Plaintiff contends that TILA "expressly covers 'nonrecourse' credit." Opp. 11 (citing 15 U.S.C. § 1602(cc)). But the statute, which defines "reverse mortgage transaction," does not use the word "credit." Moreover, TILA's reverse-mortgage provisions assume "principal, interest, ***and*** shared appreciation or equity" are "due and payable" upon the occurrence of certain events. 15 U.S.C. § 1602(cc). That doesn't fit here: the FSEA doesn't involve a payment of principal or interest, just shared equity—and TILA's text rejects Plaintiff's attempt to conflate "interest" with "shared appreciation." *See* Opp. 12.

Plaintiff also likens the FSEA to a pawn-shop transaction, claiming that "recovery will vary with the collateral's value." *Id.* That comparison is disingenuous. For one, pawn transactions have long been extensions of credit. 12 C.F.R. § 226, supp. I, subpt. A, 2(a)(17)(c)(1), cmt. 18. And unlike the FSEA, how much a pawn shop makes from a pawn loan doesn't "vary with the collateral's value": a pawn transaction involves the provision of a "sum of money" (the principal) for "a greater sum (the redemption price)," with the difference making



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

up most of the "finance charge." *Id.* Both the principal amount and the redemption price are known in advance. The loan is secured by a pledged item; while the pawnbroker may have to sell the item because the item is not "redeemed" in time, *id.*, generally the primary purpose of the transaction is not for the pawnbroker to profit off the item's sale, but simply to be repaid. *E.g.*, *Burnett*, 3 F.3d at 1262 (75% of transactions resulted in redemptions).

***e. Treating the FSEA as a residential mortgage loan is incompatible with other parts of TILA***. If the FSEA is an agreement for a "residential mortgage loan," then that characterization must fit with the rest of TILA, not just its arbitration bar. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (statutes must be interpreted "to create a symmetrical and coherent regulatory scheme"). Plaintiff says principal, interest, and a payment schedule aren't necessary for the FSEA to be a "loan" under TILA. Opp. 15. But TILA is a precise disclosure regime, *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1120 (9th Cir. 2009), and its precise disclosure obligations do not work if the FSEA is treated as a "residential mortgage loan."

Consider this: for "consumer credit transactions" like residential mortgage loans, 15 U.S.C. § 1602(dd)(5), TILA requires disclosure of the "finance charge," for which the lender must know the "interest, time price differential, and any amount payable under a point, discount," or other charges. *Id.* §§ 1605(a)(1), 1638(a)(3). It also requires disclosure of the annual percentage rate, *id.* §§ 1606(a), 1638(a)(4), and determination of the consumer's ability to repay based on a fully amortized schedule, *id.* § 1639c(a). Unlock cannot make these determinations at the time of the FSEA because it does not know what the property will sell for. This statutory incompatibility further reinforces that the FSEA is not a "residential mortgage loan" under TILA and is therefore not subject to its arbitration bar.

**D. The Delegation Agreement Is Not Unconscionable.**

***Procedural unconscionability***. Plaintiff cannot show that he "lacked meaningful choice," the touchstone for procedural unconscionability. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 305 (2004). He does not allege Unlock "refused to respond to [his] questions or



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

concerns" or "placed undue pressure on [him] to sign the agreement without providing [him] with a reasonable opportunity to consider its terms." *Id.* at 306–07. Plaintiff's other criticisms do not make the FSEA unconscionable. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 54–55 (2020) (adhesion contract not unconscionable); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1262 (9th Cir. 2017) (failure to provide arbitration rules not unconscionable); *In re BAM*, 733 F. Supp. 3d at 864–65 (same); *Thach v. Matrix Anesthesia P.S.*, 9 Wn. App. 2d 1100, 2019 WL 3916736, *3 (2019) (agreement with its "own numbered section" titled "Arbitration in bold font" within larger agreement not unconscionable).

*Pagliacci* and *Mattingly v. Palmer Ridge Homes LLC*, 157 Wn. App. 376 (2010) do not help Plaintiff because plaintiffs there had no chance to review the booklets before signing the underlying agreements. *Pagliacci*, 196 Wn.2d at 56–57; *Mattingly*, 157 Wn. App. at 391–92. Plaintiff does not deny he was able to review the FSEA or that Unlock encouraged him to do so with legal counsel. *Supra* § I.A.

Finally, Plaintiff's argument that the "JAMS rules are 'subject to change'" fails. Opp. 20 (quoting *Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742, *1 (9th Cir. 2025)). In *Pandolfi*, the rules the defendant invoked did not exist when the parties signed the arbitration agreement. 2025 WL 2463742, *1. Here, the JAMS Rules have remained the same since Plaintiff signed the FSEA. *See* https://www.jamsadr.com/rules-comprehensive-arbitration (effective since June 2021).

Plaintiff argues FSEA ¶ 21.5, which reiterates that the FSEA is not a loan, is unconscionable because it "'might mislead plaintiffs into' believing they can't challenge the delegation clause or arbitrability under TILA." Opp. 20 (quoting *Brookdale Senior Living Communities, Inc. v. Hardy*, 2015 WL 13446704, *5 (W.D. Wash. 2015)). That hasn't come to bear. Regardless, in *Brookdale*, the unconscionable provision involved a waiver of statutory appellate rights, which is not at issue here. 2015 WL 13446704, *5.

***Substantive unconscionability.*** Nothing about the delegation agreement is one-sided. Plaintiff's assumption that a delegation challenge constitutes a breach dooms his claim that the



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

definition of default and the indemnification provision are unconscionable. Opp. 21. Under the JAMS Rules, and by extension the FSEA, it is ***not*** a breach to have a court determine whether the delegation language is enforceable. JAMS R. 4 ("If any of these Rules … is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict[.]").

Relying on *McKee v. AT&T Corp.*, 164 Wn.2d 372 (2008), Plaintiff argues the JAMS Rules' confidentiality provision is unconscionable. Opp. 21. But confidentiality provisions are not unconscionable when they "allow[] disclosure where the law requires it." *Phillips v. Swedish Health Servs.*, 34 Wn. App. 2d 129, 142 (2025), *review denied*, 5 Wn.3d 1009 (2025). Here, the confidentiality provision does exactly that: it allows disclosure when "required by law or judicial decision." JAMS R. 26(a).[7]

**E. Plaintiff's Remaining Challenges Are Delegated to the Arbitrator.**

Because Plaintiff's delegation challenge fails, his remaining challenges to the arbitration agreement and FSEA are delegated to the arbitrator. *See Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1201 (9th Cir. 2024); Mot. 9–10. Even if the Court reaches Plaintiff's remaining challenges, they fail.

Plaintiff contends the punitive-damages provisions strip him of statutory remedies, making the arbitration agreement unconscionable. Opp. 22. But as Plaintiff is aware, "[r]emedies that would otherwise be available to owner under applicable … laws shall remain available." FSEA ¶ 20.4. The FSEA comports with Washington's prohibition on punitive damages unless otherwise authorized by statute. *Mckee*, 164 Wn.2d at 401. Additionally, parties can agree to contractually cap liability. *See Riley v. Iron Gate Self Storage*, 198 Wn. App. 692, 711 (2017).

[7] Although none of the FSEA provisions renders the delegation agreement unconscionable, even if they did, the delegation language is still enforceable because any unconscionable provisions are severable. *Zuver*, 153 Wn.2d at 319–20.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Unlock taking responsibility for claims and disclaiming its employees and agents of liability is also not unconscionable. *See* Opp. 22. It merely reflects settled law that "a principal is vicariously liable for the conduct of its 'agent.'" *LaRose v. King County*, 8 Wn. App. 2d 90, 127 (2019) (citation omitted). Thus, FSEA ¶ 21.14 does not "immunize[]" Unlock in arbitration, Opp. 22; it simply clarifies that claims relating to the FSEA must be brought against Unlock, not those acting on its behalf. Nor does the provision holding ***Plaintiff*** liable for his agents' acts render the agreement unconscionable. *Id.* It adds mutuality.

## II. CONCLUSION

The Court should compel arbitration and stay this case pending arbitration.

*I certify that this memorandum contains 4,196 words, in compliance with the Local Civil Rules.*

Davis Wright Tremaine LLP
Attorneys for Unlock Partnership Solutions Inc.

By *s/ Fred B. Burnside*
Fred B. Burnside, WSBA #32491
Xiang Li, WSBA #52306
Alec Zatirka, WSBA #63873
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: 206-622-3150
Email: fredburnside@dwt.com
xiangli@dwt.com
aleczatirka@dwt.com

Goodwin Proctor LLP
Attorneys for Unlock Partnership Solutions, Inc.

*s/ Matthew S. Sheldon* (*pro hac vice*)
Matthew S. Sheldon, DC Bar No. 998754
1900 N Street, NW
Washington, DC 20036
Tel: (202) 346-4027
Email: msheldon@goodwinlaw.com