UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEUNGJAE SEONG,<br><br>Plaintiff,<br><br>v.<br><br>UNLOCK PARTNERSHIP SOLUTIONS INC.,<br><br>Defendant. | CASE NO. C26-1023JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court is Plaintiff Seungjae Seong's motion for reconsideration of the court's August 27, 2026 order granting Defendant Unlock Partnership Solutions Inc.'s ("Unlock") motion to compel arbitration, or in the alternative to certify the order for interlocutory appeal under 28 U.S.C. § 1292(b). (MFR (Dkt. # 25); MFR Reply (Dkt. # 28); *see* 8/27/26 Order (Dkt. # 24).) Unlock opposes the motion. (MFR Resp. (Dkt. # 27).) The court has considered the parties' submissions, the relevant portions of the

record, and the governing law. Being fully advised, the court DENIES Mr. Seong's motion for reconsideration and DECLINES to certify its order for interlocutory appeal.

## II. BACKGROUND[1]

Mr. Seong alleges, on behalf of himself and a putative class, that Unlock's reverse mortgage product violates the Washington Consumer Protection Act, ch. 19.86 RCW. (*See generally* Compl. (Dkt. # 1-1).) In mid-2022, Mr. Seong saw an advertisement that "portrayed Unlock as a flexible alternative to a home equity loan or Home Equity Line of Credit (HELOC) without any monthly payments." (*Id.* ¶ 4.54.) Mr. Seong called Unlock and spoke with a sales representative who emailed him an application that he completed and returned. (*Id.* ¶ 4.55.) On July 14, 2022, the sales representative emailed Mr. Seong an "Investment Estimate" that included an advance payment of $100,000, or 9.36% of the value of Mr. Seong's Bothell home, in exchange for 15.92% of the future value of the home. (*Id.* ¶ 4.56.) Mr. Seong then requested the maximum advance for which he would be eligible. (*Id.* ¶ 4.57.) On July 31, 2022, the sales representative emailed him a Forward Sale and Exchange Agreement ("FSEA"), under which Unlock would provide Mr. Seong an advance of $190,509—16.57% of the value of the home—in exchange for 28.16% of the future value of the home. (*Id.* ¶ 4.58-4.59; *see id.*, Ex. A (FSEA) at 2.) The FSEA required Mr. Seong to grant Unlock a mortgage on his home secured by a deed of trust to receive the advance payment. (*Id.* ¶ 4.64; *see id.* Ex. B (deed of trust).)

---

[1] The court set forth the factual and procedural background of this case in its August 27, 2026 order. (*See* 8/27/26 Order at 2-7.) The court assumes that the reader is familiar with that order and repeats the background here only as relevant to the motion now before it.

On August 16, 2022, the sales representative emailed Mr. Seong a closing statement, final application, 4506 C, disbursement instructions, and sample contract documents. (Compl. ¶ 4.61.) On August 30, 2022, Mr. Seong and his wife signed the FSEA and deed of trust. (*Id.* ¶ 4.63.) Mr. Seong avers that he "did not have an opportunity to negotiate the terms of the contract[,]" and "did not realize [] that he would be forced to pay Unlock far more money than he received." (*Id.* ¶¶ 4.65-4.66.)

On April 17, 2026, Unlock moved to compel this action to arbitration pursuant to the arbitration clause in the FSEA, which states, in relevant part:

> 20.2 OWNER[2] AGREES THAT ANY AND ALL CONTROVERSIES, CLAIMS, OR DISPUTES WITH BENEFICIARY . . . ARISING OUT OF, RELATING TO, OR RESULTING FROM THE UNLOCK AGREEMENT OR THE PROPERTY, SHALL BE SUBJECT TO BINDING ARBITRATION UNDER THE ARBITRATION RULES OF JAMS, THE RESOLUTION EXPERTS (THE "RULES"), AND, BECAUSE THIS AGREEMENT SUBSTANTIALLY AFFECTS INTERSTATE COMMERCE THE PARTIES AGREE THIS AGREEMENT, INCLUDING ITS ENFORCEMENT IS TO BE GOVERNED BY THE FEDERAL ARBITRATION ACT, 9 U.S.C. § 1 ET SEQ.

(FSEA ¶¶ 20.2; *see* MTC (Dkt. # 11).) The court granted the motion to compel on August 27, 2026. (*See* 8/27/26 Order.) Mr. Seong moved for reconsideration on September 10, 2026. (*See* MFR.) That motion is fully briefed and ripe for decision.

## III. ANALYSIS

Reconsideration is an "extraordinary remedy . . . to be used sparingly[.]" *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "Motions for

---

[2] Mr. Seong is the "Owner" and Unlock is the "Beneficiary." (*See* FSEA at 1; Performance Deed of Trust at 1.)

reconsideration are disfavored[,]" and "[t]he court will ordinarily deny such motions in the absence of a showing of." Local Rules W.D. Wash. LCR 7(h)(1).

Mr. Seong asserts that the court manifestly erred by failing to directly address the arguments he raise manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence d in his opposition to Unlock's motion to compel arbitration regarding the validity of the FSEA's delegation clause. (MFR at 3-4 (citing MTC Resp. (Dkt. # 20) at 8-22).) Specifically, Mr. Seong argues that the court failed to consider whether the delegation clause is invalid (1) under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1639c(e)(1); (2) because it is procedurally unconscionable; or (3) because it is substantively unconscionable. (*Id.*) The court considers each argument below.

**A. TILA Does Not Invalidate the Delegation Clause**

First, Mr. Seong argues that the court failed to address whether the delegation clause is invalid under the Dodd-Frank Act, a provision of TILA which states:

> No residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction.

15 U.S.C. § 1639c(e)(1); (*see* MFR at 3-4 (citing MTC Resp. at 8-22).) This argument is unavailing. The Ninth Circuit recently held that a delegation clause may "permissibly assign[] to an arbitrator the question whether the Dodd-Frank Act invalidates the arbitration agreement, including the delegation clause itself." *Marino v. Aven Fin., Inc.*, No. 25-7291, 2026 WL 2280618, at *2 (9th Cir. Aug. 7, 2026) (citing *Caremark, LLC v.*

*Chickasaw Nation*, 43 F.4th 1021, 1033 (9th Cir. 2022)); *see also Caremark*, 43 F.4th at 1034 (noting that whether a federal statute invalidated an arbitration provision was "exactly the type of threshold arbitrability issue that the parties [] delegated to the arbitrator"). Furthermore, Mr. Seong's argument that TILA precludes arbitration is a dispute about the arbitration agreement as a whole rather than a challenge to the validity of the delegation clause itself. *See Marino*, 2026 WL 2280618, at *2 (citing *Caremark*, 43 F.4th at 1033); *see also Attix v. Carrington Mort. Serv., LLC*, 35 F.4th 1284, 1306-09 (11th Cir. 2022) ("Because [plaintiff's] Dodd-Frank Act challenge is only about the enforceability of the parties' primary arbitration agreement, under the parties' delegation agreement, an arbitrator must resolve it.").[3] The court follows this authority and concludes that the Dodd-Frank Act does not invalidate the FSEA's delegation clause.

**B. The Delegation Clause is not Procedurally Unconscionable**

Next, Mr. Seong avers that the court failed to address whether the delegation clause is procedurally unconscionable. (MFR at 4.) Procedural unconscionability involves the manner in which the contract was entered, whether the plaintiff had a reasonable opportunity to understand the contract, and whether the terms were "hidden in a maze of fine print[.]" *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 495 (Wash. 2020) (citation omitted). The "key inquiry" when considering procedural unconscionability is "whether the party lacked meaningful choice." *Id.*

---

[3] Mr. Seong misleadingly asserts that the Ninth Circuit "explicity rejected" Attix in *Bielski v. Coinbase*, 87 F.4th 1003 (9th Cir. 2023). (MTC Resp. at 9.) *Bielski*'s discussion of *Attix*, however, addresses what a plaintiff must show to sufficiently challenge a delegation provision; it makes no mention of TILA. *Bielski*, 87 F.4th at 1101.

Mr. Seong argues that the delegation clause is procedurally unconscionable for three reasons. First, he asserts that the clause is unconscionable because it is an adhesion contract. (MTC Resp. at 19.) The Washington Supreme Court, however, has made clear that the mere fact an agreement is an adhesion contract is not enough to show unconscionability. *Burnett*, 470 P.3d at 495.

Second, Mr. Seong argues that the clause is unconscionable because it was "buried . . . on page 34 of a 61-page document." (MTC Resp. at 19.) His reliance on *Mattingly v. Palmer Ridge Homes LLC*, 238 P.3d 505, 512 (Wash. Ct. App 2010), for this proposition, however, is misplaced. As the Washington Supreme Court has observed, *Mattingly* did not involve an arbitration provision, and the plaintiff in that case did not receive the terms of the procedurally unconscionable warranty agreement until *after* he moved into his home. *See Burnett*, 470 P.3d at 495-96. Here, by contrast, Mr. Seong received the FSEA *before* he signed it and thus had an opportunity to review it. (*See, e.g.*, Compl. ¶ 4.63.)

Finally, Mr. Seong argues that the clause is unconscionable because the FSEA refers only to the JAMS Rules instead of expressly stating that questions of arbitrability are delegated to the arbitrator. (MTC Resp. at 19-20.) The Ninth Circuit, however, has held that an arbitration agreement that incorporates the JAMS Rules "clearly and unmistakably" delegates the question of the agreement's validity to the arbitrator. *See Sandler v. Modernizing Med., Inc.*, 170 F.4th 1209, 1212 (9th Cir. 2026); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024).) Thus, the court concludes that the delegation clause is not procedurally unconscionable.

**C. The Delegation Clause is not Substantively Unconscionable**

Finally, Mr. Seong argues that the court failed to consider whether the delegation clause is substantively unconscionable "based on specific 'harsh, highly one-sided terms that apply to the purported delegation clause.'" (MFR at 4 (quoting MTC Resp. at 21-22).) Washington courts consider "whether the provision is shocking to the conscience, monstrously harsh, and exceedingly calloused" when determining whether a contractual provision is "one-sided or overly harsh." *Burnett*, 470 P.3d at 496 (citations omitted). In the arbitration context, the court's "analysis is not limited to the bare text of the [delegation] clause." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680 (9th Cir. 2024), *cert. denied*, 146 S. Ct. 96 (2025). The court must "consider the parts of the agreement that impact[] the delegation provision to decide its enforceability." *Id.* at 681.

First, Mr. Seong argues that the FSEA's language defining "Event of Default" as including any action by the homeowner to "'interfere with or negatively impact Unlock's rights'" means that a challenge to Unlock's "purported right to delegate arbitrability to the arbitrator" would be a breach of the FSEA. (MTC Resp. at 21 (quoting FSEA § 16.1(a)).) Furthermore, according to Mr. Seong, the FSEA's attorneys fees provision would unconscionably require homeowners to pay for the costs Unlock incurs in litigating the enforceability of the arbitration clause. (*Id.* (citing FSEA § 21.12).) As Unlock points out, however, "under the JAMS Rules, and by extension the FSEA, it is ***not*** a breach [of the FSEA] to have a court determine whether the delegation language is enforceable." (MTC Reply (Dkt. # 22) at 11 (emphasis in original) (citing JAMS R. 4, https://www.jamsadr.com/rules-comprehensive-arbitration (last visited Oct. 26, 2026)).)

Mr. Seong also argues that the JAMS Rules require any dispute about arbitrability to be confidential, which could "improperly hamper plaintiffs in learning about potentially meritorious claims and tilt the scales in Unlock's favor." (MTC at 21 (quoting *McKee v. AT&T Corp.*, 191 P.3d 845, 858, 861 (Wash. 2008) (internal quotation marks omitted)).) Confidentiality provisions, however, are not unconscionable where, as here, they "allow[] disclosure where the law requires it." *Phillips v. Swedish Health Servs.*, 567 P.3d 625, 632 (Wash. Ct. App. 2025), *review denied*, 576 P.3d 1183 (2025); *see* JAMS R. 26(a) (providing that JAMS and the arbitrator must keep arbitration proceedings and awards confidential "unless otherwise required by law or judicial decision"). Accordingly, the court concludes that the delegation clause is not substantively unconscionable.

In sum, TILA does not invalidate the delegation clause, and the delegation clause is neither procedurally nor substantively unconscionable. As a result, the court concludes that Mr. Seong has not "manifest error in the prior ruling or . . . new facts or legal authority which could not have been brought to [the court's] attention earlier with reasonable diligence." Local Rules W.D. Wash. LCR 7(h)(1). Therefore, the court denies Mr. Seong's motion for reconsideration.

**D. The Court Denies Certification of an Interlocutory Appeal**

In the alternative, Mr. Seong urges the court to grant him leave to file an interlocutory appeal of the August 27, 2026 order. (MFR at 5-7.) A district court may certify an order for interlocutory appeal where (1) "such order involves a controlling question of law as to which there is substantial ground for difference of opinion" and

(2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). Mr. Seong asserts, in relevant part, that the question of "whether § 1639c(e)(1) precludes enforcement of a delegation clause in a residential mortgage loan" warrants certification. (MFR at 5.[4]) The court disagrees because, as discussed above, the Ninth Circuit has held that "the question whether the Dodd-Frank Act invalidates the arbitration agreement, including the delegation clause itself" may be delegated to the arbitrator. *Marino*, 2026 WL 2280618, at *2. Therefore, the court denies Mr. Seong's request to certify its prior order for interlocutory appeal.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Mr. Seong's motion for reconsideration of its August 27, 2026 order and request to certify that order for interlocutory appeal (Dkt. # 25). This matter shall proceed to arbitration.

Dated this 26th day of October, 2026.



JAMES L. ROBART
United States District Judge

[4] The court agrees with Mr. Seong's assertion that a court must evaluate specific challenges to a delegation clause before compelling arbitration. (*Id.*); *see Bielski*, 87 F.4th at 1009.